JUDGE OETKEN

**THE DUGGER LAW FIRM, PLLC**
Cyrus E. Dugger
154 Grand St.
New York, New York 10013
Tel: (646) 560-3208

14 CV 7841

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISCTRICT OF NEW YORK

EVA AGERBRINK, individually
and on behalf of all others similarly situated,

      Plaintiff,

v.

MODEL SERVICE LLC d/b/a MSA Models and
SUSAN LEVINE,

      Defendants.

**CLASS AND COLLECTIVE
ACTION COMPLAINT**
Demand for Trial by Jury



      Plaintiff Eva Agerbrink ("Plaintiff"), individually, and as class representative on behalf of all others similarly situated, by her attorney, Cyrus E. Dugger, makes the following allegations against Model Service LLC d/b/a MSA Models ("MSA Models" or "MSA") and Susan Levine ("Levine").

### INTRODUCTION

      1.     A fit model is a person who works with members of the apparel manufacturing industry to check the fit, drape, and visual appearance of a design on a real human being.

      2.     Essentially, fit models are used by the apparel manufacturing industry as human mannequins during the clothing design process.

      3.     MSA Models describes itself as the "premiere fit modeling agency in New York City."

      4.     Many, if not all, New York City modeling agencies, including MSA Models, operate without regard for the various applicable labor laws covering models' work.  These NYC modeling

agencies' wage and hour violations arise from the near industry-wide misclassification of NYC models as independent contractors.[1]

5.      Through this misclassification, many, if not all, NYC modeling agencies purport to avoid application of the minimum wage, overtime, and timely payment requirements of federal and state wage and hour laws applicable to the models they employ.

6.      The result is a NYC modeling industry in which models with low-bargaining power are frequently not paid all of their earned wages, are paid wages late, are paid wages only after complaining about non-payment, and/or are simply not paid at all.

7.      Although many, if not all, NYC modeling agencies maintain that their models are independent contractors, this nearly industry-wide imposed label is often legally incorrect.

8.      As a result of NYC modeling agencies' near industry-wide misclassification of models as independent contractors, many, if not all NYC modeling agencies, are liable to their past and current models for minimum wages, overtime wages, unpaid earned wages, late payment of wages, and illegal deductions, as well as associated liquidated damages.

9.      Accordingly, these NYC modeling agencies' collective evasion of wage and hour protections have resulted in millions of dollars in lost wages to these agencies models and, in turn, millions of dollars in illegal profits for these NYC modeling agencies.

10.      As a result, although modeling is often seen as a glamorous career in New York City, it is often quite the opposite.

11.      Most models therefore receive modest wages for their work: the U.S. Bureau of Labor Statistics' *Occupational Outlook Handbook* lists the median pay for U.S. models in 2012 as $18,750 per year and $9.02 per hour.

---

[1] *See generally* Alexandra R. Simmerson, *Note: Not So Glamorous: Unveiling the Misrepresentation of Fashion Models' Rights as Workers in New York City*, 22 Cardozo J. Int'l & Comp. L. 153 (Nov. 2013).

12.    Accordingly, models that have provided a service that has enriched NYC modeling agencies and the apparel industry clients that require fit models' services to design clothing, are only marginally compensated, or not compensated at all, all within an apparel manufacturing industry grossing millions of dollars.

13.    MSA Models is no exception with respect to the misclassification of fit models as independent contractors and resulting responsibility for illegal wage and hour practices.

14.    MSA Models has uniformly misclassified its models as independent contractors.

15.    Upon information and belief, MSA Models has implemented a policy and/or practice of failing to pay minimum wages, failing to pay overtime wages, failing to pay models all of their earned wages, failing to pay wages promptly, failing to pay fit models unless and until they specifically request payment of their wages, and/or making illegal deductions to models' wages.

16.    MSA Model's, and NYC modeling agencies' misclassification of their models as independent contractors has similarly resulted in NYC modeling agencies' failure to pay unemployment benefits, obtain workers' compensation insurance, or pay applicable social security taxes with respect to their models.

17.    In addition to misclassifying their models as independent contractors, many, if not all, NYC modeling agencies, including MSA, go one step further to increase their profits at the expense of both NYC models and apparel industry clients.  While these modeling agencies hold themselves out to the public as organizations that will obtain employment and/or engagement for models, and while the primary purpose and activities of these organizations *is* to obtain employment and/or engagements for models, these agencies have nonetheless *re-classified"* themselves as "not employment agencies."

18.    As chronicled in *Masters v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (SDNY), in which a model alleged violations of the Sherman Antitrust Act, there is substantial evidence that many, if not all, NYC modeling agencies jointly sought to "re-classify" themselves by simultaneously maintaining that they were no longer "employment agencies" within the meaning of GBL § 171(2).

19.     The alleged purpose of this coordinated effort was for, many, if not all, NYC modeling agencies, is to collectively evade application of a 10% cap on the fees these modeling agencies charge their models for obtaining employment and/or engagements.  GBL § 185.  Thus, by "re-classifying" themselves as "not employment agencies," these NYC modeling agencies, including MSA, contend there is no applicable 10% fee cap on the "commissions" they charge against models' wages.  GBL § 185 similarly caps the fee chargeable to the apparel industry client at 10%.  GBL § 185.

20.     Many, if not all, NYC modeling agencies, including MSA, attempt to contract around GBL § 185, by including non-negotiable language in their employment agreements unilaterally labeling themselves as "not employment agencies."

21.     As a result, NYC modeling agencies, including MSA, typically impose a 20% "commission" on the wages earned by their models.  Indeed, many, if not all, NYC modeling agencies, including MSA, contend that their employment contracts include payment of this 20% "commission", even when a model finds work without the assistance or involvement of their modeling agency.

22.     Many, if not all, NYC fit modeling agencies, including MSA, charge *an additional* 20% "service fee" to the apparel industry client when they book the fit model with the client.

