UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
EVA AGERBRINK, individually and on behalf                   :
of all others similarly situated,                           :
                                            Plaintiff,      :
                                                            :         14-CV-7841 (JPO)
                                                            :
                    -v-                                     :
                                                            :         OPINION AND ORDER
                                                            :
MODEL SERVICE LLC d/b/a MSA MODELS                          :
and SUSAN LEVINE,                                           :
                                            Defendants.     :
                                                            :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        Plaintiff Eva Agerbrink ("Agerbrink" or "Plaintiff"), on behalf of herself and all others

similarly situated, brings this action against Defendants Model Service LLC, doing business as

MSA Models ("MSA"), and Susan Levine (together with MSA, "Defendants").  The complaint

asserts violations of federal and state wage and hour laws on behalf of Plaintiff and similarly

situated persons.  Plaintiff also seeks a declaratory judgment regarding the contract entered into

between Plaintiff and Defendants, and also regarding contracts between similarly situated models

and Defendants.  Defendants now move to dismiss the complaint.  For the reasons that follow,

Defendants' motion is granted in part and denied in part.

I.      **Background**

        A.      **Facts**[1]

        Agerbrink alleges that she was employed by Defendants as a fit model between March

2013 and June 2014.  (Dkt. No. 16 ("Am. Compl.") ¶ 35.)  Fit models "work[] with members of

_____

[1] The following facts are taken from the allegations in the amended complaint (Dkt. No. 16),
which are accepted as true at this stage.

the apparel manufacturing industry to check the fit, drape, and visual appearance of a design on a real human being." (*Id.* ¶ 1.)  Defendant Susan Levine is the owner,[2] President, and CEO of Defendant MSA.  (*Id.* ¶ 37.)  Levine and MSA act as joint employers of MSA fit models.  (*Id.* ¶¶ 39, 49-59, 61-64, 74-79.)  According to the complaint, Levine and MSA "uniformly misclassified MSA fit models as independent contractors." (*Id.* ¶¶ 41-42, 69-70.)  As a result, Agerbrink asserts that she and similarly situated models are owed overtime and minimum wages, as well as relief for other wage and hour violations.  (*Id.* ¶¶ 15, 98, 107.)  The complaint also claims that Defendants have violated certain New York statutory provisions regarding employment agencies, detailed further below.  (*Id.* ¶¶ 43-45, 72-73, 89-93.)

The complaint makes a number of allegations as to the particulars of Agerbrink's relationship with Defendants.  Agerbrink and Defendants entered into a contract,[3] attached to the complaint as Exhibit A, on March 5, 2013.  (*Id.* ¶ 114; *id.* Ex. A.)  During the term of the contract, Agerbrink alleges that Defendants did not pay her any wages for certain work she performed.  (*Id.* ¶¶ 120, 123-24.)  Defendants also deducted portions of Agerbrink's wages when she performed "fit modeling services" for various designer clients.  (*Id.* ¶¶ 130-33.)  Further, the complaint also asserts that Agerbrink was, at times, "not paid promptly." (*Id.* ¶¶ 138-41.)

Agerbrink, on behalf of herself and all those similarly situated, seeks relief under federal and state wage and hour laws.  (*Id.* ¶¶ 255-318.)  She also seeks declaratory relief concerning whether certain provisions of her contract (and the contracts of similarly situated parties) with Defendants violate provisions of New York law.  (*Id.* ¶¶ 319-24.)

---

[2] Another portion of the complaint states that Levine owned 95% of MSA as of March 2001. (Am. Compl. ¶ 60.)

[3] Agerbrink calls this an "employment contract"; the contract itself is titled "Management Agreement." (Am. Compl. ¶ 114; *id.* Ex. A, at 1.)

### B.      Procedural History

Agerbrink filed this action on September 26, 2014.  (Dkt. No. 1.)  Defendants moved to dismiss the original complaint on December 19, 2014.  (Dkt. No. 13.)  On January 2, 2015, Agerbrink filed an amended complaint (Dkt. No. 16), and consequently, the Court denied the initial motion to dismiss as moot (Dkt. No. 20).  On January 20, 2015, Defendants filed the instant motion to dismiss.  (Dkt. No. 17.)  Agerbrink opposed the motion (Dkt. No. 22), and Defendants replied (Dkt. No. 23).

