**DLF | The Dugger Law Firm PLLC**

*Cyrus E. Dugger, Esq.*
*154 Grand St., New York, NY 10013*
*Tel: (646) 560-3208*
*www.theduggerlawfirm.com*

October 2, 2015

**Via ECF**

The Honorable James C. Francis
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *Agerbrink v. Model Service LLC d/b/a MSA Models et al.*, No. 14 Civ. 7841 (PO) (JCF)

Dear Judge Francis:

    I represent Plaintiff Eva Agerbrink, the putative class, and the putative collective in the above-referenced litigation, and write in response to the Court's September 28, 2015 Order, ECF No. 44, inviting the parties to respond to the following questions:

> Assume that a collective action is certified, but that Worker A chooses not to opt-in.  Assume further that a decision is ultimately rendered holding that the plaintiff and any opt-in plaintiffs should have been classified as non-exempt employees under the FLSA.  Given these assumptions, how would Worker A's decision not to opt-in affect (1) her status under the FLSA, and (2) her tax status and obligations under the Internal Revenue Code?

**I.    How Worker A's Decision Not to Opt-in Affects Her Status Under the FLSA**

    Worker A's decision not to opt-in to the instant lawsuit is likely to severely diminish, or extinguish, her ability to obtain relief for the above-assumed violation of the Fair Labor Standards Act ("FLSA").

    Unlike Rule 23 class actions, which utilize an opt-out procedure, the FLSA requires potential participants to affirmatively opt-in to have their claims collectively adjudicated.  *See* 29 U.S.C. §§ 255, 256; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).  Relatedly, unlike Rule 23 class actions, absent equitable tolling, *see Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (quoting *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y 2012)), the filing of the complaint does not automatically toll the claims of potential opt-ins.  The two to three-year FLSA statute of limitations for Worker A

will only be tolled as of the date of she affirmatively opts-in.

Technically, as a non-party in the FLSA collective, Worker A's decision to decline to opt-in will have no *direct* legal effect on Worker A's status as a worker or independent contractor under the FLSA. The FLSA collective would not pertain to Worker A, and her legal status under the FLSA would remain un-litigated and unresolved.[1]

However, Worker A's decision not to opt-in would mean that the statute of limitations would continue to run on her FLSA claims and, quite likely, expire during the pendency of the instant litigation. Indeed, every day that passes following Worker A's decision not to opt-in potentially reduces her damages covered by the remaining two or three-year statute of limitations. For example, if the hypothetical FLSA collective action was filed today, and if Worker A worked for Defendants during January 1, 2014 through December 31, 2014, her ability to obtain full FLSA damages relief would begin to deteriorate beginning January 1, 2016 (assuming no finding of willfulness), just three months from now.

Further still, Worker A is unlikely to receive any new information regarding the litigation, or otherwise have any reason to reconsider her initial decision not to opt-in until it is likely too late to vindicate her rights. In fact, the most likely date on which Worker A *would* reconsider her decision not to opt-in will be the date on which "a decision is ultimately rendered holding that the plaintiff and any opt-in plaintiffs should have been classified as non-exempt employees under the FLSA." Unfortunately, at that point, likely years from now and potentially following a trial, Worker A's statute of limitations is likely to have expired.

In summary, although Worker A's status under the FLSA will technically remain un-adjudicated and unresolved, the passage of time after Worker A's decision not to opt-in will likely extinguish her FLSA rights.

**II.   How Worker A's Decision Not to Opt-in Affects Her Tax Status and Obligations Under the Internal Revenue Code**

Worker A's decision not to opt-in to the FLSA collective will not have any effect on her tax status and obligations under the Internal Revenue Code, because this action does not seek any determination of that status.

