Ronald M. Green
rgreen@ebglaw.com
Evan J. Spelfogel
espelfogel@ebglaw.com
Jamie F. Friedman
jfriedman@ebglaw.com
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, NY 10177
(212) 351-4500
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

EVA AGERBRINK, individually and on behalf of all others similarly situated,

              Plaintiffs,

- against -

MODEL SERVICE LLC d/b/a MSA MODELS and SUSAN LEVINE,

              Defendants.

----------------------------------------x

14 civ 7841 (JPO) (JCF)

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT A SECOND TIME

FIRM:32742230v1

## PRELIMINARY STATEMENT

Plaintiff seeks to file a Second Amended Complaint to add claims that she has had knowledge of since filing her original complaint and her First Amended Complaint over a year ago. Specifically, Plaintiff seeks to: (i) add Bill Ivers ("Ivers"), the Chief Operating Officer of Models Services Agency ("MSA") as an individual defendant; (ii) add individual and class claims of unjust enrichment for the current putative class of fit models; and (iii) expand the scope of the putative class which currently includes only fit models, to include all models represented by MSA.

Plaintiff has known of the existence of the potential unjust enrichment claims and of Ivers as a potential defendant since the case's inception. Indeed, she included as an exhibit to her original complaint her MSA Agreement ("Agreement") signed by Ivers for MSA. The Agreement contains the allegedly unlawful provision that forms the basis of the unjust enrichment claim. Moreover, her numerous defenses to MSA's counterclaim for breach of contract assert that the Agreement is unenforceable because it contained a "penalty" provision. The Agreement contains boxes that a model must check to indicate whether he or she is in the fit division, or a separate division. Thus, Plaintiff has always known that the allegedly objectionable language was applicable to models outside of the putative fit model class. Plaintiff's attorney purports to be an experienced wage and hour attorney. The only reason we can surmise for the delay in amending is to cause distraction and prolongation of the discovery process and drive up litigation costs for MSA. This tactic should not be condoned.

The Court has discretion whether to grant an amendment. Plaintiff could have and should have amended her claims eleven months ago when she filed her First Amended Complaint. The Court should deny Plaintiff's motion to amend for a second time.

## STATEMENT OF FACTS

Plaintiff filed her complaint on September 26, 2014. (Docket, No. 1). On December 19, 2014, Defendants filed a motion to dismiss the complaint in its entirety. (Docket, No. 13). Plaintiff opposed the motion on January 2, 2015 and simultaneously filed an Amended Complaint. (Docket Nos. 15, 16). Defendants' motion was denied as moot on the basis that Plaintiff had filed an Amended Complaint. (Docket No. 20). Defendants moved to dismiss the Amended Complaint on January 20, 2015. (Docket No. 17). The Court issued a decision and order on June 16, 2015, granting Defendants' motion in part and denying it in part. The Court dismissed all of Plaintiff's claims pursuant to the New York State General Business Law. (Docket No. 25). Thereafter, Defendants answered the complaint and asserted counterclaims for breach of contract and tortious interference with a business relationship. Plaintiff responsed to the counterclaims asserting numerous defenses relating to the Agreement's purported "unenforceability." (Docket Nos. 28, 30). The eighth defense asserted by Plaintiff in her answer to Defendants' counterclaims is essentially an unjust enrichment claim. Thus, Plaintiff was well aware of what claims she wished to file prior to the commencement of discovery.

The parties had an initial pre-trial conference on July 29, 2015.[1] (Docket No. 31). On August 6, 2015, Plaintiff moved for a corrective notice relating to communications sent by Defendant MSA to fit models it represents, in response to Plaintiff's counsel's perceived improper communications with those models. (Docket No. 32). Defendants responded to

---

[1] In her motion to amend the complaint, Plaintiff makes much of Mr. Spelfogel's representation to the Court at that conference concerning the size of the fit model putative class, a number that was based in good faith on information Mr. Spelfogel had at the time of the conference, and which has since been corrected without prejudice to either party and without delaying the ongoing discovery process.

Plaintiff's motion. The Court then asked the parties to respond to several hypothetical labor and tax questions concerning models who did not choose to opt in to the litigation. After both sides prepared and submitted their lengthy responses, (Docket No. 37, 44), the Court ruled on this motion on October 27, and ordered Defendants to transmit a corrective notice, albeit a more neutral version than the one Plaintiff sought. (Docket No. 53).

