UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
EVA AGERBRINK, individually and     :   14 Civ. 7841 (JPO) (JCF)
on behalf of all others similarly   :
situated,                           :        MEMORANDUM
                                    :        AND  ORDER
            Plaintiff,              :
                                    :
    - against -                     :
                                    :
MODEL SERVICE LLC d/b/a MSA MODELS  :
and SUSAN LEVINE,                   :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - - -:
MODEL SERVICE LLC d/b/a MSA MODELS  :
and SUSAN LEVINE,                   :
                                    :
            Counter Claimants,      :
                                    :
    - against -                     :
                                    :
EVA AGERBRINK,                      :
                                    :
            Counter Defendant.      :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    Eva Agerbrink, on behalf of herself and all others similarly
situated, brings this action against Model Service LLC ("MSA") and
Susan Levine.  She seeks damages under the Federal Labor Standards
Act ("FLSA") and New York State statutory and common law for
alleged violations arising out of her employment.  The plaintiff
now moves pursuant to Rules 15(a) and 21 of the Federal Rules of
Civil Procedure for leave to file a Second Amended Complaint to add
a claim for unjust enrichment and to add William Ivers, the Chief
Operating Officer of MSA, as an individually-named defendant; the
defendants oppose the motion.  For the reasons that follow, the
motion is granted.

1

Background

A brief outline of relevant procedural history will suffice
for the purposes of this motion; the factual background of this
dispute is set forth in greater detail in the June 16, 2015 Order
of the Honorable Paul Oetken, U.S.D.J. Agerbrink v. Model Service
LLC, No. 14 Civ. 7841, 2015 WL 3750674 (S.D.N.Y. June 16, 2015).

The plaintiff filed this action on September 26, 2014, and
filed an amended complaint on January 2, 2015. The defendants
moved to dismiss. The Honorable Paul Oetken, U.S.D.J., granted the
defendants' motion as to the plaintiff's declaratory judgment
claim, but denied it as to her wage and hour claims. Id. at *8.
The defendants answered and asserted counterclaims, to which the
plaintiff responded on July 23, 2015. At an initial pre-trial
conference, I entered a Scheduling Order setting February 29, 2016
as the deadline for completion of fact discovery.

Subsequently, the parties intensely litigated numerous
disputes. The plaintiff moved for a corrective notice relating to
an email sent by Mr. Ivers to putative class members.
Additionally, on four separate occasions the parties requested
conferences to address conflicts regarding the purported class
size, the adequacy of class representation, and the scope of
discovery. On October 16, 2015, I entered a Discovery
Confidentiality Order to facilitate document exchange.

The plaintiff now moves to amend her complaint for a second
time to (1) add a claim for unjust enrichment on behalf of a
putative class of all MSA models, and (2) add Mr. Ivers as a

defendant.  The defendants argue that the proposed amendment has been unduly delayed, is made in bad faith, and will be prejudicial.

Discussion

A motion to amend is generally governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that leave to amend a pleading should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); In re Alcon Shareholder Litigation, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010).

Where, as here, the plaintiff also seeks to add an additional defendant, Rule 21 of the Federal Rules of Civil Procedure permits such joinder "at any time, on just terms." Fed. R. Civ. P. 21; see also City of Syracuse v. Onondaga County, 464 F.3d 297, 308 (2d Cir. 2006).  In practice, the standard for deciding whether to permit joinder under Rule 21 is "the same standard of liberality afforded to motions to amend pleadings under Rule 15." Rush v. Artuz, No. 00 Civ. 3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001) (quoting Soler v. G & U, Inc., 86 F.R.D. 524, 527–28 (S.D.N.Y. 1980)); see also Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) ("[T]he showing necessary under Rule 21 is the same as that required under Rule 15(a)."). Thus, the plaintiff's

3

motion should be permitted absent a finding of undue delay, bad faith, prejudice, or futility.    The defendants focus their arguments on the issues of delay, bad faith, and prejudice.

