UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
EVA AGERBRINK, individually and    :  14 Civ. 7841 (JPO) (JCF)
on behalf of all others similarly  :
situated,                          :      MEMORANDUM
                                   :      AND ORDER
                Plaintiff,         :
                                   :
     - against -                   :
                                   :
MODEL SERVICE LLC d/b/a MSA MODELS,:
SUSAN LEVINE, and WILLIAM IVERS,   :
                                   :
                Defendants.        :
- - - - - - - - - - - - - - - - - - :
MODEL SERVICE LLC d/b/a MSA MODELS,:
SUSAN LEVINE, and WILLIAM IVERS,   :
                                   :
                Counter Claimants, :
                                   :
     - against -                   :
                                   :
EVA AGERBRINK,                     :
                                   :
                Counter Defendant. :
- - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Plaintiff Eva Agerbrink seeks conditional certification of a
collective action under the Fair Labor Standards Act ("FLSA") and
the Court's permission to distribute notice of the action to
potential collective members.  Defendants Model Service LLC, Susan
Levine, and William Ivers (collectively, "MSA") argue that Ms.
Agerbrink and her counsel should be disqualified from serving as
representatives of the putative collective, and also oppose certain
provisions and procedures related to the plaintiff's proposed
notice.[1]  For the reasons that follow, conditional certification is

_____

     [1] Mr. Ivers was added as a defendant after the motion for
conditional certification was briefed.  See Agerbrink v. Model
Service LLC, __ F. Supp. 3d __, __, 2016 WL 93865, at *1 (S.D.N.Y.

1

granted and the plaintiff's requests as to notice are granted in part and denied in part.   The defendants' objections to the adequacy of Ms. Agerbrink and her counsel are rejected.

Background

The factual background of this dispute is set forth in greater detail in the June 16, 2015 Order of the Honorable J. Paul Oetken, U.S.D.J., see Agerbrink v. Model Service LLC, No. 14 Civ. 7841, 2015 WL 3750674 (S.D.N.Y. June 16, 2015).   Ms. Agerbrink is a fit model -- that is, a model used by apparel manufacturers to check the fit and appearance of clothing designs.   Id. at *1.   She alleges that the defendants misclassify fit models as independent contractors rather than employees, and that "she and similarly situated models are owed overtime and minimum wages, as well as relief for other wage and hour violations."   Id.

Discussion

A.   Conditional Certification

Under the FLSA, plaintiffs may elect to seek certification to proceed as a collective action.   See 29 U.S.C. § 216(b); Iglesias-Mendoza v. LaBelle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007). The Second Circuit has endorsed a two-step method to certify FLSA collective actions.   Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).   The first step -- the current stage of this litigation -- requires the district court to determine whether there are "similarly situated" potential plaintiffs who should receive notice

---

Jan. 7, 2016).   I assume that Mr. Ivers joins in the other defendants' opposition.

of the pending FLSA action and have an opportunity to join it.  Id. "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  Id.  At this latter stage, "district courts in this circuit typically look to the '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment].'"  Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (alteration in original) (quoting Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008)).

The plaintiff has produced her own declaration, as well as a declaration from Katherine Cooper Brown, a former MSA fit model, and from Sara Ziff, executive director of The Model Alliance, Inc., an industry organization supporting models.  Ms. Agerbrink asserts, based on her own experience and conversations with at least three other fit models, that MSA categorizes its fit models as independent contractors; fails to pay fit models for initial meetings with potential clients such that fit models receive less than minimum wage for weeks during which they are not booked by a client; and retains wages earned by fit models.  (Declaration of Eva Agerbrink dated Nov. 15, 2015 ("Agerbrink Decl."), ¶¶ 8, 11, 13, 26, 35-36, 46, 58, 60).  Ms. Brown asserts similar facts. (Declaration of Katharine Cooper Brown dated Nov. 13, 2015, ¶¶ 5-9,

11, 15-16).  Both Ms. Agerbrink and Ms. Ziff state that in the New York City modeling industry, models are generally not classified as employees and not compensated for initial meetings with potential clients.  (Agerbrink Decl., ¶¶ 15-16, 19; Declaration of Sara Ziff dated Nov. 16, 2015, ¶¶ 12-13).  In addition, the plaintiff offers form modeling agreements for MSA fit models, and refers to an e-mail from MSA's Chief Operating Officer Bill Ivers indicating that fit models are commonly classified as independent contractors.  (Form Management Agreements, attached as Exh. B to Declaration of Cyrus E. Dugger dated Nov. 16, 2015 ("Dugger 11/16/15 Decl."); E-mail of Bill Ivers dated May 7, 2015 ("Ivers E-Mail"), attached as Exh. 2 to Letter of Evan J. Spelfogel dated Aug. 14, 2015); see also Agerbrink v. Model Service LLC, No. 14 Civ. 7841, 2015 WL 6473005, at *1-2 (S.D.N.Y. Oct. 27, 2015) (setting out Ivers E-Mail in its entirety).

