UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EVA AGERBRINK, individually
and on behalf of all others similarly situated,
                                Plaintiff,

                        14-CV-7841 (JPO)

              -v-

                      OPINION AND ORDER

MODEL SERVICE LLC d/b/a MSA Models,
SUSAN LEVINE, and WILLIAM IVERS,
                              Defendants.
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Eva Agerbrink filed this action on September 26, 2014, against Model Service LLC, Susan Levine, and William Ivers (collectively, "Defendants"), asserting wage-related claims under federal and state law. (Dkt. No. 1.) Agerbrink now moves for partial summary judgment with respect to Defendants' liability on her individual claim for unjust enrichment.[1] (Dkt. No. 92.) For the reasons that follow, the motion is granted.

**I.    Background**

      The following facts are undisputed unless otherwise noted.

      Defendant Model Service LLC ("MSA") is a model management company. (Dkt. No. 102 at 13.) The named co-defendants, Susan Levine and William Ivers, are, respectively, the owner and Chief Operating Officer of MSA. (*Id.*; Dkt. No. 77 at 4.)

      On or about March 5, 2013, Agerbrink and MSA executed a contract (the "Modeling Contract") providing that Agerbrink would perform modeling work for clients contacted by MSA, and that MSA would receive a commission on "any and all gross monies or other

---

[1] Agerbrink asserts various other claims not at issue here. (Dkt. No. 77.) Because this motion only concerns Defendants' *liability* for unjust enrichment, determination of the appropriate measure of damages is left for another day. (Dkt. No. 92.)

1

consideration that [Agerbrink] receive[d] as a result of any agreements . . . that [were] entered into during the [term of the contract]." (Dkt. No. 58-1 at 2-9.) The present motion centers on a clause in the Modeling Contract regarding MSA's remedies in the event that Agerbrink breaches the contract (the "Remedy Clause"). (Dkt. No. 102 at 2; Dkt. No. 94 at 6.) That provision states:

> Model hereby agrees that in the event Model breaches this Agreement or otherwise refuses to fulfill Model's obligations hereunder . . . MSA may, at its sole election, (i) retain as liquidated damages all funds then held and/or subsequently received by MSA on Model's behalf, or (ii) seek all legal and/or equitable remedies then available to MSA, in which event MSA shall, pending the resolution of MSA's claims, be entitled to hold the funds referred to in the preceding clause (i) as security for any judgment MSA may obtain against Model in connection with such claims.

(Dkt. No. 102 at 2; Dkt. No. 58-1 at 5.) The Modeling Contract also includes a severability clause, which "permits the Court to sever an unenforceable provision and uphold the rest of the" contract's terms. (Dkt. No. 104 at 9; *see* Dkt. No. 58-1 at 6.)

Agerbrink performed modeling work for MSA clients until approximately June 2014. (Dkt. No. 102 at 3.) At that time, Defendants allege, Agerbrink began working with a different management agency. (*Id.*) MSA's attorney, David Schwartz, sent Agerbrink a letter stating that by "accept[ing] an employment position as a [] model with" the other management agency, she had "materially breache[d]" Section 4 of the Modeling Contract, and specifically her obligations "to (i) seek MSA's counsel regarding all matters in the field of [] modeling, (ii) advise MSA of all offers of employment as a [] model submitted to [her], and (iii) refer to MSA any inquiries regarding [her] services." (Dkt. No. 58-1 at 15; *see id.* at 3.)

Schwartz also stated that "MSA ha[d] the right under [the Remedy Clause] to retain as liquidated damages all monies that it receives, and has received, on [Agerbrink's] behalf, or [could] retain such amounts as security against a judgment." (*Id.* at 15.) He wrote that this

2

money amounted to $17,946.41 as of the time of the letter,[2] and that MSA was "willing to refrain from pursuing legal action against [Agerbrink]" if she (1) authorized MSA in writing to retain the funds permanently and (2) instructed her alleged new employer to pay 20% of her gross salary to MSA. (*Id.* at 16.)

Defendants withheld funds from Agerbrink, and they "invoke[] the liquidated damages provision," i.e., the Remedy Clause, in continuing to do so. (Dkt. No. 83 ¶ 378.)