23.     However, at least in the case of MSA Models, if the apparel industry client refuses to pay the "service fee," Defendants simply deduct this "service fee" fee from their models' wages.  As a result, Defendants' deductions to models wages in "commissions" can be as high as 40%.

24.     This action seeks to recover for Plaintiff, and similarly situated MSA fit models, minimum wages, wages currently due, late payment of wages, unlawful deductions, and associated liquidated damages, including but not limited to, minimum wages for time spent during go-sees (initial meetings with potential apparel industry clients) and required in-person meetings with MSA Models owner Susan Levine, payment of all unpaid earned wages, liquidated damages for all wage payments that were eventually made but were not made promptly within the meaning of the FLSA, as well as Defendants' unlawful deductions from MSA fit models' wages, all pursuant to the Fair Labor Standards

Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and/or the New York Labor Law NYLL, Article 6 §§

190 *et seq.* and Article 19, §§ 650 *et seq.*

25.     This action also seeks a declaratory judgment that Defendants' employment contract is

unenforceable, in its entirety, or substantial part, with respect to Defendants' assertions of rights to

"commissions" from Plaintiff and similarly situated MSA fit models' wages.

## JURISDICTION AND VENUE

26.     The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331

and the FLSA, 29 U.S.C. § 216(b).

27.     The Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §

1367. Plaintiff's state law claims are so closely related to Plaintiff's claims under the FLSA that they

form part of the same case or controversy under Article III of the United States Constitution.

28.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201

and 2202.

29.     Defendants are subject to personal jurisdiction in New York.

30.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2),

because a substantial part of the events or omissions giving rise to the claims occurred within this

judicial district.

## PLAINTIFF

31.     Plaintiff Eva Agerbrink is an adult individual who resides in Jersey City, New Jersey.

32.     Plaintiff was employed and/or jointly employed by Defendants as a fit model from March

2013 through June 2014.

33.     Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

## DEFENDANTS

### Defendant Susan Levine

34.     Defendant Susan Levine is, and was at all times relevant to the complaint, the owner,

President, and CEO of MSA Models, and a resident of New York.

35.   Levine is an employer within the meaning of the FLSA and the NYLL.

36.   At all times relevant, Levine employed and/or jointly employed Plaintiff and similarly situated MSA fit models.

37.   Levine has purposefully directed her activities in interstate commerce and knew, or should have known, that her actions would have an impact upon New York residents.

38.   Levine has uniformly misclassified MSA fit models as independent contractors.

39.   In uniformly misclassifying MSA fit models as "independent contractors," Levine has denied them the benefits that the law affords to employees, including minimum wages, overtime, timely payment of wages, and protections against deductions.

40.   In misrepresenting herself as "not an employment agency" within the meaning of GBL § 171, Levine has illegally sought to avoid application of a 10% cap on chargeable fees on the wages of MSA fit models, as mandated by GBL § 185.

41.   Although Levine attempts to contract around the requirements of GBL §§ 172, 185, and additional aspects of the GBL, she is nonetheless an "employment agency" within the meaning of GBL §§ 171.

42.   At all times relevant, Levine has had power over personnel decisions at MSA Models, including with respect to Plaintiff and similarly situated fit models.

43.   At all times relevant, Levine has had power to, and/or has exercised the power to, hire and fire (and/or constructively discharge) Plaintiff and similarly situated MSA fit models.

44.   At all times relevant, Levine has had the power to, and/or has exercised the power to, set and/or withhold Plaintiff and similarly situated MSA fit models' wages.

45.   Levine has signed Plaintiff's paychecks, and upon information and belief, signed the paychecks of similarly situated MSA fit models.

46.   At all times relevant, Levine has required MSA fit models to meet with her in-person at

MSA Models, at least once a week, so that Levine can inspect them and/or their size.

47.     At all times relevant, Levine has controlled, or has had the potential power to control, Plaintiff's, and similarly situated MSA Model fit models' schedules, including, *inter alia*, the scheduling of go-sees, bookings, and required in-person meetings with Levine.

48.     At all times relevant, Levine has otherwise controlled the conditions of employment of Plaintiff and similarly situated MSA Model fit models.

49.     Upon information and belief, at all times relevant, Levine has had overall financial control of MSA Models.

50.     Upon information and belief, at all times relevant, Levine has had the power to make ultimate decisions as to how MSA Models is run.

51.     Upon information and belief, at all times relevant, Levine could have dissolved MSA models if she decided the company should not remain in business.

52.     At all times relevant, Levine exercised formal and/or operational control over Plaintiff and similarly situated MSA fit models.

**Defendant Model Service LLC (d/b/a MSA Models)**

53.     Defendant Model Service LLC d/b/a MSA Models is, and was at all times relevant, a limited liability company organized under the laws of the State of New York, with its principal place of business located at 570 Seventh Ave., New York, New York.

54.     MSA Models has purposefully directed its activities in interstate commerce and knew, or should have known, that its actions would have an impact upon New York residents.

55.     MSA Models is an employer within the meaning of the FLSA and NYLL.

56.     At all times relevant, MSA Models employed and/or jointly employed Plaintiff and similarly situated MSA fit models.

57.     MSA Models has uniformly misclassified its fit models as independent contractors.

58.     In misclassifying its models as "independent contractors," MSA Models has denied them

the benefits that the law affords to employees, including minimum wages, overtime, timely payment of wages, and protections against deductions.

59.     MSA Models' unilaterally imposed provision in its employment contract forces MSA models to "agree" with the legal conclusion that they are independent contractors.

60.     In misrepresenting itself as "not an employment agency" within the meaning of GBL § 171, MSA Models has illegally sought to avoid application of the 10% cap on the fees chargeable to MSA fit models.

61.     At all times relevant, MSA Models has had the power to hire and fire (and/or constructively discharge) Plaintiff and similarly situated fit models.

62.     At all times relevant, MSA Models has had the power to set Plaintiff and similarly situated fit models' wages and/or withhold payment of Plaintiff and MSA fit models' wages.