## II.      Discussion

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 191 (2d Cir. 2014) (internal quotation marks and brackets omitted), *cert. denied*, 135 S. Ct. 1853 (2015).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court will not consider mere conclusory allegations that lack a factual basis.  *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010).

### A.      New York General Business Law Article 11

The complaint requests declaratory relief regarding the interaction between certain provisions appearing in MSA contracts and various sections of Article 11 of the New York General Business Law ("GBL").  Article 11 governs employment agencies.  One of its subsections, GBL § 172, requires the licensing of such "employment agencies," as defined under

the statute.  N.Y. Gen. Bus. Law § 172.  Agerbrink asserts that Defendants operate MSA "as an unlicensed employment agency" in violation of GBL § 172.  (Am. Compl. ¶ 320.)  Agerbrink also asserts that MSA's 20% commission in fit models' contracts "explicitly violates GBL § 185."  (*Id.* ¶ 321).  As relevant here, GBL § 185 provides for a fee ceiling of "ten per cent of the compensation payable to the applicant" for "theatrical" employment.  N.Y. Gen. Bus. Law § 185(8).  Plaintiff asserts that this 10% cap applies to fit models.[4]  (Dkt. No. 22 ("Pl. Br.") at 4 & n.3.)

GBL § 189 provides that "in the city of New York," Article 11 "shall be enforced by the commissioner of consumer affairs."  N.Y. Gen. Bus. Law § 189(1).  "The statute states that complaints against employment agencies should be made orally or in writing to the commissioner, who may hold a hearing on the matter and may suspend or revoke licenses, or levy a fine against a licensed agency not to exceed $500."  *See Columbia Artists Mgmt., LLC v. Swenson & Burnakus, Inc.*, No. 05 Civ. 7314 (LBS), 2008 WL 4387808, at *5 (S.D.N.Y. Sept. 28, 2008) (citing N.Y. Gen. Bus. Law § 189(2), (4), (5)).  Additionally, GBL § 190 provides "a right for commissioners and aggrieved individuals to bring a criminal proceeding against corporate officers and major stockholders who knowingly permit violations of sections of Article 11."  *Id.*

Plaintiff asserts that Defendants "intend to continue to enforce their illegal contractual commission provision" against Plaintiff and the putative class members.  (Am. Compl. ¶ 323.)  Among other relief, Plaintiff seeks the "[i]ssuance of a declaratory judgment that, as a result of

---

[4] The Court assumes without deciding that the 10% theatrical employment cap applies to Plaintiff and other fit models.  The GBL provides that a "theatrical engagement" means "any engagement or employment of an artist," and states that the category of "artist" includes "models."  N.Y. Gen. Bus. Law § 171(8-a), (9).

their unlicensed operation in violation of GBL § 172, and charging of excessive fees in violation of GBL § 185, Defendants may not prospectively enforce their contractual right to commissions, against Plaintiff and/or the members of the [putative class], above the 10% amount permitted by GBL § 185." (*Id.* at 50 ¶ S.)

### 1.    Private Right of Action Under GBL Article 11

Defendants, in their motion, contend that Plaintiff cannot maintain a claim for a declaratory judgment because there is no private right of action[5] under Article 11 of the GBL, which contains both GBL §§ 172 and 185.  (Dkt. No. 18 ("Def. Br.") at 3.)  As Plaintiff concedes, recent cases are all but unanimous in rejecting a private right of action under Article 11, largely on the basis of the enforcement scheme set out in the statute.  *See Rhodes v. Herz*, 920 N.Y.S.2d 11, 12 (App. Div. 1st Dep't 2011) (Román, J.) ("We hold, and indeed not for the