As the Court is aware, Defendants contend that this FLSA action will be automatically dispositive of opt-ins' tax status as an employee for IRS purposes. While that is not correct because, *inter alia*: (1) this proceeding is not an IRS audit or tax enforcement proceeding; (2) this Court is not a tax court; and (3) because the IRS applies its own unique test incorporating

---

[1] Any subsequent individual or collective FLSA claims filed by Worker A would of course substantially benefit from a prior successful FLSA lawsuit concerning the same type of worker which decision will substantially support a motion for summary judgment by Worker A.

twenty factors to make a determination regarding employee status,[2] it is worthwhile to interrogate Defendants' position with respect to Your Honor's question.[3]

Assuming *arguendo* that the workers who opted-in to the FLSA collective *were* automatically transformed, by virtue of this FLSA collective action lawsuit, to employees for IRS tax purposes, Worker A's tax status would be unchanged, and remain that of an independent contractor for tax purposes. This would mean, however, that Worker A would be taxed at a *higher tax* rate than those who opted-in and (as asserted by Defendants) had their tax status automatically transformed to that of employees for IRS tax purposes.

Specifically, workers classified as independent contractors for tax purposes pay double the rate of FICA payroll taxes for Social Security and Medicare. As an independent contractor for tax purposes, Worker X has been paying, and will continue to pay approximately 15.3% of her wages as FICA taxes (12.4% in social security tax and 2.9% for Medicare), when, if she were classified as an employee for tax purposes her FICA tax rate would have been 7.65% (Social Security is 6.2% and Medicare is 1.45%).[4]

Thus assuming *arguendo* that this FLSA collective action will be determinative of employee status for tax purposes (which it is not), Worker A would, as a result of her decision not to opt-in, continue to pay a higher FICA tax rate than her opt-in peers classified as employees for tax purposes.

---

[2]   *See* Plaintiff's Reply in Further Support of Motion for Corrective Notice, ECF No. 37; IRS Publication 15-A (2015) at 7-8; IRS Revenue Ruling 87-41.

[3]   Defendants' arguments to the contrary fail because they: (1) fail to identify any automatic means or mechanism by which the IRS would revise any opt-ins' tax status as a direct result of the hypothetical determination of FLSA employee status; (2) fail to explain an automatic basis by which the IRS would file an action in tax court related to the hypothetical determination of FLSA employee status; (3) fail to address the fact that the IRS applies its own twenty-factor test to determine employee status for tax purposes that is distinct form the FLSA test, which distinction would not support an estoppel argument; and (4) fail to explain how a determination that an opt-in was an employee within the meaning of the FLSA would be dispositive of their status under the IRS' different twenty-factor test for employee status for tax purposes. Nor do Defendants otherwise explain why, given the distinct tests applicable to employee status pursuant to the FLSA and with respect to IRS tax status, would necessarily require an opt-in to file future tax returns as an employees for tax purposes or cause an audit of their previous tax returns.

[4]   This difference arises from the fact that Defendant employer is responsible for payment for half of the FICA tax rate when a worker is classified as an employee for IRS tax purposes. Available at http://www.irs.gov/taxtopics/tc751.html. MSA's classification of workers as independent contractors for tax purposes means Defendants pay less taxes.

3

Defendants contend -- tellingly without mentioning the *higher* FICA tax rate paid by those classified as independent contractors for tax purposes -- that classification as an independent contractor is better for Worker A because she can benefit from additional unique tax deductions. But Defendants nonetheless concede that those classified as employees for tax purposes *may*, at least under certain circumstances, make itemized deductions for business expenses.

Even assuming an effective difference between the deductions permitted of those classified as independent contractors versus employees, there is no dispute that those classified as independent contractors are taxed at double the FICA rate (15.3% versus 7.65%). Accordingly, in some, many, or most cases the tax liability differences will be effectively neutral between these two tax classifications, notwithstanding any difference in applicable deductions, given the different FICA tax rates.

In summary, Worker A's decision not to opt-in will have no effect on "her tax status and obligations under the Internal Revenue Code." Furthermore, even assuming *arguendo* that Defendants' argument that the Court's determination that the FLSA collective opt-ins were employees within the meaning of the FLSA would be somehow immediately determinative of their status as an employee with respect to the IRS (which again it is not), Worker A's decision to not opt-in would mean, *inter alia*, that she continued to pay twice the FICA taxes paid by the successful opt-ins.

### III.    Conclusion

For all of the above-stated reasons, Plaintiff respectfully requests that the Court order the requested corrective notice and additional relief requested in Plaintiff's Aug. 6. Motion.

Respectfully submitted,

/s/ Cyrus E. Dugger

cc:     (via ECF)

Ronald M. Green
Evan J. Spelfogel
Jamie F. Friedman