Plaintiff then requested but the Court rejected convening another Court conference to discuss the class size (Docket No. 38). Rather, the Court ordered that Defendants should treat an earlier letter from Plaintiff to Defendants on this issue as a formal discovery request. (Docket No. 39). Defendants responded to the letter's interrogatories in the form of formal discovery responses, interposing appropriate objections, including that the interrogatories were outside the scope of Local Rule 33.3. On September 16, 2015, Plaintiff filed another letter with the Court requesting yet another conference to discuss the Scheduling Order and again raising the issue of Mr. Spelfogel's representation to the Court concerning the putative class size (Docket No. 40). The Court denied the request. (Docket No. 41).

Defendants also filed a letter seeking to address what they believed to be a timely issue concerning the adequacy of representation of the class by plaintiff and Plaintiff's counsel. (Docket No. 42). The Court denied the request as premature and reserving to Defendants the right to raise this issue if and when plaintiff moved for class or collective certification. (Docket No. 43).

During this time, Plaintiff served additional Interrogatories and document production demands; Defendants served their own interrogatories and document production demands; the parties exchanged much information and many documents in response to each others' requests/demands, and the parties were in regular communication on various "meet and confer"

issues with respect to Electronically Stored Information ("ESI"), a Confidentiality Agreement and other issues relating to discovery.

Finally, after the parties had travelled well down the discovery and litigation path, on October 19, 2015, plaintiff filed its instant 30 page memorandum of law in support of its current motion once again to amend the Amended Complaint. (Docket No. 50, 52).[2]

## ARGUMENT

### PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED.

Plaintiff seeks to amend her Complaint for a second time to add Ivers as a named defendant, to add a claim for unjust enrichment; and to expand the putative class to include all models for the unjust enrichment claims (versus fit models, who constitute the putative class at this time).

### A.   Adding Ivers and An Unjust Enrichment Claim as to Fit Models

Plaintiff's initial complaint was 253 paragraphs long with 21 sub-paragraphs seeking relief in the Wherefore Clause. It contained incredibly detailed allegations and claims, was amended one time already, and became a 324-paragraph amended complaint, with 25 sub-paragraphs seeking relief in the Wherefore Clause. It also included an exhibit containing the Agreement that Plaintiff and Ivers executed when she first became represented by Defendant MSA in 2013, and upon which Plaintiff now bases her newly requested unjust enrichment claim.

Throughout this entire time, in all of Plaintiff's many communications with the Court, she chose not to seek to amend her complaint for a second time. Rather, she waited until

---

[2] Plaintiff's counsel had raised the issue of adding Ivers and an unjust enrichment claim (but not the expansion of the class for the unjust enrichment claim), earlier in July on a telephone call with Defendants' counsel, at which time Defendants' counsel were unable to determine whether they would consent to the potential amendments, but Plaintiff had taken no action since then toward amending other than requesting Defendants' consent to submit extra pages in the October motion to amend.

Defendants' were already well down the discovery path and into their review of ESI, which is onerous and costly, to seek to amend her complaint to add defendants and claims she clearly knew she wished to pursue months before. This is a tactic designed to burden the Defendants, and the Court should exercise its discretion to disavow this kind of strategy.

Although some of the claims in the Amended Complaint were dismissed as a result of motion practice in June 2015, the parties have continued to litigate this matter pursuant to the First Amended Complaint since its filing in January 2015. Plaintiff has had ample time to amend her complaint a second time. She has not provided any sufficient reason for her delay, or for failing to include her proposed amended claims in her first amendment. She had access in January 2015 to the information she required in order to determine that, in her estimation, an unjust enrichment claim was warranted. Indeed, she included a statement about these claims in her defenses to Defendants' counterclaims. Similarly, Plaintiff has known for the entire time since she filed her original complaint over one year ago that Bill Ivers was the Chief Operating Officer of MSA and had signed her Agreement with MSA. Clearly, she could have and should have included him as a defendant in her original complaint or in her First Amended Complaint. To wait until the matter has been pending for over a year and now to seek to include claims that should have been included in the initial complaint has added and will add significantly to defendants costs of defense, was an inexcusable and improper delay and should not be rewarded by this Court. *See e.g. Wynder v. McMahon, et al.*, 565 Fed. Appx. 11, 12 (2d Cir. 2014) ("Nor does Wynder explain why he failed to add New York State as a defendant during the first occasions on which he amended his complaint.")