      A.   <u>Delay</u>

In the Second Circuit, "[m]ere delay, [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."    <u>State Teachers</u> <u>Retirement Board v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981); <u>see also</u> <u>Parker v. Columbia Pictures Industries</u>, 204 F.3d 326, 339 (2d Cir. 2000) ("[W]e have held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion . . . ."). Where a significant period of time has passed prior to filing a motion to amend, however, the moving party must provide an explanation for the delay.    <u>See</u> <u>Park B. Smith, Inc. v. CHF</u> <u>Industries Inc.</u>, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (describing burden to explain extended delay and collecting cases).

The premise of the defendants' undue delay argument is that the plaintiff was previously aware of the facts underlying her proposed amendment. (Defendants' Opposition to Plaintiff's Motion to Amend the Complaint a Second Time ("Def. Memo.") at 1, 5).  They claim that she could have asserted her unjust enrichment claim and named Mr. Ivers as a defendant when she filed her initial complaint -- thirteen months prior to her motion to amend -- or at least in January 2015, when she filed the First Amended Complaint -- ten-and-one-half months prior. (Def. Memo. at 1, 5).  Simply alleging that the plaintiff could have moved to amend earlier than she did,

however, is insufficient to demonstrate undue delay. <u>See</u> <u>Dilworth</u> <u>v. Goldberg</u>, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) ("[T]he motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge" (footnote omitted); <u>see also</u> <u>Margel v. E.G.L. Gem Lab Ltd.</u>, No. 04 Civ. 1514, 2010 WL 445192, at *11 (S.D.N.Y. Feb. 8, 2010) ("[T]he court may 'deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, <u>and</u> the amendment would prejudice" other parties.'" (quoting <u>Grace v. Rosenstock</u>, 228 F.3d 40, 53-54 (2d Cir. 2000))).

Furthermore, the plaintiff has offered plausible explanations for the timing of the instant motion. Specifically, she clarifies that because "the inclusion of [a] claim for unjust enrichment would have potentially complicated the Declaratory Judgment Act claim," it was only appropriate to add after that claim was dismissed (in June 2015). (Motion for Leave to Amend the Complaint and Caption and to Join William Ivers as a Defendant ("Pl. Memo.") at 23). She characterizes the decision to bring the unjust enrichment claim on behalf of all MSA models as the logical outgrowth of (1) the defendants' disclosure of the size of the fit model class and (2) "Plaintiff's counsel's independent investigation[] that the scope of the proposed expanded class would likely be certifiable, appropriate, and manageable." (Declaration of Cyrus E. Dugger dated Oct. 19, 2015 ("Dugger Decl."), ¶¶ 35-36; Pl. Memo. at 23). With respect to adding Mr. Ivers as a defendant, the plaintiff acknowledges that she considered joining him earlier

in the litigation. (Pl. Memo. at 24-25). However, she states that her discovery in July 2015 of Mr. Ivers' email to MSA fit models regarding this lawsuit prompted this amendment, as it was "compelling additional evidence that he meets the requirements of an 'employer' under the FLSA and NYLL." (Pl. Memo. at 25; Dugger Decl., ¶ 38). Lastly, as the plaintiff notes, this action has been intensively litigated to date (Pl. Memo. at 23, 25); in this context, the delay is not substantial.

Indeed, even if, as the defendants contend, the plaintiff had not offered a satisfactory explanation for the delay (Def. Memo. at 5), courts have allowed amendment despite similar -- and even much longer -- intervals between a party's discovery of relevant facts and filing of an amended pleading, see, e.g., Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (collecting cases where leave to amend granted after delays ranging from two to five years); Affiliated FM Insurance Co. v. Liberty Mechanical Contractors, Inc., No. 12 Civ. 5160, 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (allowing amendment after nine months despite movant's knowledge of relevant information at time of initial pleading because party "need not prove that they uncovered new facts or law" to receive leave to amend); Valentini v. Citigroup, Inc., No. 11 Civ. 1355, 2013 WL 4407065, at *7 (S.D.N.Y. Aug. 16, 2013) (finding delay of eighteen months "insufficient ground to warrant denial of [] motion to amend" where non-moving party "failed to establish bad faith or undue prejudice"); cf. Duling v. Gristede's Operating Corp., 265 F.R.D.