The defendants "do not contest" that Ms. Agerbrink has established that there are similarly situated fit models who should receive notice of this action, and thus "consent" to conditional certification of the case as a collective action.  (Defendants' Memorandum of Law Seeking to Disqualify Plaintiff's Counsel and Plaintiff as Inadequate Counsel and Inadequate Representative and Opposing Portions of Plaintiff's Motion for Conditional Certification and Proposing Revisions to Plaintiffs Proposed Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Def. Memo.") at 1).  However, they seek to disqualify Ms. Agerbrink and her attorney, Cyrus E. Dugger, as inadequate to represent the class

4

based on a series of settlement demands that Mr. Dugger presented to defendants' counsel.  Disqualification, of course, would deprive the potential collective of both counsel and a party to represent its interests, unless substitutes could be found.

The allegedly objectionable settlement proposals began to be proposed in October 2014.  (Def. Memo. at 2, 5; Declaration of Evan J. Spelfogel dated Dec. 3, 2015 ("Spelfogel Decl."), ¶¶ 2-3). According to the defendants, the proposal would award Ms. Agerbrink 100% of the amount she claimed in compensatory and liquidated damages -- that is, $60,000 -- but "putative class and collective members' claims [w]ould be settled for 50% of whatever their minimum wage claims might be," which would not include any liquidated damages.  (Def. Memo. at 2; Spelfogel Decl., ¶¶ 4-5; Letter of Cyrus E. Dugger dated Oct. 31, 2014 ("Dugger Letter"), attached as Exh. 1 to Spelfogel Decl., at 1, 3).  A similar proposal was reiterated in March 2015.  (Spelfogel Decl., ¶ 8). Shortly thereafter, Mr. Dugger allegedly offered to settle Ms. Agerbrink's claims for $60,000 plus over $200,000 in attorneys' fees and costs and then, the defendants surmise, to dismiss the case.[2]  (Spelfogel Decl., ¶¶ 11-12).  The defendants contend that with these demands, Mr. Dugger and Ms. Agerbrink have "indicated

---

[2]    Plaintiff's counsel disputes the defendants' characterization of the settlement proposals, asserting that he offered alternative possibilities: one settling Ms. Agerbrink's individual claims and leaving the collective/class claims to proceed with a new plaintiff; and one providing a "framework" for settling all the class claims subject to further discussion about additional relief, such as a service award, for Ms. Agerbrink. (Declaration of Cyrus E. Dugger dated Dec. 14, 2015 ("Dugger 12/14/15 Decl."), ¶¶ 43, 45, 51, 54).

they are more interested in pursuing their own interests rather than the interests of absent class or collective members." (Def. Memo. at 10).

According to the defendants, my order of September 18, 2015 "permitt[ed] [them] to raise the [disqualification] argument at this time." (Def. Memo. at 1). That is not accurate. That order stated, "Any challenge to plaintiff's adequacy as a class representative or her counsel's ability to represent absent class members may be raised in response to a motion for class/collective action certification." (Order dated September 18, 2015 ("Sept. 18 Order")). What is before me now is not a motion for certification of a collective or a class; it is a motion for <u>conditional</u> certification, the preliminary step in gaining collective action status. It is well-established that a party seeking conditional certification of a collective action under the FLSA does not have to meet the more stringent requirements of certification of a class under Rule 23 of the Federal Rules of Civil Procedure; that is, a party "need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation" at this stage of an action. <u>Jenkins v. TJX Cos.</u>, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012); <u>see also</u> <u>Bonilla v. Red Bean System, Inc.</u>, 61 F. Supp. 3d 145, 147 (D.D.C. 2014) ("[29 U.S.C. § 216(b)] exempts FLSA collective action suits from the typical requirements of a class action under Federal Rule of Civil Procedure 23, namely, typicality, numerosity, commonality, and adequacy of representation."); <u>Ahmed v. T.J. Maxx Corp.</u>, No. 10 CV 3609, 2013

WL 2649544, at *7 (E.D.N.Y. June 8, 2013) (same); Sherrill v. Sutherland Global Services, Inc., 487 F. Supp. 2d 344, 348 (W.D.N.Y. 2007) (same).  For this reason, absent a simultaneous motion for Rule 23 class certification, see Lou v. Ma Laboratories, No. C 12-5409, 2014 WL 68605, at *2, 4 (N.D. Cal. Jan 8, 2014) (recognizing that "Rule 23 . . . does not apply to the proposed FLSA collective action," but holding that where conditional certification sought at "advanced stage" of litigation and in tandem with Rule 23 certification "the concerns of [counsel's adequacy] do [apply]."), courts refuse to entertain arguments that counsel for a putative collective should be adjudged inadequate at the conditional certification stage.  See Ballou v. iTalk, LLC, No. 11 C 8465, 2011 WL 3944193, at *7 (N.D. Ill. July 31, 2013) ("[T]here is no 'adequacy of representation' requirement for FLSA [conditional] certification."); Oakes v. J.F. Bernard, Inc., No. 5:11 cv 1006, 2011 WL 6415535, at *4-5 (N.D. Ohio Nov. 22, 2011); North v. Board of Trustees of Illinois State University, 676 F. Supp. 2d 690, 696 n.9 (C.D. Ill. 2009) (declining to address adequacy of counsel at conditional certification stage).  Instead, courts have addressed such concerns when inquiring into the fairness of proceeding as a collective action in connection with final certification under the FLSA, see North, 676 F. Supp. 2d at 696 n.9 (finding that adequacy of representation is equitable consideration to be taken into account "at step two of the collective action analysis"), or when considering certification of a class under Rule 23, see Spagnuoli v. Louie's Seafood Restuarant,