## II.     Procedural History

The relevant procedural history is ably sketched in the opinion of the Honorable James C. Francis IV dated January 6, 2016, and the parties' familiarity with that history is presumed. *See Agerbrink v. Model Serv. LLC,* No. 14-CV-7841, 2016 WL 93865 (S.D.N.Y. Jan. 7, 2016). It suffices for present purposes to say that Agerbrink filed the Second Amended Complaint on January 11, 2016, joining William Ivers as an individual defendant, and also adding an unjust enrichment claim. (Dkt. No. 77.) Defendants filed an Answer and Counterclaims on January 28, 2016. (Dkt. No. 83.)

Agerbrink filed the present motion on February 5, 2016. (Dkt. No. 92.)

## III.    Discussion

Defendants "invoke[]" the Remedy Clause in defense of their withholding of Agerbrink's earnings. (Dkt. No. 83 ¶ 378.) Agerbrink challenges the validity of the Remedy Clause, arguing that it is "an illegal and unenforceable penalty provision," and that Defendants are accordingly liable to her for unjust enrichment as a matter of law, because they have no right to withhold her earnings. (Dkt. No. 94 at 3.)

---

[2] Defendants dispute the amount of the withheld funds. (Dkt. No. 102 at 4.) Because only the issue of liability is before the Court, however, the dispute need not be resolved at this stage.

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### B. The Contract as a Bar to Agerbrink's Claim

Defendants argue at the outset that "there can be no claim of unjust enrichment" because the parties' relationship was governed by a contract. (Dkt. No. 104 at 12); *see Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (Sotomayor, J.) ("[A] valid contract bars a quantum meruit action [] where 'the scope of the contract clearly covers the dispute between the parties.'" (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987))) (alteration omitted).

The substance of that argument was already rejected on a previous motion. *See Agerbrink,* 2016 WL 93865, at *6 (holding that "a claim for unjust enrichment may survive a motion to dismiss where the plaintiff challenges the contract's validity.") (citations omitted). As Judge Francis explained in that opinion, an unjust enrichment claim is not precluded by "a valid, enforceable contractual obligation" where "the contract imposed the allegedly unlawful penalty in the first place." *Id.; see Spirit Locker, Inc. v. EVO Direct, LLC,* 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010); *DeWitt Stern Grp., Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 485 (S.D.N.Y. 2014) (citing *Dragushansky v. Nasser,* No. 12-CV-9240, 2013 WL 4647188, *8 (S.D.N.Y. Aug. 29,

2013)).³ Because Agerbrink's claim rests on the argument that the relevant contract provision is invalid, her claim is not barred by the contract. (Dkt. No. 94 at 3.)

### C. Unjust Enrichment

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. F.D.I.C.,* 273 F.3d 509, 519 (2d Cir. 2001). Because Defendants do not dispute that they have withheld, and continue to withhold, Agerbrink's earnings, the first and second requirements are satisfied. (Dkt. No. 102 at 4).

As Judge Francis noted in his earlier decision, "[t]he crux of this claim—that the defendants have been unjustly enriched by retaining payments from clients and owed to the plaintiff for work performed—is that the defendants are not entitled to these monies because the [Remedy Clause] is unenforceable." *Agerbrink*, 2016 WL 93865, at *7. If no valid contractual provision entitles Defendants to seize Agerbrink's earnings, then those earnings rightly still belong to her. Accordingly, if the Remedy Clause is invalid, Agerbrink will have satisfied the third and final requirement of her claim for unjust enrichment: that equity and good conscience require the return of Agerbrink's money to her.

---

³ In any event, Defendants' argument is, by virtue of Judge Francis' conclusion, "barred under the law-of-the-case doctrine, which [provides that] 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Zogheib*, 510 F. App'x 15, 15 (2d Cir. 2013) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)).