63.     At all times relevant, MSA has controlled and/or had the potential power to control, Plaintiff and MSA fit models schedules with respect to, *inter alia*, go-sees, bookings, and in-person meetings with Levine.

64.     At all times relevant, MSA Models has otherwise controlled the conditions of employment of Plaintiff and similarly situated MSA models.

65.     Upon information and belief, at all times relevant, the majority of MSA's models are fit models.

66.     Upon information and belief, at all times relevant, fit modeling provides the majority of MSA's revenue.

67.     Upon information and belief, at all times relevant, all or, the vast majority of MSA's revenues, have been derived from the "commissions" it deducts from MSA fit model's wages and/or additional "service fees" it charges apparel industry clients and/or MSA fit models .

68.     MSA Models changed its corporate name from "Model Service Agency, LLC" to "Model Service LLC" during approximately December 2000.

69.     Upon information and belief, MSA Models did not make any changes to its operations and/or business practices when it changed its name from "Model Service Agency, LLC" to "Model Service LLC" during approximately December 2000.

70.     Although MSA Models attempts to contract around the requirements of GBL §§ 172, 185, it is nonetheless an "employment agency" within the meaning of GBL § 171.

71.     MSA Models requires all MSA fit models, by way of MSA Model's employment contract, to "agree" with the legal conclusion that MSA Models is not an "employment agency" and/or "theatrical employment agency."

72.     The primary purpose of the work of MSA Models is to obtain employment and/or engagements for Plaintiff and similarly situated fit models.

73.     MSA Models employs numerous bookers whose primary, or sole duty, is to obtain go-sees and bookings for MSA fit models with apparel industry clients.

74.     Despite being an "employment agency" within the meaning of GBL §§ 171, MSA Models applies a deduction of 20% on all wages earned by its models, which exceeds the 10% fee cap stated in GBL § 185.

75.     Upon information and belief, MSA Models is operating as an unlicensed employment agency in violation of GBL § 172.  As a result its employment contract is illegal and unenforceable, in its entirety, or substantial part, by Defendants, against Plaintiff and similarly situated MSA fit models, including with respect to Defendants asserted right to deduct a "commission" of 20% of fit models' wages.

76.     MSA Models also cannot enforce its employment contract against Plaintiff, and similarly situated fit models, with respect to Defendants asserted right to a 20% "commission" on MSA fit models wages because these "commissions" are illegal deductions prohibited by NYLL § 193.

77.     At all times relevant, MSA Models exercised formal and/or operational control over Plaintiff and similarly situated MSA fit models.

## CLASS AND COLLECTIVE ALLEGATIONS

78.     Plaintiff brings the First, Second, and Third Causes of Action on behalf of herself and the following collective:

79.     An opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who, at any time within the three years prior to opting into the instant action, worked as a fit model with Defendants (the "Fit Model Collective").

80.     Plaintiff and the Fit Model Collective claim that Defendants (and/or their predecessors) misclassified them as independent contractors who are not covered by the FLSA and that, as a consequence of this misclassification: (1) Defendants are liable for payment of minimum wages as required by the FLSA, as well as associated liquidated damages; (2) Defendants are liable for the failure to pay minimum wages promptly as required by the FLSA, inclusive of liquidated damages for all minimum wages that Defendants eventually paid, but that were not paid promptly.

81.     Plaintiff and the Fit Model Collective further allege that Defendants have had and/or have a policy or practice of failing to pay Plaintiff and the Fit Model Collective their minimum wages and/or not paying minimum wages promptly as required by the FLSA.

82.     The Fit Model Collective consists of many similarly situated individuals that Defendants have not paid the federal minimum wage, or that Defendants have not paid the federal minimum wage to promptly, within the meaning of the FLSA, and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit. Those similarly situated collective members are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the members of the Collective pursuant to 29 U.S.C § 216(b).

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure.

84.     Plaintiff brings these causes of action as a Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4) on behalf of a class of all fit models employed by Defendants (and/or their predecessors) within six years of the filing of this complaint through the resolution of their NYLL and Declaratory Judgment Act claims ("the Fit Model Class").

85.     Excluded from the Fit Model Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judge's immediate family, all current or former MSA fit models with claims against Defendant(s) filed in state or federal court prior to the filing of this Class and Collective Action Complaint, and all persons who will submit timely and otherwise proper requests for exclusion from the Fit Model Class.

86.     Plaintiff is a member of the class she seeks to represent.

87.     The members of the Fit Model Class identified herein are so numerous that joinder of all members is impracticable.  Although Plaintiff does not know precisely how many fit models Defendants have employed during the relevant time period, their number is far greater than can be feasibly addressed through joinder.

88.     There are questions of law and fact common to the Fit Model Class, and these questions predominate over any questions affecting only individual members.  Common questions include, but are not limited to: (1) whether MSA Models is an employer and/or joint employer within the meaning of the NYLL; (2) whether Levine is an employer and/or joint employer within the meaning of the NYLL; (3) whether Plaintiff and the members of the Fit Model Class are employees within the meaning of the NYLL; (4) whether Defendants have and/or have had a policy or practice of failing to pay Plaintiff and the members of the Fit Model Class their minimum wages, not paying these models' earned wages as required by NYLL § 191, and/or intentionally withholding these models' wages; (5) whether Plaintiff and the Fit Model Class' attendance at go-sees and/or required in-person meetings with Levine was

work Defendants "permitted or suffered" within the meaning of the NYLL; (6) whether Plaintiff and the members of the Fit Model Class were "manual workers" or "clerical or other workers" within the meaning of the NYLL § 191; (7) whether earned wages are currently due to Plaintiff and the members of the Fit Model Class pursuant to NYLL § 191; (8) whether all or some categories of Defendants' deductions to the wages of Plaintiff and the Fit Model Class violated NYLL § 193; (9) whether Defendants are liable for violation of NYLL with respect to the failure to pay minimum wages, the failure to pay earned wages as required by NYLL §, and/or illegal deductions; (10) whether liquidated damages are justified pursuant to the NYLL because of Defendants' willful conduct; (11) whether Defendants are an "employment agency" within the meaning of GBL § 171; (12) whether Defendants' employment contract is unenforceable, or partially unenforceable, by Defendants, against Plaintiff and the members of the Fit Model Class; (13) whether declaratory relief for the Class is warranted with respect to Plaintiff and the Fit Model Class' NYLL claims; (14) whether declaratory relief for the Class is warranted with respect to Plaintiff and the Fit Model Class' Declaratory Judgment Act claim; (15) whether equitable and injunctive relief for the Class is warranted; (16) the resulting total amount of unpaid wages to be awarded; (17) the resulting total amount of liquidated damages to be awarded; (18) the amount of accrued interest; and (19) the amount of statutory attorney's fees and costs to be awarded.