---

[5] A private right of action under New York law may be provided either expressly or impliedly. "In the absence of an express private right of action, plaintiffs can seek civil relief in a plenary action based on a violation of [a] statute 'only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history.'"  *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 226 (N.Y. 2013) (quoting *Carrier v. Salvation Army*, 667 N.E.2d 328, 329 (N.Y. 1996)).  To determine whether a private right of action is "'fairly implied' in [a] statute and its legislative history, New York courts consider '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether the creation of such a right would be consistent with the legislative scheme.'"  *EEOC v. Vamco Sheet Metals, Inc.*, No. 13 Civ. 6088 (JPO), 2014 WL 2619812, at *7 (S.D.N.Y. June 5, 2014) (quoting *Maraia v. Orange Reg'l Med. Ctr.*, 882 N.Y.S.2d 287, 289-90 (App. Div. 2d Dep't 2009)).  The third factor "is generally the 'most critical.'"  *Carrier*, 667 N.E.2d at 329 (quoting *Brian Hoxie's Painting Co. v. Cato-Meridian Cent. School Dist.*, 556 N.E.2d 1087, 1089 (N.Y. 1990)).  This is because "the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves.  Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme."  *Sheehy v. Big Flats Cmty. Day, Inc.*, 541 N.E.2d 18, 21 (N.Y. 1989).  Accordingly, New York courts have "declined to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."  *Cruz*, 2 N.E.3d at 226 (internal quotation marks and brackets omitted).

first time, that [GBL] article 11 does not provide either an express or an implied private right of action against licensed or unlicensed employment agencies or their agents."); *Columbia Artists Mgmt.*, 2008 WL 4387808, at *5-8 (analyzing the Article 11 statutory scheme, discussing New York state case law interpreting Article 11, and concluding that the statute provides no private right of action); *Masters v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB), 2003 WL 145556, at *6-8 (S.D.N.Y. Jan. 17, 2003) (same).  For the reasons set out in these cases, the Court agrees that Article 11 provides no private right of action.[6]

## 2.    Declaratory Relief Under Article 11

Agerbrink contends that the lack of a private right of action is "academic . . . because Plaintiff does not 'bring' an action pursuant to Article 11."  (Pl. Br. at 3 n.2.)  However, Agerbrink's request for declaratory relief is entirely premised on GBL Article 11.  She asks the court for a declaration that Defendants "(1) are 'employment agencies'; (2) have been operating without a license in violation of GBL § 172 . . . ; (3) have been charging excessive fees above the 10% [that] GBL § 185 permits; and (4) therefore may not prospectively enforce their contractual entitlement to commissions above 10%."  (*Id.* at 5 n.4.)

---

[6] Even if Plaintiff contested this point, the Court is likely compelled to rule that there is no private right of action.  In matters of state law, this Court is generally bound to follow the holdings of the New York Appellate Division.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (holding that, "[i]n the absence of any contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise," a federal court must "follow the state law decisions of state intermediate appellate courts" (quoting *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445-46 (2d Cir. 1993)) (internal quotation marks and brackets omitted)).  The Appellate Division in *Rhodes*, 920 N.Y.S.2d 11, held that there was no express or implied private right of action under Article 11, and the Court has not been presented with any authority or "persuasive data" that shows that the New York Court of Appeals would rule otherwise.  Indeed, the only case cited by Plaintiff that holds to the contrary has been explicitly overruled.  *See Shelton v. Elite Model Mgmt., Inc.*, 812 N.Y.S.2d 745 (N.Y. Sup. Ct. 2005), *abrogated by Rhodes*, 920 N.Y.S.2d at 16 ("Contrary to . . . the holding in *Shelton* . . . , we again conclude that article 11 does not promulgate an express right of action.").

While Plaintiff insists that she may seek a declaratory judgment even though the relevant statutes do not provide a private right of action, the New York Court of Appeals has rejected this precise argument.  In *Schlessinger v. Valspar Corp.*, 991 N.E.2d 190 (N.Y. 2013) [hereinafter *Schlessinger II*], the Court of Appeals considered a declaratory action seeking to void provisions in a contract asserted to be in violation of a different New York statute, GBL § 395-a.  *Id.* at 191.  The court had accepted the certification of the following question from the Second Circuit: "May parties seek to have contractual provisions that run contrary to General Business Law § 395-a declared void as against public policy?"  *Id.* at 192.  The Court of Appeals answered the question in the negative, on the grounds that "there is no express or implied private right of action to enforce section 395-a," and that, furthermore, "the legislature did not include in section 395-a specific language invalidating inconsistent contract provisions, as it did elsewhere in the General Business Law."  *Id.*  The court accordingly concluded that, acting alone, "General Business Law § 395-a does not make contract clauses that contradict its terms null and void," *id.* at 190, and that private lawsuits on the basis of GBL § 395-a were not permitted, *id.* at 192.