### B. Expanding the Class to Include All Models

Expanding the scope of the putative class to include all MSA models will "unreasonably broaden the issues [and] require additional discovery." *Delpin Aponte v. United States*, 83 Fed. Cl. 80, 93 (Fed. Cl. 2008). The burden to Defendants is not merely the cost of producing additional documents but rather the cost of litigating an unrelated set of issues with regard to a class of MSA models not party to the initial action, and not represented by the named Plaintiff, Eva Agerbrink, who was a fit model.[3]

The Court should be disabused of any impression that, as attorney Dugger asserts, "the additional discovery that will be required concerning models in the expanded class (i.e. all MSA models rather than just fit models) is …minimal…." P. Brief at 27. This is unrealistically optimistic. The amendment, if granted will require discovery to be expanded to service and earnings records of thousands of models in all divisions that MSA operates, for a claim that is not central to the main crux of the action. Plaintiff has no knowledge that the contract liquidated damages provision was ever invoked for a model outside of the fit model class. Expanding the scope of the class now would allow Plaintiff's counsel to go on a fishing expedition, reviewing earnings records for many more individuals than he would be otherwise entitled to, in furtherance of the wage and hour claims on behalf of fit models that are already before this Court.

Further, plaintiff's assertions assume that the liquidated damages clause in the Management Agreement is somehow per se unlawful under New York contract law. Plaintiff alleges that the fact that MSA reserves the right to "seek all legal and/or equitable remedies then

---

[3] Plaintiff's counsel concedes that prior to filing the instant motion, he did not notify Defendants' counsel of any intention to seek expansion of the class claims for unjust enrichment to include all MSA models. P. Brief at 27.

available to MSA" renders the clause invalid. Plaintiff seeks to support this proposition by citing *GFI Brokers, LLC v. Santana*, 2008 U.S. Dist. LEXIS 59219 (S.D.N.Y. Aug. 6, 2008) (enforcing liquidated damages clause). That case held, "While the (liquidated damages) provision reserves certain rights with respect to other remedies, it does not run afoul of the "exclusive remedy" requirement. The key phrase is "other remedies available." The provision does not provide for actual damages in addition to liquidated damages, because it only reserves rights to additional remedies that are "available.""

Indeed, a liquidated damages clause is enforceable where actual damages are difficult to determine and "there is at least a rough correlation between the liquidated damages provision and expected actual damages." *GFI Brokers, LLC Id.* Adjudicating this question will require discovery as to the estimated damages to MSA of each individual model breaching the terms of the Agreement at the time each Agreement was entered. The fact intensive and unpredictable nature of this inquiry is precisely why MSA found it necessary to incorporate a liquidated damages clause into its Agreements in the first place. Such contracts are not only enforceable but this very MSA contract was recently held valid by the New York State Supreme Court. *Model Service LLC v. MC2 Models Management LLC*, No. 160519/13 (Sup. Ct. N.Y. Co. Sept. 18, 2015).

We note, moreover, that even if information would be produced as a byproduct of wage and hour claims brought by Plaintiff's putative class of fit models, the additional claim sought here to be added will require entirely new discovery as to fashion models, lifestyle models, and other models. Adding allegations regarding "new parties and new employee classes" will impose an undue burden on Defendants. *Roe v. CC Servs.*, 2005 U.S. Dist. LEXIS 36381 (S.D. Ill. 2005). In essence, Plaintiff seeks to file a new action asserting new claims on behalf of

nonparties and tack it onto the present action. Plaintiff's proposed amendment "would implicate a wide variety of new fact patterns and legal issues" which would impermissibly "expand the nature of this action [and] complicate discovery." *Smart Pharm., Inc. v. Medco Health Solutions, Inc.*, 2014 U.S. Dist. LEXIS 102832 * 11 (D. N.J. 2014).

## CONCLUSION

For all of the above reasons, Plaintiff should not now be permitted to amend her complaint again. Accordingly, Defendants request that the Court deny her motion to amend.

Date:   November 5, 2015
        New York, New York

                                        EPSTEIN BECKER & GREEN, P.C.


                                        By: /s/ Evan J. Spelfogel
                                            Evan J. Spelfogel
                                        Ronald M. Green
                                        rgreen@ebglaw.com
                                        Evan J. Spelfogel
                                        espelfogel@ebglaw.com
                                        Jamie F. Friedman
                                        jfriedman@ebglaw.com
                                        250 Park Avenue
                                        New York, New York 10177-0077
                                        (212) 351-4500
                                        Attorneys for Defendants

To:   Cyrus E. Dugger
      154 Grand Street
      New York, New York 10013
      *Attorneys for Plaintiff*