91, 98 (S.D.N.Y. 2010) (allowing amendment two and one-half years after case began and noting that "even vague or 'thin' reasons [for delay] are sufficient, in the absence of prejudice or bad faith").

The defendants argue that the plaintiff's delay in "seek[ing] to amend her complaint to add defendants and claims she clearly knew she wished to pursue months before [] is a tactic designed to burden [them]." (Def. Memo. at 5). This is exactly the type of conclusory allegation of bad faith that courts consistently reject. See, e.g., Blagman v. Apple, Inc., No. 12 Civ. 5453, 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) ("To the extent that the defendants claim that [plaintiff's] delay was strategic . . ., they provide no showing of bad faith apart from the delay itself."); Randolph Foundation v. Duncan, No. 00 Civ. 1172, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."); Primetime 24 Joint Venture v. DirecTV, Inc., No. 99 Civ. 3307, 2000 WL 426396, at *5 (S.D.N.Y. April 20, 2000) ("[W]hen the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow the amendment."). Because the defendants have not shown that the plaintiff unduly delayed or acted with a dilatory motive, they must show prejudice in connection with the delay to warrant denial of the motion to amend.

B.   Prejudice

Although "[p]rejudice to the opposing party . . . has been

7

described as the most important reason for denying a motion to amend," Frenkel v. New York City Off-Track Betting Corp., 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (quoting Turkenitz v. Metromotion, Inc., 97 Civ. 2513, 1997 WL 773713, at *8 (S.D.N.Y. Dec. 12, 1997)), only undue prejudice warrants denial of leave to amend, A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000); see also Oneida Indian Nation of New York State v. County of Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice).  In deciding whether such prejudice exists, courts evaluate whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan v. New York City Department of Corrections, 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993)).  Courts also consider the particular procedural posture of the case.  See, e.g., Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" (alteration in original) (quoting State Teachers Retirement Board, 654 F.2d at 856)); Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003) (upholding denial of leave to amend sought after discovery had closed and while summary judgment motion was pending).  This

8

"inquiry involves a balancing process," weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied. Oneida Indian Nation of New York, 199 F.R.D. at 77. The non-moving party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." Id.; see also ResQNet.com v. Lansa, Inc., 382 F. Supp. 2d 424, 449 (S.D.N.Y. 2005), rev'd on other grounds, 594 F.3d 860 (Fed. Cir. 2010).

The defendants indicate that allowing this amendment will necessitate additional, expanded discovery on a claim unrelated to the claims in the First Amended Complaint. (Def. Memo. at 6-8). This alleged prejudice does not rise to a level that justifies denying leave to amend. First, the plaintiff filed her motion before the close of discovery. See Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 200 (S.D.N.Y. 2014) ("A court is more likely to find an amendment prejudicial if discovery has closed."). Although the parties disagree on the status of discovery (Pl. Memo. at 27; Def. Memo. at 4-5), discovery is still underway, and neither a summary judgment briefing schedule nor a trial date has been set, see JPMorgan Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116, 2009 WL 1357946, at *5 (S.D.N.Y. May 12, 2009) (allowing amendment and citing lack of pending dispositive motions or trial date); A.V. by Versace, Inc., 87 F. Supp. 2d at 299 (granting leave to amend where trial date had not been set, discovery had not been completed, and claims against new defendants did "not raise factual claims unrelated to the events in [the] original [] complaint").

Therefore, although the amendment may warrant additional discovery, it should not significantly prolong the resolution of the action.