LLC, 20 F. Supp. 3d 348, 357 (E.D.N.Y. 2014) ("[T]o the extent the
Defendants seek to disqualify . . . Plaintiff's counsel on the
grounds that they are inadequate to serve as class counsel, the
Court rejects these arguments as inappropriately raised at this
time, since no Fed. R. Civ. P. 23 motion is before the Court.").
Therefore, the defendants' arguments that prior settlement demands
render Mr. Dugger and Ms. Agerbrink inadequate representatives are
premature, and the plaintiff's motion for conditional certification
is granted.

    B.   Notice

    The plaintiff seeks approval of its proposed notice, as well
as an order (1) requiring MSA to produce contact information for
potential collective members; (2) authorizing the issuance of the
proposed notice to potential opt-in plaintiffs, including by e-
mail; (3) authorizing the posting of the notice in the MSA offices
lobby or waiting area; (4) setting an initial opt-in period of
sixty days; (5) authorizing issuance of a reminder notice to
collective members who have not opted in to the collective twenty-
one days prior to the end of the opt-in period;  (6) authorizing of
a further opt-in period after the expiration of the original sixty
days during which potential collective members could opt-in either
using a pseudonym or could opt-in and have access to their
information limited to counsel.  (Plaintiff's Memorandum of Law in
Support of her Motion for Conditional Certification and a Court-
Authorized Notice Pursuant to Section 216(b) of the FLSA ("Pl.
Memo.") at 1, 19-25).

1.   <u>Form of Notice</u>

"'When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions' and ensure that putative plaintiffs receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" <u>Bittencourt v. Ferrara Bakery & Cafe Inc.</u>, 310 F.R.D. 106, 116 (S.D.N.Y. 2015) (quoting <u>Fasanelli v. Heartland Brewery, Inc.</u>, 516 F. Supp. 2d 317, 323 (S.D.N.Y.2007)).  "[T]he court's interest in preventing undue confusion among putative members of . . . FLSA collective actions under its supervision during the certification and notification phases of the case is a substantial one." <u>Gordon v. Kaleida Health</u>, 737 F. Supp. 2d 91, 99 (W.D.N.Y. 2010).

The plaintiff has submitted a proposed notice (Proposed Notice, attached as Exh. A to Dugger 11/16/15 Decl.) and the defendants have suggested detailed revisions (Def. Memo. at 18-24) for the Court's consideration.

a.   <u>Global Revision</u>

As a consequence of the filing of the Second Amended Complaint, all references in the notice to "MSA Models and/or Susan Levine" shall be amended to add new defendant William Ivers.  <u>See Agerbrink v. Model Service LLC</u>, __ F. Supp. 3d at __, 2016 WL 93865, at *1.

b.   <u>Opening Paragraphs</u>

The defendants seek to add language to the first substantive

paragraph of the notice.  The primary modifications (1) identify the statute under which the collective action proceeds (<u>i.e.</u>, the FLSA), (2) add more detail regarding the relevant claims (<u>i.e.</u>, "that fit models are not independent contractors, but rather are employees of MSA" and that "MSA believes that fit models are properly classified as independent contractors rather than employees"), and (3) establish a two-year statute of limitations for claims. (Def. Memo. at 18, 20-21).  Of these, the plaintiff appears to object to the two-year limitation, arguing that the actual period is three years.  (Plaintiff's Reply Memorandum of Law in Support of Motion for Conditional Certification and a Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Reply") at 4).

"The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." <u>Hamadou v. Hess Corp.</u>, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (internal citation omitted).  Here, the plaintiffs allege that the defendants' violations of the FLSA were willful.  (Second Amended Class and Collective Action Complaint, ¶ 305).  Therefore, I approve these paragraphs as amended by the defendants, with the exception that the proposed sentence, "The lawsuit seeks to reclassify individuals from independent contractors to employees retroactively for a period of two years under the FLSA" shall be amended to reflect a three-year period.

The defendants further suggest that the text of the "ASK TO BE INCLUDED" box on the first page of the notice be amended to add the following sentence: "By joining this lawsuit, you give up any rights you have to separately sue MSA or Susan Levine about the same legal claims at a future date."  (Def. Memo. at 19).  The plaintiff properly objects, noting, among other things, that this statement is "untrue" because the collective might be decertified. (Reply at 4).  Moreover, the addition is unnecessary, as the "DO NOTHING" box on the same page states that by not opting-in to the collective action, a putative collective member "will retain any right you may have to sue MSA Models and/or Susan Levine." (Proposed Notice at 1).

Finally, the defendants oppose including contact information for plaintiff's counsel on each page of the notice, but they provide no substantive rationale for their objection.  (Def. Memo. at 19).  Repetition of this contact information does not confuse potential collective members or inhibit them from making an informed decision about opting-in.  The objection is overruled.

c.    Section 1

In this section, titled "WHAT DOES THE PLAINTIFF CLAIM IN THIS LAWSUIT" (Proposed Notice at 2), the defendants disapprove of the plaintiff's use of the word "wages" in one clause of the second paragraph, and propose a reworking of that clause (Def. Memo. at 19-20).  The plaintiff does not oppose this change.