**D.     The Remedy Clause**

"[A] liquidated damage[s] provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of a breach of the agreement." *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.,* 361 N.E.2d 1015, 1018 (N.Y. 1977)). Under New York law, such a provision is enforceable only where "the specified amount is a reasonable measure of the anticipated harm."[4] *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004) (quoting *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1227 (N.Y. 1999)) (internal quotation marks omitted); *accord* Restatement (Second) of Contracts § 356(1). A provision that does not serve the purpose of reasonably measuring the anticipated harm, but is instead punitive in nature, serving as a mere "added spur to performance," will not be enforced. *Priebe & Sons v. United States,* 332 U.S. 407, 413 (1947) (Douglas, J.); *accord Truck Rent-A-Ctr.*, 361 N.E.2d at 1018.

To that end, "New York courts will construe a purported liquidated damages provision strictly," and "where the damages flowing from a breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, the stipulated sum will be treated as a penalty and disallowed." *U.S. Fid. & Guar. Co.,* 369 F.3d at 71. In this analysis, "it is not material [what] the parties themselves have chosen to call the provision"—courts look to "substance" and not to "form" to determine whether the provision is a valid liquidated damages clause or an unenforceable penalty. *Truck Rent-A-Ctr.*, 361 N.E.2d at 1015.

---

[4] The parties agree that New York law governs the Modeling Contract. (*See, e.g.,* Dkt. No. 94 at 12; Dkt. No. 104 at 7.) Such "consent is sufficient to establish choice of law." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC,* 861 F. Supp. 2d 344, 354-55 (S.D.N.Y. 2012) (quoting *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 61 (2d Cir. 2004)).

Defendants describe the Remedy Clause as a "liquidated damages provision" (Dkt. No. 83 ¶ 378), and indeed it explicitly purports to provide for liquidated damages. (Dkt. No. 58-1 at 5.) However, because it reflects no attempt whatsoever to "estimate . . . the extent of the injury that would be sustained as a result of a breach," the Clause is an unenforceable penalty. *Madanat*, 282 F.R.D. at 312 (citation omitted); *see Seidlitz v. Auerbach*, 230 N.Y. 167, 174 (N.Y. 1920) (Andrews, J.) ("There must be some attempt to proportion these damages to the actual loss. The parties must not lose sight of the principle of compensation."). The Clause purports to allow Defendants to retain any of Agerbrink's earnings that it happens to have on hand, plus whatever additional such funds might come in after the breach. (Dkt. No. 102 at 2; Dkt. No. 58-1 at 5.) This is the essence of a penalty, designed "not to make a fair estimate of damages to be suffered but to serve only as an added spur to performance," and is therefore unenforceable. *Priebe,* 332 U.S. 413; *see N. Shipping Funds*, 998 F. Supp. 2d 301, 336 (S.D.N.Y. 2014) ("[T]he purpose of the [] provision was not to provide a reasonable estimate for compensation of Northern's damages in the event of a breach by Boa, but rather to compel Boa's performance and penalize it for a willful breach. This is a penalty contrary to public policy and will not be enforced.").

The Remedy Clause is invalid for another reason. It purports to give Defendants the option either to "retain as liquidated damages all funds then held and/or subsequently received by MSA on [Agerbrink]'s behalf" or, alternatively, to hold those funds as "security" toward an anticipated judgment against Agerbrink, while Defendants pursue other remedies against her. (Dkt. No. 102 at 2; Dkt. No. 58-1 at 5.)

Similar provisions have been rejected as unenforceable penalties. *See, e.g., Jarro Bldg. Indus. Corp. v. Schwartz*, 281 N.Y.S.2d 420, 420 (N.Y. App. Div. 2d Dep't 1967) (holding that a