89.     The Representative Plaintiff's claims are typical of the claims of the Class.  Plaintiff and the Fit Model Class were subject to the same or very similar compensation policies and practices and have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

90.     The Representative Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel competent and experienced in complex class actions, wage and hour litigation, independent contractor misclassification, and the intersections thereof.

91.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the Class as a whole.  The Class members are

entitled to injunctive relief as to Defendants' misclassification of the Fit Model Class and resulting wage and hour violations.

92.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Class have been damaged and are entitled to recovery as a result of common illegal practices.

93.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(c)(4) because the resolution of additional common issues would reduce the range of issues in dispute and promote judicial economy.  Resolution of whether Defendants are liable pursuant to the NYLL, in the first instance, would reduce the range of issues in dispute and promote judicial economy by initially determining whether any remedial damages proceedings are required at all.  Similarly, resolution of any one of the issues referenced above, even where such issue(s) are not appropriate for resolution pursuant to Fed. R. Civ. P. 23(b)(3), would nonetheless reduce the range of issues in dispute and promote judicial economy if resolved as an issues class.

94.     The members of the Class have been damaged and are entitled to damages, the calculation of which requires the resolution of common issues regarding the calculation of class damages.

## PLAINTIFF'S FACTUAL ALLEGATIONS

95.     On or about March 5, 2013, Defendants and Plaintiff signed an employment contract with respect to fit modeling.  The initial term of the agreement was until March 5, 2016, after which the employment contract was subject to potentially indefinite automatic renewals of one-year increments.

96.     Before Plaintiff signed the MSA employment contract Levine told Plaintiff that MSA Models only works with fit models under an "exclusive" contract.

97.     Defendants hired Plaintiff to perform fit modeling services for Defendants' apparel

industry clients.

98.     Defendants misclassified Plaintiff as an independent contractor.

99.     During her employment by Defendants, Plaintiff was instructed to perform, and in fact performed, approximately 30 go-sees for Defendants' apparel industry clients. Each of these go-sees lasted approximately one hour (exclusive of travel time).

100.    Defendants did not pay, and have not paid Plaintiff, any wages and/or minimum wages, for work performed during at least ten workweeks in which Plaintiff attended a go-see.

101.    Levine required Plaintiff to meet with her in-person at MSA at least once a week. These meetings, including time spent waiting for Levine, lasted approximately half an hour. During these meetings Levine inspected Plaintiff's size.

102.    Defendants did not pay, and have not paid Plaintiff, any wages and/or minimum wages, for at least ten workweeks in which Plaintiff attended a required meeting with Levine.

103.    Defendants also made significant deductions to Plaintiff's wages, including for Defendants' asserted right to deduct 20%-40% of MSA fit models' wages as a "commission" and/or "service charge".

104.    The employment contract Defendants required Plaintiff to sign to work for MSA Models purports to require agreement with the legal conclusion that MSA is not an employment agency.

105.    The employment contract Defendants required Plaintiff to sign to work for MSA Models purports to require agreement with the legal conclusion that Plaintiff is an independent contractor.

106.    Defendants required Plaintiff to comply with the policies and/procedures described below.

107.    Plaintiff frequently communicated with MSA bookers each day regarding the scheduling of go-sees and bookings.

108.    Defendants deducted 35% of Plaintiff's wages from the provision of fit modeling services to apparel industry client QVC and/or Defendants.

109.    Defendants deducted 20% of Plaintiff's wages from the provision of fit modeling services to designer client Carole Hochman and/or Defendants.

110.    Defendants also charged apparel industry client Carole Hochman a 20% "service fee." This fee, although ostensibly a charge to Carole Hochman, upon information and belief, was an additional deduction against Plaintiff's wages from the provision of fit modeling services to Carole Hochman.

111.    Plaintiff's employment contract states that MSA will maintain a "reserve account" funded by deductions of 20% of Plaintiff's wages.  The deductions are deposited a non-interest bearing "reserve" account controlled by MSA, up to a balance of $5,000, in anticipation of future use and/or deductions by Defendants.

112.    Defendants' deductions to Plaintiff's wages were not for the benefit of Plaintiff.

113.    Although Defendants initially made payments to Plaintiff within one week of her performance of fit model services, Defendants subsequently began making payments to Plaintiff more than a month after she earned her wages.

114.    Defendants paid Plaintiff at least one month after she earned her wages throughout the entirety of 2014.

115.    As a result of these late payments, and despite performing work for Defendants during these months, Plaintiff received no wages during January and February 2014, which resulted in Plaintiff receiving less than the minimum wage for her work.

116.    During June 2014, Plaintiff found an advertisement on LinkedIn for an In-House Fit Model/Administrative Assistant position with Cache.

117.    Plaintiff applied to the position during June 2014 without the involvement of MSA Models.

118.    Plaintiff was offered and accepted the position with Cache during June 2014, which she accepted.

119.    On June 30, 2014, Defendants sent Plaintiff correspondence demanding payment of "commissions" of 20%, on all Plaintiff's wages associated with fit modeling, through March 2016.  The letter referenced MSA's position that it was exercising its "exclusive rights" under the MSA employment contract.