Beyond the discussion in the *Schlessinger II* opinion, the Court of Appeals' determination that declaratory relief is not available without a private right of action is even clearer for the following two reasons.  First, the dissenting judge in *Schlessinger II* stated that, in his view, "[t]o permit a suit to obtain . . . a declaration [that certain contract clauses are unenforceable] is not to recognize a 'private right of action' under the statute."  *Id.* at 194 (Smith, J., dissenting in part).  In other words, the dissenting judge agreed that GBL § 395-a does not create a private right of action, but took the view that a plaintiff could nonetheless sue under the statute and obtain a declaration of invalidity.  Accordingly, he would have answered yes to the

question certified by the Second Circuit.  *Id.*  But this view was rejected by the *Schlessinger II*
majority.

Second, the precise line of cases invoked by Plaintiff (*see* Pl. Br. at 12-20)—New York
state case law concerning the enforceability of illegal contracts, and more particularly,
enforcement of contracts "notwithstanding the fact that [a party] did not have the license
necessary to enter into the contract"—was explicitly discussed in the Second Circuit's opinion
that certified the question answered by the Court of Appeals in *Schlessinger II*.  *See Schlessinger
v. Valspar Corp.*, 686 F.3d 81, 85-88 (2d Cir. 2012) (citing authorities relied upon by Plaintiff,
including *Benjamin v. Koeppel*, 650 N.E.2d 829 (N.Y. 1995); *Richards Conditioning Corp. v.
Oleet*, 236 N.E.2d 639 (N.Y. 1968); and *John E. Rosasco Creameries, Inc. v. Cohen*, 11 N.E.2d
908 (N.Y. 1937)).  Indeed, the Second Circuit cited the tension between New York's licensing-
related contract enforceability decisions and the implied right of action decisions as the rationale
for certifying the question to the New York Court of Appeals.  *Id.* at 87-88.  The Court of
Appeals did not discuss its contract enforceability precedent in answering the certified question,
and instead relied only on case law concerning implied rights of action in determining that no
relief was available under GBL § 395-a.  *See Schlessinger II*, 991 N.E.2d at 192-93.  By doing
so, *Schlessinger II* implicitly held that New York's contract enforceability decisions do not
govern suits like this one, where a plaintiff affirmatively requests relief under a statutory scheme
that provides no private right of action.

### 3.    Other Case Law

Several other recent decisions from New York intermediate appellate courts have also
concluded that declaratory relief is unavailable in the context of statutory schemes that do not
provide for a private right of action.  *See Delgado v. N.Y.C. Hous. Auth.*, 888 N.Y.S.2d 19, 21

(App. Div. 1st Dep't 2009) (holding that "petitioners do not have a private right of action for the injunctive and declaratory relief sought" because "[o]nly the Commissioner of the New York City Department of Housing Preservation and Development is authorized to seek such relief or other sanctions and remedies for violations of the Housing Maintenance Code"); *cf. Heritage Springs Sewer Works, Inc. v. Boghosian*, 875 N.Y.S.2d 635, 640 (App. Div. 3d Dep't 2009) (concluding that a declaratory judgment action was not appropriate, in part, because the "Transportation Corporations Law does not provide a private right of action").