Second, the defendants' protestations that allowing the proposed amendment will "impose an undue burden on Defendants" by expanding the scope of discovery (Def. Memo. at 6-7)[1] are also insufficient.  While some additional discovery will certainly be necessary, the possibility "that an amendment will require the expenditure of additional time, effort, or money [does] not constitute 'undue prejudice.'" A.V. by Versace, 87 F. Supp. 2d at 299 (quoting Block, 908 F.2d at 351); see also Margel, 2010 WL 445192, at *12 (noting that any "prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the discovery schedule," and collecting cases); JPMorgan Chase Bank, N.A., 2009 WL 1357946, at *4 ("[An] adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." (quoting United States v. Continental Illinois National Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989))).  Moreover, as the plaintiff points out, much of the discovery relevant to the unjust enrichment claim overlaps with that required for current claims. (Pl. Memo. at 27); cf. A.V.E.L.A., Inc. v. Estate of Monroe, 34 F. Supp. 3d 311, 317 (S.D.N.Y. 2014) (allowing amendment that "will

---

[1] The defendants do not argue that adding Mr. Ivers as a defendant will cause undue prejudice and I agree with the plaintiff that, "given COO Ivers' current substantial involvement in this litigation, his formal inclusion as an individual defendant will not significantly increase discovery beyond that which Plaintiff would otherwise require." (Pl. Memo. at 28).

implicate discovery . . . into areas that [defendants] view as outside the scope of this litigation" because "any additional documentation sought will likely be in [defendants'] possession and therefore can be expeditiously produced.").

Finally, the proposed unjust enrichment claim arises from the same facts pled in the First Amended Complaint.  Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis.  See Monahan, 214 F.3d at 284; accord Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 262 (S.D.N.Y. 2009).   This is because "prejudice occurs if the opposing party would experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant." Henry v. Murphy, No. M-82, 2002 WL 24307, at *2 (S.D.N.Y. Jan. 8, 2002), aff'd, 50 F. App'x 55 (2d Cir. 2002).   The defendants argue that the new claim is "unrelated," "not central to the main crux of the action," and effectively a "a new action." (Def. Memo. at 6, 7-8). But, as the plaintiff notes, it is based on the liquidated damages provision in MSA's modeling contract and therefore "overlaps substantially with, and is 'foreshadowed' by, Plaintiff's [New York Labor Law] § 193 claims for illegal deductions concerning this same contractual penalty provision." (Pl. Memo. at 23-24, 27).  Furthermore, to the extent the defendants withheld wages as "security" pursuant to the liquidated damages provision, the unjust enrichment claim also relates to the plaintiff's FLSA claim for failure to remit wages

11

promptly.  (<u>See, e.g.</u>, Proposed Second Amended Complaint, attached as Exh. 1 to Dugger Decl. ("2nd Am. Compl."), ¶¶ 167-73). Therefore, although the amendment expands the putative class, the "new claim" it asserts is related to the plaintiff's existing claims.[2]  Accordingly, the defendants have not carried their burden of demonstrating they will be unduly prejudiced by the proposed amendment.

C.   <u>Futility</u>[3]

"It is well established that '[l]eave to amend need not be granted . . . where the proposed amendment would be futil[e].'" <u>Williams v. Citigroup Inc.</u>, 659 F.3d 208, 214 (2d Cir. 2011) (alterations in original) (quoting <u>Advanced Magnetics, Inc. v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 18 (2d Cir. 1997)).   To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss.  <u>See</u> <u>AEP Energy Services Gas Holding Co. v. Bank of America, N.A.</u>, 626 F.3d 699,

---

[2] To the extent that the defendants complain that when plaintiff's counsel informed defendants' counsel in July 2015 of the plaintiff's intent to add a claim for unjust enrichment and to add Mr. Ivers as a defendant, he did not mention that the unjust enrichment claim would be brought on behalf of an expanded class (Pl. Memo. at 27; Def. Memo. at 6 nn. 2-3; Dugger Decl. ¶ 4), this omission, by itself, does not prejudice the defendants, <u>see</u> <u>Kent-Chojnicki v. Runyon</u>, No. 96 CV 360, 1998 WL 474191, at *4 (W.D.N.Y. April 28, 1998) (allowing amendment of complaint that expanded scope of purported class).