In addition, the defendants seek to add a subsection titled "What is MSA's position?"  (Def. Memo. at 20).  The plaintiff

11

challenges the last sentence of that proposed subsection, which states, "If the Court dismisses this action with prejudice, you may have to pay fees and costs associated with the lawsuit." (Def. Memo. at 20; Reply at 5).  While such language is not always prohibited, courts "have found language about potential costs to be inappropriate '"[g]iven the remote possibility that such costs for absent class members would be other than de minimis," and the risk of "an in terrorem effect that is disproportionate to the actual likelihood that costs . . . will occur in any significant degree."'"  <u>Bittencourt</u>, 310 F.R.D. at 117 (alterations in original) (quoting <u>Rosario v. Valentine Avenue Discount Store, Co.</u>, 828 F. Supp. 2d 508, 520 (E.D.N.Y. 2011)).  The last sentence of the defendant's proposed paragraph shall be stricken.

This section shall also be amended to include defendants' counsel's contact information, which is discussed below.  <u>See infra</u>, Section B.1.j.

        d.   <u>Section 2</u>

The defendants ask that additional information about the purpose of the lawsuit and the notice be included in this section, which is titled, "WHY DID I GET THIS NOTICE?" (Def. Memo. at 20-21; Proposed Notice at 2).  The plaintiffs do not oppose these modifications.

        e.   <u>Section 3</u>

The defendants suggest that consent forms should be sent directly to the Clerk of Court rather than to plaintiff's counsel. (Def. Memo. at 21).  As the court in <u>She Jian Guo v. Tommy's Sushi</u>

Inc., No. 14 Civ. 3964, 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014),
observed, while courts in this district have not come to a
consensus on this issue, "[t]he majority of courts [] have directed
opt-in plaintiffs to mail the consent form to plaintiffs' counsel."
Id. at *5.  Because the defendants offer no substantive rationale
for their proposed modification other than the conclusory statement
that "it is the more efficient mechanism" (Def. Memo. at 21), this
amendment is rejected.

> f.   Section 6

The defendants propose appending two additional sentences to
the first paragraph of this section, which is titled, "WHAT HAPPENS
IF I JOIN THIS CASE?"  (Proposed Notice at 3).  The first addition
again warns that opt-in plaintiffs may be liable for costs (Def.
Memo. at 22), and it is again rejected.

The second addition informs potential opt-in plaintiffs that
they may contact their own attorney or tax advisor "for advice on
whether joining this lawsuit is right for you."  (Def. Memo. at
22).  The plaintiff counters that "this Court has already held
[that] 'tax status is not directly at issue in this litigation,'"
and states that this and other proposed additions regarding the
potential effect of the litigation on opt-in plaintiffs' tax status
are misleading.  Previously, I required the defendants to circulate
a corrective notice in light of certain misleading information
included in the Ivers E-mail, some of which addressed tax issues.
Agerbrink, 2015 WL 6473005, at *11.  I found that, "while the
plaintiff is correct that tax status is not directly at issue in

13

this litigation, the defendants are also correct that, for practical purposes, the lawsuit has 'foreseeable outcomes that could well impact the tax status and resulting tax obligations of the models.'" <u>Id.</u> at *8 (internal citation omitted).  Moreover, I found "problematic" the obvious implication of the Ivers E-mail that any tax consequences would be negative.  <u>Id.</u>  The corrective notice (which was sent by Mr. Ivers at the direction of the Court) therefore stated:

> There are both benefits and disadvantages to filing taxes as an independent contractor or an employee. For example, while independent contracts may deduct certain business expenses and do not have taxes withheld from their paychecks, they are responsible for paying income, Social Security, Medicaid, and other taxes directly to the government.
>
> As I suggested in my previous e-mail, you should consult an independent financial advisor if you have questions about your tax status.

<u>Id.</u> at *12.  I find that it is appropriate to refer in the notice to the possible tax implications of this action.  However, a more appropriate place for such information is in the section, addressed below, titled "IS THIS LAWSUIT ABOUT MY TAX STATUS?"  <u>See</u> Section B.1.i, <u>infra</u>.

In addition, the penultimate sentence of the third paragraph in this section, which as proposed reads, "If you are asked to participate in such ways, Plaintiff's counsel will assist you with this process and will otherwise represent you in this litigation," shall be modified as follows: "If you are asked to participate in such ways, Plaintiff's counsel will assist you with this process and will otherwise represent you in this litigation, unless you

retain your own attorney."

        g.   Section 9

The defendants propose language informing potential opt-in plaintiffs of their right to retain their own counsel. (Def. Memo. at 22). The Proposed Notice nowhere else advises of this right. This addition should therefore be included.

        h.   Section 10

The proposed modification regarding opt-in plaintiffs' potential liability for costs (Def. Memo. at 22) is rejected.

        i.   Section 11

In the Proposed Notice, this section reads:

IS THIS LAWSUIT ABOUT MY TAX STATUS?