7

clause which "operates to give appellant a minimum recovery regardless of actual damages and also affords him the option to disregard the liquidated damages specified if the actual damages exceed the amount stipulated" was invalid as a penalty); *see also In re O. P. M. Leasing Servs., Inc.*, 23 B.R. 104, 112 (Bankr. S.D.N.Y. 1982) (collecting cases). The general, common-sense rule underlying this determination is that "liquidated damages and actual damages are mutually exclusive remedies under New York law." *Trilegiant Corp. v. Sitel Corp.*, No. 09-CV-6492, 2013 WL 2181193, at *7 (S.D.N.Y. May 20, 2013); *see Vacold LLC v. Cerami,* 545 F.3d 114, 130 (2d Cir. 2008) (collecting authorities); *Chateau D'If Corp. v. City of New York*, 219 A.D.2d 205, 209 (N.Y. App. Div. 1st Dep't 1996) ("No one would quarrel with [the] conclusion that a liquidated damages clause and a provision entitling a nondefaulting vendor to further damages are incompatible and cannot coexist."). After all, the purpose of a valid liquidated damages provision is to provide a reasonable "estimate . . . of the extent of the injury that would be sustained as a result of a breach of the agreement" when other measures of damages are unavailable. *Truck Rent-A-Ctr.,* 361 N.E.2d at 1018. Because the liquated damages provision in the Remedy Clause guarantees Defendants a "minimum recovery" regardless of actual damages, while preserving their right to pursue actual damages if they so desire, the Remedy Clause is unenforceable.

  Defendants argue that, even if the liquidated damages provision within the Remedy Clause is invalid as a penalty, the Clause is enforceable as a security provision, because it provides that funds may be withheld "as security for any judgment MSA may obtain against Model." (Dkt. No. 104 at 10; Dkt. No. 58-1 at 5.) This argument also fails. Ultimately, it makes little difference whether the withholding is styled as a "security deposit" or a "liquidated damages" provision; courts look to the substance of such a provision in interpreting it. *Truck*

*Rent-A-Ctr.*, 361 N.E.2d at 1018-19.  Here, whether one describes the withholding of Agerbrink's earnings as "liquidated damages," a "penalty," or "security for [a] judgment," the result is identical: Defendants are retaining money earned by Agerbrink, the measure of which is—by operation of the Remedy Clause—wholly unrelated to their alleged injury.[5]  (*See* Dkt. No. 94 at 13; Dkt. No. 83 at ¶ 404-19.)  *See* Restatement (Second) of Contracts § 374 cmt. c ("Instead of promising to pay a fixed sum as liquidated damages in case of breach, a promisor may actually pay a sum of money that the parties understand is to be retained by the promisee if the promise is not performed.  If the sum is *a reasonable one that would be sustained as liquidated damages* . . . the promisee is entitled to retain it.  If it is not, the promisor is entitled to restitution.") (emphasis added).  Accordingly, Defendants' attempt to reframe their withholding as a "security" does not render the clause enforceable.[6]

Because the Remedy Clause is unenforceable, Defendants may not continue to "invoke[] the liquidated damages provision" as justification for withholding Agerbrink's earnings.  (Dkt. No. 83 at ¶ 378.)  It follows that Agerbrink has satisfied the third and final requirement for a

---

[5] Here, Defendants were not empowered to seize and withhold the funds until they perceived that Agerbrink had breached the Modeling Contract.  This springing aspect of the Remedy Clause also weighs against construing it as security and in favor of finding it punitive.  Even ignoring this feature, the Remedy Clause would still be unenforceable.

[6] New York law does recognize a narrow exception to the general rule against noncompensatory penalties in the context of security deposits for real estate transactions.  *See Uzan v. 845 UN Ltd. P'ship*, 10 A.D.3d 230, 237 (N.Y. App. Div. 1st Dep't 2004) (discussing the "distinction" in New York law "between real estate deposits and general liquidated damages clauses" (citing *Maxton Builders, Inc. v. Lo Galbo*, 502 N.E.2d 184 (N.Y. 1986))).  The rationale for that exception, discussed at length in *Maxton*, "cannot be blindly applied to non-real estate contracts."  *In re Brown Pub. Co.*, 486 B.R. 46, 58 (Bankr. E.D.N.Y. 2013); *see Spirit Locker,* 696 F. Supp. 2d at 307 ("Outside the real estate context, down payments are treated differently.").

claim of unjust enrichment, as Defendants continue to hold funds to which she is entitled. Accordingly, Agerbrink is entitled to summary judgment as to liability on this claim.

### IV. Conclusion

For the foregoing reasons, Agerbrink's motion for partial summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 92.

SO ORDERED.

Dated: July 20, 2016
      New York, New York

_____
J. PAUL OETKEN
United States District Judge