120.    MSA Model's correspondence further stated that Defendants were withholding $17,946.41 in Plaintiff's wages.  The wages MSA is withholding include wages for fit modeling work performed by Plaintiff before June 2014.

## CLASS-WIDE AND COLLECTIVE-WIDE FACTUAL ALLEGATIONS

121.    Defendants have uniformly misclassified MSA fit models as independent contractors.

122.    Defendants exert substantial control over MSA fit models.

123.    Defendants controlled Plaintiff, and the members of the Fit Model Collective and the Fit Model Class', terms and conditions of employment.

124.    Defendants have imposed numerous policies, practices, and/or procedures that MSA fit models must comply with, including, but not limited to: (1) prohibiting MSA fit models from discussing their compensation or other terms and conditions of their employment with MSA Model's apparel industry clients; (2) limiting MSA fit models to a maximum of three fittings during go-sees; (3) requiring MSA fit models to attend weekly-in person meetings (*i.e.* fit inspections) with Levine; (4) requiring MSA fit models to be available to attend go-sees on a few hours or notice; (5) penalizing MSA fit models who turn down go-sees; (6) penalizing MSA fit models who turn down bookings; (7) requiring MSA fit models to request vacation; (8) requiring MSA fit models to limit vacations or period of unavailability to one or two weeks; (9) requiring MSA fit models to at all times maintain their sizes; (10) requiring MSA fit models to keep and not re-schedule go-sees and bookings; (11) penalizing MSA fit models if they are late to a go-see or booking; (12); requiring MSA fit models to call or otherwise contact Defendants if they cannot work because of illness or personal reasons, at which point Defendants contact the apparel industry client to identify a replacement fit model; and (13) requiring

16

MSA fit models to utilize a voucher payment system to receive their wages.

125.    Defendants have the power to hire and fire MSA fit models.

126.    Levine personally hired and/or approved the hiring of Plaintiff.

127.    Upon information and belief, Levine personally hired and/or approved the hiring of each member of the Fit Model Class.

128.    Defendants have had the power to fire (and/or constructively discharge) Plaintiff and similarly situated MSA fit models.

129.    Defendants select which MSA fit models to send to a particular apparel industry client for a particular go-see.

130.    Defendants coordinate MSA fit models' work schedules through Defendants' booking staff, which frequently communicate with MSA fit models concerning, *inter alia*, the scheduling of go-sees and bookings.

131.    Levine requires MSA models to be available to meet in-person at MSA Models upon her request, and in any case, to meet in-person at least once a week at MSA Models.

132.    Defendants directly pay MSA fit models their wages.

133.    Defendants set the method of payment for MSA fit models by requiring use of the MSA voucher system for models to obtain payment of their earned wages.

134.    Defendants set the rate of pay for MSA fit models by directly negotiating their rate of pay for fit model work with apparel industry clients.

135.    Defendants set the rate of pay for MSA fit models by imposing a 20%-40% deduction on their wages as a "commission" to MSA Models.

136.    Defendants also determine the rate and method of payment of MSA fit models by unilaterally misclassifying all MSA fit models as independent contractors not subject to minimum wage and overtime laws.

137.    Defendants directly invoice apparel industry clients for MSA fit models' services.

138.   Apparel industry clients contact Defendants with complaints regarding the performance of MSA fit models.

139.   Defendants require MSA fit models to sign "exclusive" multi-year contracts, which automatically renew, potentially indefinitely.

140.   Defendants strictly prohibit MSA fit models from working with other modeling agencies, in any capacity, during the multi-year terms of their employment contracts.

141.   MSA fit models are not permitted to and/or are discouraged from soliciting fit modeling work on their own. In addition, if they do so, MSA requires payment of a 20% "commission" on their work, even where it had no involvement in obtaining the employment. MSA also maintains it is entitled to an additional 20% "service charge" from the wages of the fit model and/or from the apparel industry.

142.   Defendants vigorously seek to enforce their interpretation of the MSA employment contract with MSA fit models by threatening litigation and pursuing litigation action against fit models Defendants contend owe MSA Models a "commission" on their wages.

143.   MSA fit models do not have significant opportunities for profit or loss and/or the chance to invest in their own businesses.

144.   MSA fit models are more akin to wage earners toiling for a living than independent entrepreneurs seeking a return on an investment on risky capital investments.

145.   Defendants restrict MSA fit models from acting like independent business people by, *inter alia*, prohibiting them from; (1) working for more than one modeling agency; and/or (2) obtaining employment without a 20%-40% "commission" to MSA.

146.   MSA fit models' employment prospects are controlled largely by the "go-sees" that MSA schedules (or declines to schedule) for them, and not their own initiative. Defendants control whether and when MSA fit models see potential apparel industry clients.

147.   Defendants' advertisements for fit modeling with MSA state no prior experience is necessary to become a fit model with MSA Models.

148.    Defendants permit the fit models it hires with no prior fit modeling experience to begin working for apparel industry clients after a few weeks of training.

149.    MSA fit models are integral to Defendants' business.

150.    Upon information and belief, the majority of MSA's revenues are obtained through the work of MSA's fit models.

151.    Upon information and belief, MSA Models does not obtain revenue through any means other than "commissions", "service fees", and usage fees associated with its models.

152.    Defendants impose appearance and figure standards on all MSA fit models.  MSA fit models are expected to maintain their proportions and appearance, which policy is enforced by Levine during weekly in-person inspections of MSA fit models at MSA Models.

153.    Defendants maintain employment records through their voucher payment system.

154.    Defendants require MSA fit models to use the MSA composite card.

155.    MSA models perform a discrete line-job integral to Defendants' business by providing fit modeling services: the focus of Defendants' "premiere" business.

156.    MSA models are tied to MSA by their employment contract rather than to apparel industry clients.

157.    When an MSA fit models' employment contract with Defendants terminates, the fit model's relationship with the apparel industry clients for whom they were providing fit modeling services automatically terminates.