Additionally, this Court recently considered a suit seeking a declaration under a GBL provision concerning vehicle rentals that, like GBL Article 11, provides no private right of action. *See Sigall v. Zipcar, Inc.*, No. 13 Civ. 4552 (JPO), 2014 WL 700331 (S.D.N.Y. Feb. 24, 2014) (Oetken, J.), *aff'd*, 582 F. App'x 18 (2d Cir. 2014) (summary order). In *Sigall*, the plaintiffs had sought, among other relief, "a declaration that Zipcar must comply with GBL § 396-z and that any charges for damages imposed without strict compliance with § 396-z are void." 2014 WL 700331, at *2 (internal quotation marks and ellipsis omitted). The Court dismissed this cause of action for failure to state a claim, ruling that the plaintiffs were not "permitted to circumvent the legislative preclusion of private lawsuits for violation of § 396-z by rephrasing" the claim as a demand for a declaration of voidness under the statute. *Id.* at *4 (quoting *Han v. Hertz Corp.*, 784 N.Y.S.2d 106, 107 (App. Div. 1st Dep't 2004)) (internal quotation marks and brackets omitted). The Second Circuit summarily affirmed, holding that "Appellants' claim for declaratory and injunctive relief is squarely barred" by the decisions of the New York courts holding that there was no private right of action under GBL § 396-z. *Sigall*, 582 F. App'x at 19-20.

4.      **Conclusion**

As in *Sigall*, the Court cannot permit Plaintiff to "circumvent the legislative preclusion of private lawsuits," 2014 WL 700331, at *4, under Article 11 by allowing her to rephrase her request for relief as one for a declaratory judgment.  Plaintiff asserts that she "is *not* seeking a declaration that the MSA contract is void *ab initio*, merely that it is prospectively *unenforceable* by MSA against Plaintiff and other MSA fit models above the 10% commission rate permitted by GBL § 185."  (Pl. Br. at 7.)  But Plaintiff offers no reason for the Court to conclude that this distinction is meaningful in the present context.[7]  Because Plaintiff's "purported claim would not have existed absent provisions in a statute," "allowing the cause of action would invite a backdoor private cause of action to enforce that statute."  *Schlessinger v. Valspar Corp.*, 723 F.3d 396, 399 (2d Cir. 2013) (per curiam) (quoting *Schlessinger II*, 991 N.E.2d at 193) (internal quotation marks omitted).  Plaintiff's claim for declaratory relief predicated on Article 11 cannot be maintained.  Therefore, Defendants' motion to dismiss the declaratory judgment claim is granted.

B.      **Allegations Regarding the New York City Modeling Industry**

Defendants complain that Agerbrink has asserted "claims about the New York City modeling industry, in general, that are not aimed directly . . . at MSA or Susan Levine."  (Def. Br. at 12.)  Defendants list twenty specific paragraphs of the amended complaint that they assert

---

[7] Indeed, the same result may obtain even if Agerbrink were attempting to assert an affirmative defense based on the same provisions of the GBL.  *See Columbia Artists Mgmt.*, 2008 WL 4387808, at *8 (dismissing affirmative defense under GBL Article 11 because of the lack of a private right of action, and holding that "where there is no private right of action for a claim, a party cannot assert that same violation as grounds for an affirmative defense" (citing *P&T Iron Works v. Talisman Contracting Co.*, 795 N.Y.S.2d 306, 307 (App. Div. 2d Dep't 2005); *Banque Indosuez v. Pandeff*, 603 N.Y.S.2d 300, 304 (App. Div. 1st Dep't 1993))).

are "claims" that "must be dismissed for these reasons." (*Id.* at 12-14.)  This argument is without

merit.

Initially, this portion of Defendants' motion is puzzling because it requests that the Court

"dismiss" particular factual allegations, rather than legal claims.  The proper manner to seek this

type of relief would be to move to strike these allegations under Rule 12(f), not through a motion

to dismiss claims under Rule 12(b)(6).  *Compare* Fed. R. Civ. P. 12(f) ("The court may strike

from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."), *with* Fed. R.

Civ. P. 12(b) (permitting defenses "to a claim for relief" to be asserted by motion).  The Court

notes that even if Defendants had moved to strike these allegations, however, such a motion

would have been fruitless.  The allegations that Defendants identify do not meet any part of the

high standard for striking them.  *See Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410 (JPO), 2015

WL 1454646, at *19 (S.D.N.Y. Mar. 31, 2015) ("To prevail on a motion to strike, the defendant

must show that: (1) no evidence in support of the allegations would be admissible; (2) the

allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand

would result in prejudice to the movant." (internal quotation marks omitted)).