[3] As noted above, the defendants focus their opposition on delay, bad faith, and prejudice.  They do not argue that the amendment would be futile.  <u>Cf.</u> <u>Amaya v. Roadhouse Brick Oven Pizza, Inc.</u>, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (party opposing motion to amend bears burden of establishing futility); <u>Sotheby's, Inc. v. Minor</u>, No. 08 Civ. 7694, 2009 WL 3444887, at *3 (S.D.N.Y. Oct. 26, 2009) (same).  Nevertheless, in order to stave off further motion practice, I address this issue.

726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."); Dougherty v. Town of North Hempstead Board of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002). Accordingly, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). As when considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor. See Dougherty, 282 F.3d at 91-92 (reversing district court's denial of amendment as futile because, although defendants "vigorously dispute[d]" plaintiff's version of events, "proposed amended complaint adequately set[] forth specific facts, which if proven, c[ould] support a finding of [defendants' liability]"); Avila v. Lease Finance Group, LLC, No. 11 Civ. 8125, 2012 WL 3165408, at *5 n. 3 (S.D.N.Y. July 31, 2012).

1.   William Ivers

The decisive question in evaluating the futility of joining Mr. Ivers as a defendant is whether the proposed Second Amended Complaint alleges facts that plausibly suggest he meets the definition of "employer" under the FLSA."[4] Section 3(d) of the

---

[4] "District courts in this Circuit have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA." Sethi v. Narod, No. 11 CV 2511, 2013 WL 5453320, at *23 (E.D.N.Y. Sept. 30, 2013) (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010) and collecting cases). Although the New York Court of Appeals has not yet resolved this question, "there is no case law to the

FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."   29 U.S.C. § 203(d); accord Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999).   However, "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function" is insufficient to establish liability.   Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013).   Rather, the individual "must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."   Id. (quoting RSR Security Services Ltd., 172 F.3d at 140).   In other words, "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts."   Id. at 104 (quoting Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 141 (2d Cir. 2008)).

    Thus, in answering whether an individual is an employer under the FLSA, the Second Circuit is guided by the "economic reality" test, which analyzes "the totality of the circumstances and consider[s] whether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and

---

contrary."   Hart v. Rick's Cabaret International, Inc., 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013).   Therefore -- and because any difference between the definitions of employer under the FLSA and state law "would be immaterial to the facts of this case," Kalloo v. Unlimited Mechanical Co. of New York, Inc., 977 F. Supp. 2d 187, 200 (E.D.N.Y. 2013) -- I will conduct one analysis, using the FLSA standard.

method of payment, and (4) maintained employment records.'" <u>Schear
v. Food Scope America</u>, Inc., 297 F.R.D. 114, 134 (S.D.N.Y. 2014)
(quoting <u>RSR Security Services Ltd.</u>, 172 F.3d at 139)).  Although
each factor is probative of an alleged employer's control over an
employee, none is dispositive.  <u>RSR Security Services Ltd.</u>, 172
F.3d at 139.  Nor are they exclusive, "[s]ince economic reality is
determined based upon <u>all</u> the circumstances."  <u>Id.</u>; <u>see also</u>
<u>Irizarry</u>, 722 F.3d at 104-05, 111 (examining whether individually-
named defendant exercised authority over management, supervision,
and oversight of employer-company's affairs in general, in addition
to evidence of his direct control over plaintiff-employees);
<u>Barfield</u>, 537 F.3d at 142 (noting that Second Circuit has
established "different sets of relevant factors based on the
factual challenges posed by particular cases"); <u>Zheng v. Liberty
Apparel Co. Inc.</u>, 355 F.3d 61, 71 (2d Cir. 2003) (describing <u>Carter</u>
factors as "<u>sufficient</u> to establish employer status," but not
<u>necessary</u>, and stating that a court is "free to consider any other
factors it deems relevant to its assessment of the economic
realities test").