> This litigation does not seek to determine your tax status. Your tax status is a different legal question than whether or not you were legally an employee under the Fair Labor Standards Act and therefore entitled to: (1) payment of minimum wages for your work as an "exclusive" fit model; and (2) prompt payment of such minimum wages.

(Proposed Notice at 5). The defendants' suggest the following additions:

> Tax status could be impacted by a finding that fit models were improperly classified. The lawyers involved in this lawsuit do not give tax advice. Your tax advisor is your best source of information concerning your own individual circumstances and the effect, if any, that the outcome of this case may have on your tax status.

(Def. Memo. at 23).

Ms. Agerbrink objects that the proposed additions

> give the misimpression that: (1) [tax] status is directly at issue here; (2) MSA fit models' tax filing status has not been previously unilaterally determined by MSA; (3) any [potential] change . . . would not be made, in the first instance, by MSA (as opposed to this Court) absent

15

> any action by the IRS; (4) if this litigation is <u>not</u>
> <u>successful</u> on an individual, collective, or class basis,
> . . . that the IRS <u>would</u> <u>not</u> eventually determine that
> MSA fit models are employees for tax purposes -- which it
> could very well independently determine during or
> following this litigation.

(Reply at 6).  Having worked through the tortured syntax of this
sentence, I am convinced that these concerns are overblown.  The
suggested modification, coming after a paragraph that plainly
states that this litigation is <u>not</u> focused on tax status, does not
imply that tax status is "directly at issue."  Nor does it imply
anything about who has made or will make decisions about the tax
treatment of fit models.  Rather, it is a clear and accurate
statement, consistent with the corrective notice already
distributed in this case, that reclassification as an employee
might have tax effects and that a tax professional can address any
concerns.

### j.  <u>Section 12</u>

Of the defendants' suggested revisions to this section, the
plaintiff objects only to the inclusion of defendants' counsel's
contact information.  The sentences as revised by the defendants
read:

> There is also no reason not to contact Plaintiff's
> counsel, Cyrus E. Dugger, Esq.[,] or Defendants' counsel,
> Evan J. Spelfogel, Esq.[,] of Epstein Becker Green,
> P.C.[,] with any questions you may have concerning this
> litigation.  Mr. Dugger's contact information is in
> Section 9.  Mr. Spelfogel's contact information is 212-
> 351-4539 or ESpelfogel@ebglaw.com[.]

(Def. Memo. at 23).  The plaintiff contends that inclusion of
contact information for defendants' counsel (1) "encourages
potential opt-ins to contact the adverse parties' attorney," (2) is

unnecessary because this information was included in the corrective notice sent in consequence of the Iver's E-mail, and (3) is inappropriate because MSA's fit models already have access to defendants' counsel through MSA, but are unfamiliar with and have been discouraged from contacting plaintiff's counsel (by the Ivers' E-mail). (Reply at 7-8).

"Inclusion [of defense counsel's contact] information is routine." She Jian Guo, 2014 WL 5314822, at *4 (collecting cases); see also Bittencourt, 310 F.R.D. at 118. However, it is inappropriate to include that information in this section, suggesting that potential plaintiffs should contact defendants' counsel with questions about the litigation. "Only plaintiff's counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege." Chhab v. Darden Restaurants, Inc., No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013). Moreover,

> an instruction [inviting potential opt-in plaintiffs to contact defendants' counsel with questions about this lawsuit] would unnecessarily risk friction with New York Rule of Professional Conduct 4.2 -- which prohibits counsel from communicating with a party that counsel knows to be represented by another attorney -- as the [notice] would be informing lay litigants that they may both accept representation from Plaintiff's counsel and contact Defendants' counsel with legal questions.

Fa Ting Wang v. Empire State Auto Corp., No. 14 CV 1491, 2015 WL 4603117, at *18 (E.D.N.Y. July 29, 2015) (internal citation omitted). Instead, defendants' counsel's contact information shall be included in the subsection "What is MSA's position" added to

Section 1 of the Proposed Notice. <u>See</u> Section B.1.c, <u>supra</u>.

This relocation, in tandem with the fact that plaintiff's counsel's contact information appears under the header "QUESTIONS? -- CONTACT" on every page of the notice, should allay concerns that potential plaintiffs will be "encourage[d]" to contact defendants' counsel. And while it is true that the Ivers E-mail sought to discourage its recipients from contacting Mr. Dugger, the corrective notice effectively ameliorated the effect of the misleading information about plaintiff's counsel and the consequences of contacting him. <u>See</u> <u>Agerbrink</u>, 2015 WL 6473005, at *12 (correcting the Ivers E-mail's criticisms of plaintiff's attorney and stated or implied consequences of speaking to plaintiff's attorney). Finally, the fact that potential plaintiffs may already have access to MSA's attorney and have previously been provided contact information is irrelevant.