158.    Defendants supervise MSA models work through the implementation and enforcement of formal and informal policies.

159.    Under the FLSA and the NYLL more than one employer may be responsible for the failure to pay wages.

160.    Defendants are joint employers of MSA fit models, within the meaning of the FLSA and NYLL.

161.    Defendants establish and apply eligibility criteria for hiring MSA fit models.

162.    In addition to having the power to hire fit models, Defendants had the power to fire models by declining to renew their contract, as well as the power to constructively discharge models by directing MSA personnel to stop booking them on go-sees.

163.    Defendants also had the power to hire, fire, and/or reassign all MSA staff, which could affect the terms and conditions of employment of MSA fit models.

164.    MSA Models did not work at their own convenience, but instead, were expected to be available for go-sees at all times, often on only a few hours notice.

165.    MSA fit models were on Defendants' payroll.

166.    Upon information and belief, MSA has a policy or practice of not paying MSA fit models promptly within the meaning of the FLSA, which has resulted in Plaintiff and similarly situated MSA fit models receiving less than the federal minimum wage.

167.    Upon information and belief, MSA has a policy or practice of failing to pay MSA fit models for all wages earned.

168.    Upon information and belief, Defendants have still not paid members of the Fit Model Class and Fit Model Collective hundred of thousands, if not millions, of dollars in earned wages.

169.    Upon information and belief, Defendants have a policy or practice of only paying all wages due when MSA fit models complain about underpayments.

170.    Upon information and belief, the delays in payment of wages to Plaintiff, and similarly situated fit models, were intentional and increased Defendants' profits through additional accrued interest to Defendants (*i.e.* "the float"), and/or because these delays in payment otherwise financially benefited Defendants.

171.    Upon information and belief, Defendants' non-payment of earned wages to MSA's fit models was intentional, and financially benefited Defendants, by permitting Defendants to obtain payment for the full value of its models' services from apparel industry clients at no cost to MSA.

172.    There is no reasonable business justification for Defendants' substantial delays in paying wages and/or non-payment of wages to Plaintiff and similarly situated MSA fit models.

173.    MSA is an "employment agency" within the meaning of GBL §§ 171.

174.    Plaintiff and similarly situated MSA fit models are "artists" within the meaning of GBL § 171(8-a) because they are models.

175.    Upon information and belief, MSA is not licensed as an employment agency by the NYC Department of Consumer Affairs as required by GBL § 172.  MSA is therefore operating in violation of GBL § 172 as an unlicensed employment agency.

176.    The operation of an unlicensed employment agency is a misdemeanor punishable by imprisonment not to exceed one year.  GBL § 190.

177.    Upon information and belief, MSA Models has failed to comply with any of the requirements for employment agencies stated in Article 11 of the GBL.

178.    Because the MSA employment contract violates GBL § 172 Defendants may not enforce it against Plaintiff or similarly situated MSA fit models with respect to MSA's asserted right to "commissions" of 20%-40% of their wages.

179.    Defendants have a policy or practice of deducting wages and/or charging MSA fit models higher than the 10% fee described in GBL § 185 (as per class c employees).

180.    Defendants have a policy or practice of charging its apparel industry clients more than the 10% fees permitted by GBL § 185.

181.    Defendants have a policy or practice of making illegal deductions from MSA fit models' wages in violation of NYLL § 193.  These illegal policies and practices are explicitly stated in Plaintiff's, and upon information and belief, similarly situated MSA fit models' MSA employment contracts.

182.    Defendants' deductions to MSA fit models' wages were not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency.

21

183.    In the alternative, to the extent GBL §185 authorizes deductions of commissions from Plaintiff and similarly situated MSA fit models' wages, Defendants have deducted more than the 10% fee authorized by GBL § 185(8), and all deducted commissions above this amount have been violations of NYLL § 193.

184.    Defendants' deductions to MSA fit models' wages were not for the benefit of Plaintiff or similarly situated MSA fit models.

185.    Defendants' deductions for its "commissions" were, *inter alia*, for the purpose of Defendants' administrative costs, which is explicitly prohibited by the NYLL § 193, and supporting New York State Department of Labor Regulations.

186.    Defendants provision in their employment contract for the authorization of deductions from MSA fit models' wages, were not entered into voluntarily, within the meaning of NYLL § 193(1)(b), by Plaintiff or similarly situated fit models.

187.    Defendants' deductions for any and all "expenses," as described in the MSA employment contract, is not authorized by NYLL § 193 and supporting New York State Department of Labor Regulations.

188.    Defendants use of a non-interest-bearing "reserve account," as described above, is an unlawful deduction from wages prohibited by the NYLL § 193, and supporting New York State Department of Labor Regulations.

189.    The MSA employment contract Plaintiff signed, and upon information and belief, those signed by similarly situated MSA fit models, explicitly describe and/or refer to the above-referenced wage deductions as "deductions."

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the Members of the Fit Model Collective)**

190.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

191.    At all times relevant, Plaintiff and the members of the Fit Model Collective were employed and/or jointly employed by Defendants within the meaning of the FLSA.

192.    At all times relevant, Defendants have engaged in a widespread, pattern, policy, and/or practice of violating the FLSA, as detailed in this Class and Collective Action Complaint, including misclassifying Plaintiff and the members of the Fit Model Collective as independent contractors, and failing to pay them the minimum wage for all hours Defendants suffered or permitted them to work.

193.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et seq.* and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the Fit Model Collective.

194.    At all times relevant, Defendants failed or refused to pay Plaintiff, and the members of the Fit Model Collective, at a rate equal to or greater than the federal minimum wage for all weeks worked, which violated the FLSA.  29 U.S.C. § 206.

195.    At all times relevant, Plaintiff and the members of the Fit Model Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206 and 207.

196.    At all times relevant, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206 and 207.

197.    At all times relevant, Plaintiffs were employees within the meaning of the FLSA.

198.    Defendants have failed to pay Plaintiff and the members of the Fit Model Collective the minimum wages to which they were entitled under the FLSA.