As part of a Rule 12(b)(6) motion, Defendants' argument also fails.  Many of the

paragraphs identified by Defendants make direct assertions concerning MSA, even as they state

that MSA's allegedly unlawful conduct may be in line with industry practice.  (*See, e.g.*, Am.

Compl. ¶¶ 4, 16-17, 19-21, 23-26.)  The other paragraphs to which Defendants object—all of

which fall within the complaint's "Introduction" section—make statements about employment

practices in the New York City modeling industry.  For instance, the complaint asserts that

"[a]lthough many, if not all, NYC modeling agencies maintain that their models are independent

contractors, this nearly industry-wide imposed label is often legally incorrect." (*Id.* ¶ 7.)

11

The Second Circuit has held that the adherence of a defendant in an FLSA suit to industry practice does not establish its good-faith compliance with the wage and hour laws.  *See Reich v. S. New Eng. Telecom. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  However, industry practice is not categorically irrelevant.  *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 73-74 (2d Cir. 2003).  As the Second Circuit has explained, "the prevalence of an industry-wide custom is subject to conflicting inferences":  on one hand, it "may be unlikely that a prevalent action is a mere subterfuge to avoid complying with labor laws," but on the other, "the very prevalence of a custom may be attributable to widespread evasion of labor laws."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 146 (2d Cir. 2008) (quoting *Zheng*, 355 F.3d at 73-74) (internal quotation marks omitted).  Thus, while it is not precisely clear what inferences (if any) may be drawn from Agerbrink's allegations about the modeling industry, the complaint's references to industry practice are at least potentially relevant to the FLSA claims against Defendants.  Accordingly, these allegations are not improper.

### C.    Allegations Concerning FLSA Recordkeeping Violations

Defendants ask the Court to dismiss Agerbrink's "claims" regarding FLSA recordkeeping violations.  (Def. Br. at 15.)  It is true that "the general consensus is that the FLSA provides no private right of action for recordkeeping violations."  *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 460 n.11 (S.D.N.Y. 2014); *see also Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 230 n.8 (S.D.N.Y. 2003) (same).  But, as Agerbrink points out, there is no such *claim* in the amended complaint.  (*See* Pl. Br. at 23-24; *see also* Am. Compl. ¶ 243.)  Rather, the complaint contains a factual allegation of recordkeeping practices in violation of the FLSA, which may be relevant to Agerbrink's assertion that Defendants willfully violated the FLSA.  *See, e.g., Moon v. Kwon*, 248 F. Supp. 2d 201, 231 (S.D.N.Y. 2002) (Lynch, J.) (supporting a finding of willfulness

in part with evidence that "the defendants . . . flagrantly violated basic recordkeeping requirements"); *accord Solis v. Cindy's Total Care, Inc.*, No. 10 Civ. 7242 (PAE), 2012 WL 28141, at *13 (S.D.N.Y. Jan. 5, 2012).  Because Agerbrink's allegation regarding recordkeeping practices is proper, and because there is no recordkeeping claim to dismiss, Defendants' motion is denied on this point.

### D.   Sufficiency of Class and Collective Action Allegations

Defendants also assert that the wage and hour claims brought on behalf of the members of the putative class and collective actions are insufficient because they "do nothing more than parrot the elements of the implicated statute."  (Def. Br. at 16 (capitalization altered and emphasis omitted).)  While Defendants concede that the allegations regarding Plaintiff's own employment suffice to state a claim under the wage and hour laws, they contend that the complaint's allegations concerning other class members do not contain sufficient factual basis to render the class and collective claims plausible.  (*Id.* at 17.)