The proposed Second Amended Complaint alleges sufficient facts
to infer that Mr. Ivers is an employer under the FLSA.  The
plaintiff claims that he has "operational control" of MSA and
exerts "power over personnel decisions at MSA Models, including
with respect to Plaintiff and similarly situated fit models." (2nd
Am. Compl., ¶¶ 60, 73-77, 89).  Specifically, she states that Mr.
Ivers plays a significant role in hiring and firing models, setting

wages, and controlling schedules.  (2nd Am. Compl., ¶¶ 60-62, 64, 72, 80-81, 83, 88).  The plaintiff also alleges that he signs and maintains modeling contracts, including the plaintiff's; "meets and communicates directly with MSA Fit Models regarding the terms and conditions of their employment," including about restrictions on ability to leave prior to expiration of contract; and handles complaints by models about terms of their contracts.  (2nd Am. Compl., ¶¶ 65-69, 79-80, 84, 87).  These allegations plausibly state a claim for relief against Mr. Ivers.  See Salomon v. Adderley Industries, Inc., 960 F. Supp. 2d 502, 510-11 (S.D.N.Y. 2013) (allegations that "proposed individual defendants were owners and corporate officers of [defendant companies], and had authority over matters including payroll, personnel, and the supervision and hiring and firing of employees . . . . are sufficient to plausibly allege employer status" (internal citations omitted)); Severin v. Project OHR, Inc., No. 10 Civ. 9696, 2011 WL 3902994, at *6 (S.D.N.Y. Sept. 2, 2011) (refusing to dismiss FLSA claims against individual defendant where plaintiffs "assert[ed] that in her capacity as Executive Director of [defendant company], [individual defendant] controlled personnel decisions, and had the power to hire and fire, set wages, and otherwise control the terms and conditions of the plaintiffs' employment"); Hosking v. New World Mortgage, Inc., 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009) (granting motion to amend to add individual defendants allegedly involved in day to day business operations and who hired and fired employees, directed and supervised employees, signed payroll checks, and made

decisions    regarding    employee    compensation    and    capital
expenditures); see also Irizarry, 722 F.3d at 116-17 (describing
"the expansive interpretation that courts have afforded the [FLSA]"
as "cousel[ing]  in  favor  of  finding  that  [individually-named
defendant] was an 'employer'").

     For the reasons set forth above, the proposed joinder of Mr.
Ivers is not futile.

          2.   Unjust Enrichment

     To state a claim for unjust enrichment under New York law, a
plaintiff must allege that: "(1) the defendant was enriched, (2)
at the  expense  of  the  plaintiff,  and  (3)  that  it  would  be
inequitable to permit the defendant to retain that which is claimed
by the plaintiff." Clifford R. Gray, Inc. v. LeChase Construction
Services, LLC, 31 A.D.3d 983, 988, 819 N.Y.S.2d 182, 187 (3d Dep't
2006); see also Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d
296,  306  (2d  Cir.  2004).   Simply  claiming  that  the  defendant
received a benefit is insufficient to establish a cause of action
for unjust enrichment, Old Republic National Title Insurance Co. v.
Cardinal Abstract Corp., 14 A.D.3d 678, 680, 790 N.Y.S.2d 143, 145
(2d  Dep't  2005);  a  plaintiff  must  also  demonstrate  that  the
defendant should have to compensate the plaintiff for the benefit
conferred, Clark v. Daby, 300 A.D.2d 732, 732, 751 N.Y.S.2d 622,
623 (3d Dep't 2002); see also Kagan v. K-Tel Entertainment, Inc.,
172  A.D.2d  375,  376,  568  N.Y.S.2d  756,  757  (1st  Dep't  1991)
(describing plaintiff's burden to "demonstrate that services were
performed for the defendant resulting in [defendant's] unjust

17

enrichment" and noting that mere fact that plaintiff bestowed a benefit on defendant is insufficient to support claim). Furthermore, the alleged "benefit must be 'specific' and 'direct.'" In re Bayou Hedge Funds Inv. Litig., 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (quoting Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000)).