k.  <u>Consent Form</u>

The consent form included with the Proposed Notice requires an opt-in plaintiff to sign and provide a full name, although at her option she may provide other contact information. (Proposed Notice at 7). The defendants suggest a form that requires this same information, but also provides three lines for the opt-in plaintiff to check: the first provides consent to become a plaintiff; the second designates plaintiff's counsel as the opt-in plaintiff's representative; the third indicates that the opt-in plaintiff will retain her own counsel. (Defendants' Proposed Notice, attached as Exh. 4 to Spelfogel Decl., at 9-10). It is overly complicated to

18

require an opt-in plaintiff to check two boxes: one to opt-in and one to indicate whether she will be represented by plaintiff's counsel or her own counsel.  Such a procedure is likely to result in consent forms that either make a choice regarding representation but do not consent to become a plaintiff, or consent to become a plaintiff but do not make a choice about representation.  The defendants do not explain how such deficient forms would be handled.  In addition, the modifications are unnecessary.  A consent form is merely a simple way to agree to become a plaintiff in a collective action; it need not require an opt-in plaintiff to make decisions about her representation.  And the notice itself will inform potential plaintiffs of their right to choose their own representation.  <u>See</u> Section B(1)(g), <u>supra</u>.  Therefore the plaintiff's proposed consent form shall be included with the notice.[3]

### 2.   Information about Potential Collective Members

The plaintiff seeks a computer readable list containing the following information regarding "MSA fit models who signed exclusive contracts with respect to fit modeling, since September 15, 2012[,] through the present": (1) full names, (2) last known addresses, (3) last known phone numbers, (4) last known e-mail addresses, and (5) dates of employment and of their exclusive fit modeling contract term, including renewal periods. (Pl. Memo. at 20).  The defendants, who do not object to producing this

---

[3] Any provisions from the Proposed Notice not directly addressed above are acceptable in their proposed form.

information (Def. Memo. at 10-11), shall do so.

### 3.   Means of Disseminating Notice

The plaintiff appears to propose issuing the notice by mail and e-mail. (Pl. Memo. at 20 (citing Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 170 (S.D.N.Y. 2014), which approved notice by mail and e-mail)). The defendants do not object. (Def. Memo. at 10-11). Notice shall therefore be provided to potential collective members by both mail and e-mail.

### 4.   Posting Notice

The plaintiff wants the defendants to post notice of this action "in the MSA office lobby and/or MSA waiting area." (Pl. Memo. at 20). She is correct that courts "routinely" approve posting of notice even where potential plaintiffs will also be notified by other means. (Pl. Memo. at 20). See, e.g., Bittencourt, 310 F.R.D. at 118. However, such notices are typically posted on employee bulletin boards and other non-public areas where potential collective members are likely to congregate. See, e.g., Guo Qing Wang v. H.B. Restaurant Group, Inc., No. 14 Civ. 813, 2014 WL 5055813, at *6 (S.D.N.Y. Oct. 7, 2014) ("Accordingly, Defendant is ordered to post the Notice and the consent forms in a common, non-public employee space of Hunan Balcony, where the Notice and the consent forms will be easily visible to chefs and kitchen workers."); Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 464 (E.D.N.Y. 2014) ("[C]ourts routinely approve the posting of notice on employee bulletin boards and in common employee spaces." (quoting Mendoza v. Ashiya Sushi 5, Inc.,

No. 12 Civ. 8629, 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 16, 2013))); Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) ("The Court also permits the posting of notice in a non-public area of the six Pret locations listed above, such as in a break room or near the clock-in station."). Indeed, courts have balked at ordering notice to be posted in workplace areas accessible to the public. See, e.g., Scott v. Sawmill, No. 6:14-CV-1337, 2015 WL 2095294, at *3 (D. Or. May 4, 2015) ("The Defendant is not obligated to post notice in any public areas."); Marqulies v. Tri-County Metropolitan Transportation District of Oregon, No. 3:13-CV-475, 2013 WL 5593040, at *21 (D. Or. Oct. 10, 2013) ("While I agree that posted notices are an effective means of reaching potential plaintiffs that, for whatever reason, did not receive notice by mail or email, plaintiffs have offered no reason why it is necessary to post the notice at platforms, transit centers, and bus shelters -- places open to the public. Accordingly, I shall permit posting of the notice only at TriMet facilities not open to the public."); Love v. Phillips Oil, Inc., No. 3:08CV92, 2008 WL 5157677, at *2 (N.D. Fla. Dec. 9, 2008) ("The notice shall be posted only in non-public areas, i.e., those such as breakrooms, private work areas, etc., that are intended primarily for employees' use."). Here, the question is complicated by the fact that there do not appear to be any non-public workplace areas in which potential plaintiffs gather. Fit models regularly visit MSA's public reception area to pick up their checks, but only occasionally venture into the back office. (Affidavit of Susan

Levine dated Dec. 3, 2015 ("Levine Aff."), ¶¶ 4-5, 7-8).

However, I need not decide at this juncture whether it is appropriate to require MSA to post notice in its reception area, because, given the circumstances of this case, posting is likely unnecessary. As the defendants point out, fit models visit the MSA premises to pick up their paychecks "only after they have been contacted by MSA." (Def. Memo. at 12). MSA will be providing the plaintiff with contact information for its fit models. Thus, the mailing and e-mailing of notice is likely to capture any current MSA fit models who might visit the reception area. As for former fit models who are potential collective members, they are not likely to be reached by posted notice, because they are unlikely to have reason to visit MSA's reception area. See Calderon v. Geico General Insurance Co., No. 10CV1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) ("Most [potential collective members] work remotely, and requiring [the defendant] to post notices at its regional offices would therefore be unnecessarily intrusive while concomitantly serving little purpose."). If it becomes apparent that mailing and e-mailing notice has been insufficient, I will revisit this issue upon the plaintiff's application.