199.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et seq.* and the

supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the Fit

Model Collective.

200.    Defendants have not made a good faith effort to comply with the FLSA with respect to

their compensation of Plaintiff and the members of the Fit Model Collective.

201.    As a result of the unlawful acts of Defendants, Plaintiff and the members of the Fit Model

Collective have been deprived of minimum wage compensation and other wages in amounts to be

determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment

interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

202.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the members of

the Fit Model Collective have suffered damages by being denied minimum wages in accordance with 29

U.S.C. §§ 201 *et seq.*

203.    The members of the Fit Model Collective are entitled to collectively participate in this

action by choosing to "opt-in" and submitting written Consents to Join this action.  29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Failure to Pay Wages Promptly
### (Brought on Behalf of Plaintiff and the Members of the Fit Model Collective)

204.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

205.    At all times relevant, Plaintiff and the members of the Fit Model Collective were

employed and/or jointly employed by Defendants within the meaning of the FLSA.

206.    At all times relevant times, Defendants have engaged in a widespread, pattern, policy,

and/or practice of violating the FLSA, as detailed in this Class and Collective Action Complaint,

including misclassifying Plaintiff and the members of the Fit Model Collective as independent

contractors and failing to pay them the minimum wage for all hours Defendants suffered or permitted

them to work.

207.    At all times relevant, Plaintiff and the members of the Fit Model Collective were engaged

in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206 and 207.

208.    At all times relevant, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

209.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et seq*. and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the Fit Model Collective.

210.    Defendants failed to pay Plaintiff and the members of the Fit Model Collective promptly after their wages were earned, as required by the FLSA.  As a result, Plaintiff and the members of the Fit Model Collective were paid less than the minimum wage during these workweeks.

211.    As a result of the failure to pay wages promptly, Plaintiffs and the members of the Fit Model Collective have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts and/or liquidated damages, prejudgment interest, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

212.    The members of the Fit Model Collective are entitled to collectively participate in this action by choosing to "opt-in" and submitting written Consents to Join this action.  29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
**Fair Labor Standards Act – Recordkeeping Violations**
**(Brought on Behalf of Plaintiff and the Members of the Fit Model Collective)**

213.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

214.    Upon information and belief, Defendants failed to make, keep, and preserve accurate records with respect to Plaintiff and the members of the Fit Model Collective, including hours worked each workday and total hours worked each week, as required by the FLSA 29 U.S.C. § 211(c), and supporting federal regulations.

**FOURTH CAUSE OF ACTION**
**New York Labor Law Article 19 – Minimum Wage**
**(Brought on behalf of Plaintiff and the Members of the Fit Model Class)**

215.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

216.    Defendants failed to pay Plaintiff and the members of the Fit Model Class all of the minimum wages to which they are entitled under the NYLL.

217.    At all times relevant, Defendants have engaged in a widespread pattern, policy, and/or practice of violating the NYLL, as detailed in this Class and Collective Action Complaint.

218.    At all times relevant, Plaintiff, and the members of the Fit Model Class, have been employees and Defendants have been employers within the meaning of NYLL §§ 190, 651(5), 652 and the supporting New York State Department of Labor Regulations.

219.    At all times relevant, the minimum wage provisions of Article 19 of the NYLL, and the supporting New York State Department of Labor Regulations, have applied to Defendants and protected Plaintiff and the members of the Fit Model Class.

220.    At all times relevant, Defendants were required to pay Plaintiff, and the members of the Fit Model Class, a minimum wage for all hours worked in a workweek at a rate of: (1) $7.15 per hour for all hours worked from January 1, 2007 through July 9, 2009; and (2) $7.25 per hour for all hours worked from July 24, 2009 through the present, under NYLL § 652 and the supporting New York State Department of Labor Regulations.

221.    At all times relevant, Defendants failed to pay Plaintiff, and members of the Fit Model Class, minimum wages for all hours worked to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

222.    By Defendants' knowing or intentional failure to pay Plaintiff, and the members of the Fit Model Class, minimum wages for all of the hours they worked, Defendants have willfully violated the NYLL Art. 19 650 *et. seq.* and the supporting New York State Department of Labor regulations.

223.    Due to Defendants' violations of the NYLL, Plaintiffs, and the members of the Fit Model Class, are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
#### New York Labor Law – Failure to Pay Wages Due
#### (Brought on behalf of Plaintiff and the Members of the Fit Model Class)

224.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

225.    At all times relevant, Defendants have been employers and/or joint employers within the meaning of the NYLL.

226.    At all times relevant, Plaintiff and the members of the Fit Model Class were employees within the meaning of the NYLL § 651(5).

227.    At all times relevant, Plaintiff and the members of the Fit Model Class were a "clerical or other worker" or "manual worker" within the meaning of NYLL § 191.

228.    At all times relevant, Plaintiff and the members of the Fit Model Class were entitled to at least bi-weekly payment of their wages.  NYLL § 191.

229.    At all times relevant, Defendants willfully failed to pay Plaintiff, and the members of the Fit Model Class, all of their wages on a weekly or bi-weekly basis.

230.    By Defendants' knowing or intentional failure to pay Plaintiff and the members of the Fit Model Class, Defendants have willfully violated the NYLL and the supporting New York State Department of Labor regulations.

231.    These unpaid earned wages are still due to Plaintiff and the members of the Fit Model Class.

232.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Fit Model Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Unlawful Wage Deductions
### (Brought on behalf of Plaintiff and the Members of the Fit Model Class)

233.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

234.    At all times relevant, Plaintiff and the members of the Fit Model Class have been employees within the meaning of the NYLL.

235.    At all times relevant, Defendants have been employers and/or joint employers within the meaning of the NYLL.

236.    The wage deduction provisions of NYLL § 193, and the supporting New York State Department of Labor Regulations, apply to Defendants and protect Plaintiff and the members of the Fit Model Class.

237.    Defendants have willfully reduced the wages of Plaintiff and the members of the Fit Model Class by making unlawful deductions from their wages.