The Court disagrees.  "To state an FLSA collective action claim, a complaint must allege facts sufficient to create the plausible inference that there is a group of individuals similarly situated to the plaintiff."  *Garcia v. Olamar Food Corp.*, No. 14 Civ. 781 (AT), 2015 WL 273672, at *2 (S.D.N.Y. Jan. 14, 2015) (quoting *Peck v. Hillside Children's Ctr.*, 915 F. Supp. 2d 435, 438 (W.D.N.Y. 2013)) (internal quotation marks and alterations omitted).  Here, Plaintiff has alleged that MSA "has implemented a policy and/or practice of failing to pay fit models minimum wages, failing to pay fit models overtime wages, . . . and/or making illegal deductions to fit models' wages" (Am. Compl. ¶ 15) and has made other allegations supporting the conclusion that there are other fit models similarly situated to Plaintiff (*see id.* ¶¶ 98-99, 105, 115, 118, 126-27, 148-62).

Several courts in this circuit have accepted similar class and collective action allegations at the pleading stage.  *See Garcia*, 2015 WL 273672, at *2 ("Plaintiff's allegations that approximately twenty current and former non-exempt employees of [the defendant] were, like Plaintiff, denied overtime pay over the last three years pursuant to Defendants' common policy and practices of, *inter alia*, paying employees a set weekly rate regardless of the number of hours worked, failing to keep accurate records of hours worked by employees, and minimizing labor costs by denying employees compensation are . . . sufficient to survive a motion to dismiss." (internal quotation marks, citation, and alterations omitted)); *Kattu v. Metro Petroleum, Inc.*, No. 12 Civ. 54, 2013 WL 4015342, at *3 & n.2 (W.D.N.Y. Aug. 6, 2013) (concluding that allegation sufficed for an FLSA collective action claim where "plaintiffs have alleged generally that there are other persons similarly situated to plaintiffs, who were also employed by defendant . . . in similar positions, who worked overtime, but were not paid overtime wages," and noting that "[t]he Court does not address whether a collective or class action is appropriate" in response to a motion to dismiss); *Peck*, 915 F. Supp. 2d at 438 (noting that a plaintiff can state an FLSA collective action claim "by presenting substantial allegations that the putative class members were together the victims of a single decision, policy or plan" (internal quotation marks and omitted)); *see also Hughes v. Getronics Wang LLC*, No. 07 Civ. 10356 (LAK), 2008 WL 2778885, at *1 (S.D.N.Y. July 8, 2008) ("*Twombly* does not kill all lawsuits, let alone require dismissal of class and collective action allegations in an otherwise legally sufficient complaint.").

The Court notes that Plaintiffs are required to make certain factual showings in order for a collective or class action to be certified.  *See Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 453 (S.D.N.Y. 2014) ("Plaintiffs have not yet moved for conditional collective certification, and the Second Circuit's decision in *Myers* [*v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)]—

which requires at the 'first stage' a 'modest factual showing' that cannot be satisfied by 'unsupported assertions,' *id.*—appears to contemplate that courts will not address collective certification until after Plaintiffs have had the opportunity to present materials outside the pleadings." (emphasis and parenthetical omitted)); *Hughes*, 2008 WL 2778885, at *1 ("Assuming . . . that the named plaintiffs have stated legally sufficient claims, . . . [defendants'] contentions properly are considered in the context of a class or collective action determination— they do not go to the legal sufficiency of the complaint."); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (holding that a party seeking class certification under Rule 23 "must establish that the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are satisfied and demonstrate 'through evidentiary proof' that the class satisfies at least one of the three provisions for certification found in Rule 23(b)" (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013))), *cert. denied sub nom. US Foods, Inc. v. Catholic Healthcare W.*, 134 S. Ct. 1938 (2014).

Accordingly, while Defendants may contest the certification of a class or collective action once a motion for certification has been filed, Plaintiff's allegations are sufficient at the pleading stage to permit the class and collective action claims to proceed.  Defendants' motion to dismiss on this ground is denied.

## III.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's seventh cause of action for a declaratory judgment is DISMISSED.  The remaining claims in the complaint survive.

Defendants shall answer the amended complaint on or before July 7, 2015.

The Clerk of the Court is directed to close the motion at docket number 17.

SO ORDERED.

Dated: June 16, 2015
       New York, New York

_____
                J. PAUL OETKEN
           United States District Judge