While the existence of a contract generally bars recovery based on the quasi-contract theory of unjust enrichment, see IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 361 (2009)("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."), a claim for unjust enrichment may survive a motion to dismiss where the plaintiff challenges the contract's validity, see Gao v. JPMorgan Chase & Co., No. 14 Civ. 4281, 2015 WL 3606308, at *5 (S.D.N.Y. June 9, 2015) (rejecting argument that unjust enrichment claim was barred by existence of written contract where plaintiffs brought claim "in the alternative, alleging that the contract [wa]s not enforceable"); DeWitt Stern Group, Inc. v. Eisenberg, 14 F. Supp. 3d 480, 485 (S.D.N.Y. 2014) (observing that where plaintiff claimed contract "[wa]s by its terms unenforceable as written," she had "the right to plead a claim for equitable relief in the alternative should certain provisions of the contract be found invalid"). Accordingly, although the relationship between the defendants and the plaintiff is governed by a contract (MSA Models Management

18

Agreement ("MSA Contract"), attached as Exh. A to Plaintiff's Amended Class and Collective Action Complaint), her unjust enrichment claim is not barred, <u>Spirit Locker, Inc. v. EVO Direct, LLC</u>, 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010) (explaining that where "the contract imposed the allegedly unlawful penalty in the first place[,] [] the subject-matter of [plaintiff's] unjust enrichment suit is not covered by a valid, enforceable contractual obligation"); <u>cf.</u> <u>Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC</u>, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (dismissing unjust enrichment claim and noting that "[plaintiff's] failure to allege that the contracts at issue [were] invalid or unenforceable preclude[d] it . . . from seeking quasi-contractual recovery for events arising out of the same subject matter").

The proposed Second Amended Complaint alleges that the defendants, by keeping the plaintiff's earned wages pursuant to an "illegal and unenforceable contractual penalty provision," have "received and retained a benefit conferred by Plaintiff . . . . , which in equity and good consciousness [sic] [they] should not be permitted to retain." (2nd Am. Compl., ¶ 361-362). The crux of this claim -- that the defendants have been unjustly enriched by retaining payments from clients and owed to the plaintiff for work performed -- is that the defendants are not entitled to these monies because the MSA Contract's liquidated damages provision is unenforceable. The Second Amended Complaint contains a number of assertions that plausibly suggest that the liquidated damage provision is an illegal penalty and therefore invalid, namely, that

it is not "a reasonable measure of anticipated loss" but rather is "a means by which Defendants . . . intimidate MSA models into compelled continued performance." (2nd Am. Compl., ¶¶ 290-291, 294-295); see Kingsbridge Medical Center, P.C. v. Hill, 357 F. Supp. 2d 754, 758 (S.D.N.Y. 2005) (stating that where liquidated damage clause "is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced."); Del Nero v. Colvin, 111 A.D.3d 1250, 1252, 975 N.Y.S.2d 825, 828 (4th Dep't 2013) ("[T]he liquidated damages clause here eliminates the balance due under the Agreement based on minor breaches of the covenant not to compete such that it is an 'unconscionable penalty and should not be enforced'" (quoting Clubb v. ANC Heating & Air Conditioning, Inc., 251 A.D.2d 956, 958, 675 N.Y.S.2d 176, 178 (3d Dep't 1998)).

Accordingly, the proposed Second Amended Complaint sufficiently pleads an unjust enrichment claim premised on the defendants' application of an invalid liquidated damages clause.[5]

---

[5] The defendants do not make any arguments concerning futility in their opposition beyond briefly contesting the "plaintiff's [] assum[ption] that the liquidated damages clause in the Management Agreement is somehow per se unlawful under New York contract law." (Def. Memo. at 6). But this argument goes to the merits of the claim, not the sufficiency of the complaint.

I note, too that the defendants also state that "this very MSA contract was recently held valid by the New York State Supreme Court." (Def. Memo. at 7 (citing Model Service LLC v. MC2 Models Management LLC, No. 160519/13 (N.Y. Sup. Ct. Sept. 18, 2015)). However, this assertion is wildly misleading. The defendants imply that the New York State Supreme Court examined and upheld the liquidated damages provision at issue in this litigation. It did not. Instead, it merely noted that neither party disputed the existence of a valid and enforceable contract. Model Service LLC, No. 160519/13 at 20.