     5.   Opt-In Period

The defendants consent to a sixty-day opt-in period. (Def. Memo. at 10-11).

     6.   Reminder Notice

The plaintiff proposes sending a reminder notice to those potential plaintiffs who have not already joined the collective

action twenty-one days prior to the close of the opt-in period.
(Pl. Memo. at 21-22).  The proposed reminder notice is identical to
the Proposed Notice, except its first page provides that it is the
"FINAL NOTICE OF LAWSUIT." (Proposed Reminder Notice, attached as
Exh. N to Dugger 11/16/15 Decl.).  According to the plaintiffs,
such reminder notices are "commonplace" aids to ensure that as many
potential plaintiffs are informed of the action as possible and are
necessary because "people often disregard collective action
notices" and because of the misinformation in the Ivers E-mail.
(Pl. Memo. at 21-22; Reply at 2-3),

As the court observed in Guzelgurgenli v. Prime Time Specials
Inc., 883 F. Supp. 2d 340 (E.D.N.Y. 2012):

> there is no general consensus among district courts in
> other circuits as to the propriety of sending reminder
> notices. Some courts deny requests to send reminder
> notices on the grounds that "the reminder is unnecessary
> and potentially could be interpreted as encouragement by
> the court to join the lawsuit."
>
> On the other hand, because the reminder notice is being
> sent by plaintiff's counsel, and not the court, "courts
> have recognized that a second notice or reminder is
> appropriate in an FLSA action since the individual is not
> part of the class unless he or she opts-in." Still other
> courts have taken a middle road, permitting a reminder
> notice, but requiring that it include language
> specifically stating that the court neither encourages
> nor discourages participation in the lawsuit.

Id. at 357-58 (internal citations omitted) (quoting Witteman v.
Wisconsin Bell, Inc., No. 09-CV-440, 2010 WL 446033, at *3 (W.D.
Wis. Feb. 2, 2010), and  Sanchez v. Sephora USA, Inc., No.
11-CV-3396, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012)).
Courts have also looked to the length of the opt-in period, but are

inconsistent as to whether a shorter period (for example, sixty rather than ninety days) weighs in favor of or against reminder notice.  Compare Villarreal v. Caremark LLC, 66 F. Supp. 3d 1184, 1196 (D. Ariz. 2014) ("Given the reduction in the requested opt-in period from 90 to 60 days, the Court finds that sending reminder postcards is unnecessary."), with Morris v. Lettire Construction Corp., 896 F. Supp. 2d 265, 274-75 (S.D.N.Y. 2012) (noting, "Plaintiffs contend that a reminder notice . . . is particularly appropriate here, where plaintiffs have consented to a 60-day notice period," and approving  reminder notice in order "to inform as many potential plaintiffs as possible of the collective action and their right to opt-in").

In light of the salutary purpose of notice in collective actions, I see some benefit and no harm in sending a reminder notice, provided that it includes language indicating that the Court does not encourage or discourage participation in the collective action.  See, e.g., Jennings v. Cellco Partnership, Civ. No. 12-293, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012) (amending proposed reminder notice to include the following language: "This Notice Serves to Notify You of This Pending Lawsuit. The Court Does Not Encourage or Discourage Participation In This Case").  This amendment is particularly appropriate because the front page of the Proposed Reminder Notice states that it is "a court-authorized notice."  The reminder notice shall also include the revisions to the original notice discussed herein.

24

7.  Additional Opt-In Procedures

The plaintiff suggests that, after the sixty-day opt-in period expires, the Court approve a shorter opt-in period allowing plaintiffs to join the suit anonymously or pseudonymously. (Pl. Memo. at 22). She contends that MSA has the power to prevent fit models it represents from plying their trade because of the exclusivity provision in MSA's management agreement, and the power to withhold wages because of a liquidated damages provision. (Pl. Memo. at 23; Agerbrink Decl., ¶¶ 56-63; Management Agreement, attached as Exh. A to Agerbrink Decl., ¶¶ 1, 11); Agerbrink, __ F. Supp. 3d at __, 2016 WL 93865, at *7-8 (discussing liquidated damages provision in management agreement). Calling the relationship between MSA and its exclusive fit models "uniquely vulnerable and coercive," Ms. Agerbrink argues that an "admittedly unique opt-in process" is appropriate to protect plaintiffs "from retaliation by MSA or other NYC modeling agencies." (Pl. Memo. at 23).