238.    Defendants have made deductions to the wages of Plaintiff, and the members of the Fit Model Class, with respect to Defendant's 20% "commission", 20% "service charge", and/or other expenses asserted by MSA.

239.    Defendants' deductions were not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency.

240.    In the alternative, to the extent GBL § 185 has authorized deductions from the wages of Plaintiff and the members of the Fit Model Class, that authorization was limited to deductions totaling a maximum fee of 10% of models' wages, and deductions above this amount were not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency.

241.    Defendants' deductions for "commissions" and/or additional payments to Defendants from the wages of Plaintiff and the members of the Fit Model Class, were not for the benefit of Plaintiff and/or the members of the Fit Model Class.

242.     Plaintiff, and the members of the Fit Model Class did not receive written notice of all terms and conditions of the deduction of their wages, inclusive of the details of the manner in which deductions would be made, before signing the MSA employment contract.

243.     Defendants' deductions for any and all generalized "expenses," as set forth in the MSA employment contract, are not authorized by NYLL § 193 and supporting New York State Department of Labor Regulations.

244.     Some, or all of Defendants' deductions for "commissions," were for the purpose of Defendants' administrative costs, which is explicitly prohibited by NYLL § 193 and supporting New York State Department of Labor Regulations.

245.     Defendants maintenance of a "reserve account," as described above is an unlawful deduction from wages prohibited by the NYLL § 193 and supporting New York State Department of Labor Regulations.

246.     The MSA employment contracts signed by Plaintiff, and the members of the Fit Model Class, explicitly describe and/or refer to to the above-referenced deductions as "deductions."

247.     Defendants' violations of NYLL § 193, as described herein, have been willful and intentional.

248.     Due to Defendants' violations of the NYLL, Plaintiff, and the members of the Fit Model Class, are entitled to recover from Defendants deductions from their wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### SEVENTH CAUSE OF ACTION
#### New York Labor Law – Recordkeeping Violations
#### (Brought on behalf of Plaintiff and the Members of the Fit Model Class)

249.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

250.     Defendants failed to make, keep and preserve accurate records with respect to Plaintiff, and the members of the Fit Model Class, including hours worked each workday and total hours worked

each workweek, as required by NYLL Art. 19 650 *et seq*., and supporting regulations.

## EIGHTH CAUSE OF ACTION
### Declaratory Judgment Act – Declaratory Relief
### (Brought on behalf of Plaintiff and the Members of the Fit Model Class)

251.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

252.    At all times relevant, Defendants' MSA employment contract have been in violation of Article 11 of the General Business Law because, *inter alia*, the contract: (1) was made by an unlicensed employment agency in violation of GBL § 172; and/or (2) includes "commissions" for Defendants deducted from MSA models' wages greater than the 10% maximum fee permitted by GBL § 185.

253.    There is a substantial and continuing controversy between Defendants on the one hand, and Plaintiff and the members of the Fit Model Class on the other, and a declaration of rights is both necessary and appropriate to establish that Defendants may not or may, fully or partially, enforce their illegal employment contracts against Plaintiff and the members of the Fit Model Class, with respect to the deduction and/or collection of "commissions."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on her own behalf, and on behalf of all other similarly situated persons, seeks the following relief:

A.    That at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to the members of the Fit Model Collective, as defined above.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid minimum wages, and an additional equal amount as liquidated damages, pursuant to the FLSA and the supporting United States Department of Labor regulations,

C.      Liquidated damages in the amount of unpaid minimum wages that were eventually paid, but not paid promptly within the meaning of the FLSA;

D.      Unpaid minimum wages pursuant to NYLL § 650 and the supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages, pursuant to NYLL § 663;

E.      Unpaid wages due pursuant to NYLL § 191, and the supporting New York State Department of Labor regulations, and an additional and equal amount as liquidated damages, pursuant to NYLL § 663;

F.      Unpaid deductions from their wages pursuant to NYLL § 191, and an additional equal amount as liquidated damages, pursuant to NYLL § 663

G.      Certification of the Fit Model Class set forth above pursuant to Rule 23 of the Federal Rules of Civil Procedure;

H.      Designation of Plaintiff as class representative and counsel of record as Class Counsel;

I.      Pre-judgment interest and post-judgment interest;

J.      Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the FLSA;

K.      Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the NYLL;

L.      Issuance of a declaratory judgment that Defendants are joint employers pursuant to the FLSA and NYLL;

M.      Issuance of a declaratory judgment that Plaintiff, the Fit Model Collective, and the Fit Model Class are employees within the meaning of the FLSA and NYLL;

N.   Issuance of a declaratory judgment that Defendants violated NYLL § 191 by failing to pay Plaintiff, and the members of the Fit Model Class, their wages as required by NYLL § 191.

O.   Issuance of a declaratory judgment that all or some categories of Defendants' deductions from the wages of Plaintiff and the members of the Fit Model Class violated NYLL § 193.

P.   Issuance of a declaratory judgment that Defendants are "employment agencies" within the meaning of GBL § 171.

Q.   Issuance of a declaratory judgment that Defendants may not enforce their employment contract against Plaintiff and/or the members of the Fit Model Class, or in the alternative, Defendants may not do so with respect to the deduction and/or collection of "commissions" above the 10% cap imposed by GBL § 185;

R.   An injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA, and an order enjoining Defendants from continuing their unlawful policies and practices as described herein;

S.   An injunction requiring Defendants to pay all statutorily required wages pursuant to the NYLL, and an order enjoining Defendants from continuing their unlawful policies and practices as described herein;

T.   Reasonable attorney's fees and costs of the action; and

U.   Such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: September 26, 2014
        New York, New York

Respectfully submitted,

By:_____

Cyrus E. Dugger

**THE DUGGER LAW FIRM, PLLC**
154 Grand St.
New York, NY 10013
Tel:  (646) 560-3208

*Attorney for the Plaintiff, the Collective, and the Putative Class*