See Spirit Locker, Inc., 696 F. Supp. 2d at 309 (denying motion to dismiss unjust enrichment claim premised on defendant's retention of monies pursuant to purportedly invalid liquidated damages provision); cf. Brody v. Brody, No. 07 Civ. 7981, 2009 WL 436404, at *5 (S.D.N.Y. Feb. 17, 2009) (finding dismissal of unjust enrichment claim "unwarranted" at motion to dismiss stage "because it is unclear whether or not Plaintiff will be able to meet this standard").

### 3.   Class Certification

The fact that the unjust enrichment claim is brought on behalf of a new and larger putative class does not alter my analysis of the claim's futility. "[T]he court's inquiry into the class action requirements at the pleading amendment stage[] is limited." Hallmark v. Cohen & Slamowitz, LLP, 283 F.R.D. 136, 141 (W.D.N.Y. 2012); see also Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 104 n. 6 (S.D.N.Y. 2010) ("[T]he court may limit its inquiry into the class action requirements at the amendment stage when certification will occur at a later time." (quoting Presser v. Key Food Stores Cooperative, Inc., 218 F.R.D. 53, 57 (E.D.N.Y. 2003)). Although pre-certification motions to amend have been denied on grounds related to the viability of a class action, see Presser, 218 F.R.D. at 57 (denying in part motion to amend to convert individual claim into class action), such amendments are generally rejected only where they fail to overcome deficiencies already identified in a class certification motion, see, e.g., Orthocraft, Inc. v. Sprint Spectrum L.P., No. 98 CV 5007, 2002 WL 31640477, at

21

*2 (E.D.N.Y. Nov. 16, 2002); <u>Luedke v. Delta Air Lines, Inc.</u>, No. 92 Civ. 1778, 1993 WL 313577, at *4 (S.D.N.Y. Aug. 10, 1993).

The present motion to amend precedes any class certification motion.  Furthermore, the defendants do not challenge the viability of the class; their arguments against the expanded class definition focus entirely on the plaintiff's delay and their anticipated discovery burdens resulting from the new putative class. Accordingly, a detailed inquiry into the requirements of Rule 23 is unnecessary.

The proposed Second Amended Complaint alleges that the defendants withheld "at least $17,946.41 of Plaintiff's wages as liquidated damages" pursuant to an "illegal penalty provision" in the plaintiff's contract.  (2nd Am. Compl., ¶¶ 168-169, 289).  It further alleges that "all, or the vast majority, of MSA Models modeling contracts contain an identical or similar illegal penalty provision" and that the defendants have "a widespread pattern, policy, and/or practice of invoking" this provision.  (2nd Am. Compl., ¶ 286-289).  These allegations raise plausible grounds for pursuing class claims.  <u>See</u> <u>Agerbrink</u>, 2015 WL 3750674, at *7 (finding "allegations supporting the conclusion that there are other [] models similarly situated to Plaintiff" sufficient to render class and collective claims plausible); <u>see also</u> <u>Kassman v. KPMG LLP</u>, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) ("[T]he relevant question is whether, based on the allegations in the [proposed amended complaint], 'it is plausible that plaintiffs will come forth with sufficient evidence at the class certification stage to

demonstrate commonality.'" (quoting <u>Calibuso v. Bank of America Corp.</u>, 893 F. Supp. 2d 374, 390 (E.D.N.Y. 2012))).   Thus, the proposed unjust enrichment claim brought on behalf of all MSA models is not futile.

<u>Conclusion</u>

For the reasons discussed above, the plaintiff's motion for leave to amend (Docket no. 50) is granted.   The plaintiff shall file the Second Amended Complaint within seven (7) days of the date of this order.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          January 7, 2016

Copies transmitted this date:

Cyrus E. Dugger, Esq.
The Dugger Law Firm, PLLC
154 Grand St.
New York, NY 10013

Evan J. Spelfogel, Esq.
Janie F. Friedman, Esq.
Ronald M. Green, Esq.
Epstein, Becker & Green, P.C.
250 Park Ave.
New York, NY 10177

23