The Federal Rules of Civil Procedure demand all parties be named in the complaint, Fed. R. Civ. P. 10(a), which "serves the vital purpose of facilitating public scrutiny of judicial proceedings," Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 188 (2d Cir. 2008), a right "supported by the First Amendment," Doe v. Del Rio, 241 F.R.D. 154, 156 (S.D.N.Y. 2006). There are exceptions to this rule, however, which require "balancing [] a 'plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the

defendant.'" <u>Michael v. Bloomberg L.P.</u>, No. 14 Civ. 2657, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) (second alteration in original) (quoting <u>Sealed Plaintiff</u>, 537 F.3d at 189).   To determine whether to allow a party to proceed anonymously, courts should consider factors such as

> [(1)][w]hether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

<u>Michael</u>, 2015 WL 585592, at *3 (third through fifth alterations in original) (quoting <u>Sealed Plaintiff</u>, 537 F.3d at 190).

The plaintiff worries that fit models are "particularly vulnerable to the possible harms of disclosure," <u>id.</u>, because of the power that MSA has over their bookings and remuneration. (Pl. Memo. at 23; Reply at 3-4).   In <u>Does I thru XXIII v. Advanced Textile Corp.</u>, 214 F.3d 1058 (9th Cir. 2000), the plaintiffs were

26

Chinese and Bangladeshi guest workers in the garment industry in Saipan, the main island of the United States Commonwealth of the Northern Mariana Islands. Id. at 1062. The Ninth Circuit allowed them to proceed anonymously as plaintiffs at the outset of their putative FLSA collective action, finding that they faced greater threats than the typical FLSA plaintiff:

> While threats of termination and blacklisting are perhaps typical methods by which employers retaliate against employees who assert their legal rights, the consequences of this ordinary retaliation to plaintiffs are extraordinary. As guest workers in Saipan, plaintiffs may be deported if they lose their jobs. Moreover, if plaintiffs are fired, blacklisted, or deported, they will be burdened with debts arising from their contracts with the recruiting agencies. Plaintiffs fear accruing debts because they know Chinese citizens who have been threatened with arrest and incarceration because they could not pay their debts to recruiters.

Id. at 1071 (internal citation omitted). These fears of "deportation, arrest, and imprisonment," id. at 1071, were sufficiently extraordinary to merit protection from disclosure of the plaintiffs' names. That is, the court found that commonplace concerns over termination or blacklisting will not ordinarily justify anonymity unless the victim would suffer exceptional repercussions. Courts in this circuit agree. See, e.g., Michael, 2015 WL 585592, at *2-3 (plaintiff's fear of "a lifetime of harm" to future job prospects insufficient to allow anonymity); Doe I v. Four Brothers Pizza, Inc., No. 13 CV 1505, 2013 WL 6083414, at *10 (E.D.N.Y. Nov. 19, 2013) (plaintiff's fear that defendants would "call the police or immigration" insufficient to allow anonymity). The plaintiff's worries of "termination and blacklisting" do not rise to the level of extraordinary consequences meriting

27

anonymity.[4]

To be sure, the defendants' cries of prejudice are hyperbolic. They claim that allowing any opt-in plaintiffs to proceed anonymously would "prejudice [their] ability to obtain relevant documents" from those plaintiffs. (Def. Memo. at 16). However, it is not clear that individualized discovery from opt-in plaintiffs would be appropriate in this case. See, e.g., Lloyd v. J.P. Morgan Chase & Co., Nos. 11 Civ. 9305, 12 Civ. 2197, 2015 WL 1283681, at *2-4 (S.D.N.Y. March 20, 2015) (discussing propriety of individualized discovery of opt-in plaintiffs); Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 188, 192 (S.D.N.Y. 2014) (disallowing such discovery in favor of discovery from a representative sample of opt-in plaintiffs). Notwithstanding the defendants' failure to establish prejudice, I find that potential plaintiffs' vulnerability to the harms of disclosure does not outweigh "the public's legitimate interest in knowing the facts at issue in court proceedings." Guerrilla Girls, Inc. v. Kaz, 224 F.R.D. 571, 573 (S.D.N.Y. 2004) (quoting Free Speech v. Reno, No. 98 Civ. 2680, 1999 WL 47310, at *1 (S.D.N.Y. Feb. 1, 1999)).

Conclusion

For the reasons discussed above, the plaintiff's motion for conditional certification and court-authorized notice (Docket no.

---

[4] As noted, the FLSA prohibits retaliation against an employee for participating in an action under the statute. 29 U.S.C. § 218c. Moreover, courts may issue protective orders "to protect plaintiffs from potential retaliation." Enriquez v. Cherry Hill Market Corp., No. 10 CV 5616, 2012 WL 6641650, at *2 (E.D.N.Y. Oct. 22, 2012) (collecting cases).

57) is granted in part and denied in part.  The proposed notice, as modified above, shall be disseminated.  Within two weeks of the date of this opinion, the defendants shall produce a computer readable list of potential opt-in plaintiffs including their full names; last known addresses, phone numbers, and e-mail addresses; and dates of employment and of their exclusive fit modeling contract term, including renewal periods.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          February 2, 2016

Copies transmitted this date:

Cyrus E. Dugger, Esq.
The Dugger Law Firm, PLLC
154 Grand St.
New York, NY 10013

Evan J. Spelfogel, Esq.
Janie F. Friedman, Esq.
Ronald M. Green, Esq.
Epstein, Becker & Green, P.C.
250 Park Ave.
New York, NY 10177