UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
EVA AGERBRINK, individually and      :    14 Civ. 7841 (JPO) (JCF)
on behalf of all others similarly    :
situated,                            :         MEMORANDUM
                                     :         AND ORDER
                Plaintiff,           :
                                     :
   - against -                       :
                                     :
MODEL SERVICE LLC d/b/a MSA MODELS,  :
SUSAN LEVINE, and WILLIAM IVERS,     :
                                     :
                Defendants.          :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/8/17

     This case involves the alleged misclassification of the

plaintiff and other similarly situated employees as independent

contractors.  Discovery has not gone smoothly, as the motions now

before the Court attest.  The plaintiff has made an omnibus motion

to compel discovery responses, while the defendants have cross-

moved to compel the production of tax returns by the plaintiff and

other persons who opt-in to the litigation.   For the reasons

discussed below, the plaintiff's motion is granted in part and

denied in part, and the defendants' motion is denied.

Background

     Eva Agerbrink, the plaintiff, is a "fit model," that is, she

works with the apparel industry "to check the fit, drape, and

visual appearance of a design on a real human being."  (Second

Amended Complaint ("SAC"), ¶ 1).  From March 2013 through June 2014, she worked for the corporate defendant, Model Service LLC, doing business as MSA Models ("MSA").  (SAC, ¶¶ 25, 91).  While MSA classified her as an independent contractor, Ms. Agerbrink contends that she should have been deemed an employee and compensated accordingly.  (SAC, ¶¶ 25-26, 31).  She has brought this action alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL").  (SAC, ¶¶ 296-359).  She also alleges that the defendants were unjustly enriched when MSA relied on an unenforceable liquidated damages provision in her contract to withhold monies owed to her.  (SAC, ¶¶ 360-64).

This case has been conditionally certified pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of all fit models who have worked for MSA at any time after September 2011, three years before the action was filed (the "Fit Model Collective"). Agerbrink v. Model Services LLC, No. 14 Civ. 7841, 2016 WL 406385, at *1-2, 9 (S.D.N.Y. Feb. 2, 2016).  Ms. Agerbrink also intends to seek certification under Rule 23 of the Federal Rules of Civil Procedure of a class of all fit models who could assert NYLL claims (the "Fit Model Class"), as well as all models employed by MSA who were subject to withholding of compensation under the challenged liquidated damages provision (the "Unjust Enrichment Class").

2

The Honorable J. Paul Oetken, U.S.D.J., has granted partial summary judgment in favor of the plaintiff on her unjust enrichment claim, finding that the liquidated damages provision in the employment contract constituted an unenforceable penalty. Agerbrink v. Model Services LLC, 196 F. Supp. 3d 412, 416-19 (S.D.N.Y. 2016).

In the course of discovery, the plaintiff propounded interrogatories and document requests, and the defendants responded. In part, that response consisted of identifying fifteen "exemplar" models with respect to whom the defendants collected more detailed information. I will discuss the specifics of the parties' discovery disputes in connection with the analysis of their motions.

Discussion

A. Plaintiff's Motion to Compel

Generally speaking, the plaintiff's complaints about the defendants' discovery responses fall into three broad categories: database discovery, email, and contracts. (Tr. at 2).[1] However, the plaintiff also seeks an order effectively compelling the defendants to produce virtually everything that the plaintiff has ever requested, regardless of whether the defendants have already

---

[1] "Tr." refers to the transcript of oral argument held on February 3, 2017.

responded to the requests, produced responsive documents, or
asserted meritorious objections. Ms. Agerbrink's memorandum of law
recategorizes the original requests into 38 new groupings, but does
not acknowledge the extent to which these requests have been
addressed. (Memorandum in Support of Plaintiff's Omnibus Motion to
Compel ("Pl. Memo.") at 4-39). Take, for example, the category
that the plaintiff characterizes as "Agreements Between Defendants
and MSA Fit Models," which encompasses five different document
demands. (Pl. Memo. at 19-20). This category includes Requests
Nos. 13 and 69, which sought:

> all documents concerning or referring to the negotiation,
> execution, agreement, rejection, or finalization of any
> agreement or contract (whether oral or written, formal or
> informal) between Defendants and any or all MSA Fit
> Model(s), including with respect [to] all documents
> concerning Defendants' decision to enter or decline to
> enter into any or all agreements or contracts (whether
> oral or written, formal or informal), including with
> respect [to] all management agreement(s) or modeling
> agreements

(Plaintiff's First Request for Production of Documents ("Pl. First
Doc. Req."), attached as Exh. C to Declaration of Cyrus E. Dugger
dated Nov. 4, 2016 ("Dugger 11/4/16 Decl."), Request No. 13
(emphasis omitted)), and "all documents concerning or referring to
the working conditions or schedules of any or all MSA Fit Model(s)"
(Pl. First Doc. Req., Request No. 69 (emphasis omitted)). Yet,
with respect to these demands, the defendants <u>agreed</u> to produce

responsive, non-privileged documents (Defendants Model Service LLC d/b/a Models and Susan Levine's Responses and Objections to Plaintiff's First Request for Production of Documents, attached as Exh. E to Dugger 11/4/16 Decl., Requests Nos. 13, 69), and the plaintiff has identified no specific shortcomings in the production.

The document demands in this category that the defendants objected to and did not agree to comply with request the following:

> all documents reflecting, containing, or constituting any
> agreement or contract (whether written or oral, formal or
> informal) between Defendants and any or all MSA Fit
> Model(s), including any agreement concerning the
> provision of fit modeling services, management,
> management agreement, model management agreement,
> compensation, talent management agreement, or concerning
> the full or partial release, waiver, or limitation of
> rights or claims (including all documents concerning any
> associated payment related thereto).

(Pl. First Doc. Req., Request No. 5 (emphasis omitted)); "all documents concerning or referring to the terms or conditions of any or all MSA Fit Model(s) provision of fit modeling services (or potential provision of fit modeling services) to any or all apparel industry client(s)" (Pl. First Doc. Req., Request No. 18 (emphasis omitted)); and "all rosters, lists, or contact information (including machine-readable electronic documents) concerning all or any MSA Fit Model(s)" (Pl. First Doc. Req., Request No. 76 (emphasis omitted)).  The defendants' objections were well-taken.

Courts have long held that requests for "any and all" documents are generally improper.  See Gropper v. David Ellis Real Estate, L.P., No. 13 Civ. 2068, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (holding request for "any and all documents" inherently overbroad); Rice v. Reliastar Life Insurance Co., Civ. A. No. 11-44, 2011 WL 5513181, at *2 (M.D. La. Nov. 10, 2011) (finding that "a request for 'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition"); Badr v. Liberty Mutual Group, Inc., No. 3:06CV1208, 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007) (finding request for "any and all" documents overly broad); Pollard v. E.I. DuPont de Nemours & Co., No. 95-3010, 2004 WL 784489, at *5 (W.D. Tenn. 2004)(holding "any and all" request ambiguous and overbroad).   It is thus unhelpful for the plaintiff to file a blunderbuss motion to compel that includes a substantial number of plainly objectionable discovery demands.

The defendants' approach to discovery has been equally unhelpful.  They have produced relatively complete information with respect to Ms. Agerbrink and fifteen exemplar models, and they have offered to produce similar information for perhaps fifteen more models, to be chosen by the plaintiff.  (Memorandum of Law in Opposition to Plaintiff's Omnibus Motion ("Def. Memo.") at 5; Tr. at 32; Declaration of Evan Spelfogel dated Dec. 7, 2016, ¶¶ 3-4).

The problem is that the defendants adamantly decline to accept any sample as representative. (Tr. at 32-33). But the defendants cannot have it both ways: they cannot refuse discovery that is necessary to demonstrate prerequisites for class certification such as commonality and typicality and at the same time argue (as they do) that the uniqueness of each model's situation precludes certification.[2] (Tr. at 33). The plaintiff must be permitted to take discovery that will potentially show that the models are sufficiently similarly situated to warrant class certification.

There is a solution to this problem that does not involve the plaintiff redrafting her discovery demands (or my doing it for her): the defendants shall produce for all exclusive fit models the same information they have produced for the fifteen exemplars. The defendants' objection to this approach is one of burden; they have represented that an employee spent approximately 1.5 hours assembling the information for the plaintiff and each of the fifteen exemplar models, for a total of about 23 hours. (Declaration of William Ivers dated Dec. 7, 2016 ("Ivers Decl."), ¶ 21). Such an expenditure of time, however, would not be

---

[2] There is, of course, no inconsistency between agreeing that a random sample is "representative," that is, that its characteristics reflect those of the universe as a whole, and arguing that a putative class lacks commonality. If each member of the class is, in fact, unique, then a random sample would reflect the diversity of the whole.

disproportionate.

> Rule 26(b)(1) allows discovery of
>
> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  These factors support discovery with respect to all fit models parallel to that provided for the exemplars.

First, the issues at stake in this case are of substantial public importance.  The FLSA reflects "the public's interest in ensuring that workers receive '[a] fair day's pay for a fair day's work.'"  Camacho v. Ess-a-Bagel, Inc., No. 14 Civ. 2592, 2014 WL 6985633, at *3 (S.D.N.Y. Dec. 11, 2014) (alteration in original) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)); cf. Chao v. Gotham Registry, Inc., 514 F.3d 280, 285 (2d Cir. 2008) ("In service of the statute's remedial and humanitarian goals, the Supreme Court consistently has interpreted the [FLSA] liberally and afforded its protections exceptionally broad coverage.").  And here, the public interest is enhanced both because this case is brought as a class action and because it involves determining the contours of an exemption that would have

8

implications for other workers.

Next, the amount in controversy is not insignificant. According to the complaint, Ms. Agerbrink is seeking approximately $2,400.00 for minimum wage and overtime violations.[3]  An equal amount could be awarded as liquidated damages, 29 U.S.C. § 216(b), bringing the total damages under the FLSA for Ms. Agerbrink alone to $4,800.00.  Furthermore, as noted above, the plaintiff has already been awarded summary judgment on her claim for unjust enrichment, a claim valued at $17,946.41.  Agerbrink, 196 F. Supp. 3d at 415.  The value of one and one-half hours of employee time to collect information in connection with each employee's claim pales by comparison.[4]

The factor of relative access to relevant information likewise favors the additional discovery.  The Advisory Committee's note to the 2015 amendments to Rule 26 states:

> Some cases involve what is often called "information asymmetry."  One party -- often an individual plaintiff

---

[3] This number is derived by totaling the alleged damages as follow:

SAC ¶ 179: $1,500.00
SAC ¶¶ 171-172: $793.88 (109.5 hrs. x $7.25/hr.)
SAC ¶ 155: $72.50 (20 hrs. x $3.625/hr.)
SAC ¶ 154: $14.50 (2 hrs. x $7.25/hr.)
SAC ¶ 151: $58.00 (8 hrs. x $7.25/hr.)

[4] There is no information in the record, one way or the other, about whether the magnitude of Ms. Agerbrink's claims is representative of those of other fit models.

> -- may have very little discoverable information.   The
> other party may have vast amounts of information,
> including information that can be readily retrieved and
> information that is more difficult to retrieve.   In
> practice these circumstances often mean that the burden
> of responding to discovery lies heavier on the party who
> has more information, and properly so.

(Fed. R. Civ. P. Rule 26 advisory committee's note to 2015 amendments).   This is such a case.   The greater burden will necessarily fall on MSA because it possesses by far the greater amount of relevant information.

To be sure, MSA's resources are not unlimited.  William Ivers, its Chief Operating Officer, has described the wide range of duties that he performs within the 35-employee company; he will no doubt be diverted from those responsibilities to the extent that he must respond to discovery requests.  (Ivers Decl., ¶¶ 1, 5-6).

The discovery at issue is nevertheless central to the claims in the case.  The defendants recognized this when they provided the same discovery with respect to Ms. Agerbrink and the exemplar models.  And it is crucial to demonstrating or contesting the appropriateness of class certification.

Finally, the benefit of the discovery plainly outweighs the burden.  Critical issues, including class certification, cannot properly be decided without it.  Given what each model has at stake, the investment of one and one-half hours of time per model gathering the information is not disproportionate.  Accordingly,

the relevant considerations favor proceeding with the additional discovery, and the defendants shall therefore provide for all exclusive fit models, except those with arbitration agreements, the same information they have previously provided with respect to Ms. Agerbrink and the exemplar models. For exclusive fit models who have arbitration agreements with MSA, the defendants shall produce those agreements.

That leaves the three constellations of issues that the plaintiff focused on at oral argument: databases, email, and contracts. With respect to databases, the plaintiff argues that "there are thousands of tables that are available and [] there are at least dozens of reports that weren't produced." (Tr. at 4). So it may be, but, for the most part, the plaintiff has failed to demonstrate the relevance of any particular report. There are two exceptions. First, the plaintiff requests the financial check report, which purportedly shows the rate paid for each visit to a client by an MSA model. (Tr. at 4). That information is pertinent, and the defendants shall produce it for all exclusive fit models, except those with arbitration agreements. Second, MSA allegedly has data showing when models went on unpaid "go-sees," which are apparently initial appointments with clients in which the client determines whether it wishes to utilize the services of that particular model. (Tr. at 6-7). This information is also

11

relevant, and the defendants shall produce it with respect to the same universe of models.

Next, the plaintiff argues that the defendants' search of email has been inadequate. As an illustration, she offers the fact that she came into possession of a relevant policy document that the defendants did not produce, and she notes that rather than searching their entire database for policy documents, the defendants only produced those that they happened to locate while searching the email of the exemplar models. (Tr. at 15-18). This contention fails for two reasons. First, the fact that a party has located a single relevant document that the adversary failed to produce hardly demonstrates that the search was flawed. The standard for evaluating discovery is reasonableness, not perfection. See Freedman v. Weatherford International Ltd., No. 12 Civ. 2121, 2014 WL 4547039, at *3 (S.D.N.Y. Sept. 12, 2014); Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("[W]hile parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection."); Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union, 212 F.R.D. 178, 223 (S.D.N.Y. 2003) (Rule 26(g) requires a "reasonable inquiry under the circumstances"); Moore v. Publicis Groupe, 287 F.R.D. 182, 188

(S.D.N.Y. 2012) ("[T]he Federal Rules of Civil Procedure do not require perfection."); <u>Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC</u>, 685 F. Supp. 2d 456, 461 (S.D.N.Y. 2010) ("Courts cannot and do not expect that any party can meet a standard of perfection."), <u>abrogated on other grounds by</u> <u>Chin v. Port Authority of New York & New Jersey</u>, 685 F.3d 135, 162 (2d Cir. 2012). Second, the defendants' search for policy documents was, in fact, reasonable. Those documents, not surprisingly, are in hard copy form, and they were collected from the MSA managerial personnel most likely to possess them. (Tr. at 36). It is unlikely that searching for random references to policies in email would elicit additional unique information. More generally, it is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility. <u>See</u> <u>York Group, Inc. v. Pontone</u>, No. 10-CV-1078, 2011 WL 13136291, at *4 (W.D. Pa. Dec. 22, 2011). Ms. Agerbrink has made no such showing here.

Finally, the plaintiff seeks copies of contracts, vouchers, and schedule books that apparently exist in hard copy. The defendants do not contest the relevance of the information contained in these documents, but contend that the burden of copying and producing them is substantial. (Ivers Decl., ¶¶ 12-18, 23-24). They need not incur that burden. The responsibility for

bearing the costs attendant to copying responsive documents rests upon the requesting party.  See, e.g., Clever View Investments, Ltd. v. Oshatz, 233 F.R.D. 393, 394 (S.D.N.Y. 2006).  The plaintiff may therefore inspect the documents at issue at MSA's premises and designate those that she wishes to have copied.  The defendants shall then arrange for copying at a commercially reasonable price, for which the plaintiff shall reimburse them.

   B. Tax Returns

   The defendants seek to compel Ms. Agerbrink and any opt-in plaintiffs to disclose their personal tax returns.  They offer two rationales for this request.  First, the defendants contend that the fact that a worker may classify herself as an independent contractor on her tax returns cuts against a claim that she is in fact an employee and therefore entitled to the protections of the FLSA and NYLL.  Second, the defendants maintain that if the tax returns reveal that workers performed services for multiple employers, it will undermine the plaintiff's argument that the defendants exercised control over the workers' schedules.

   Income tax returns are not inherently privileged.  However, "courts are typically reluctant to compel their disclosure because of both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.'"  Uto v. Job Site

14

<u>Services Inc.</u>, 269 F.R.D. 209, 212 (E.D.N.Y. 2010) (quoting <u>Smith v. Bader</u>, 83 F.R.D. 437, 438 (S.D.N.Y. 1979)).   In order for a court to compel discovery of income tax returns, a two-pronged test must be met: "first, the court must find that the returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." <u>Securities and Exchange Commission v. Cymaticolor Corp.</u>, 106 F.R.D. 545, 547 (S.D.N.Y. 1985); <u>accord</u> <u>Rengifo v. Evervos Enterprises, Inc.</u>, No. 06 Civ. 4266, 2007 WL 894376, at *2 (S.D.N.Y. March 20, 2007). Generally, courts place the burden on the "party seeking discovery to demonstrate both relevancy and a compelling need." <u>Uto</u>, 269 F.R.D. at 212; <u>see, e.g.</u>, <u>Ellis v. City of New York</u>, 243 F.R.D. 109, 111-12 (S.D.N.Y. 2007).

An "economic realities" test governs whether a worker is an employee or an independent contractor under the FLSA. The relevant factors include:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

<u>Brock v. Superior Care</u>, 840 F.2d 1054, 1058-59 (2d Cir. 1988); <u>accord</u> <u>Hart v. Rick's Caberet International, Inc.</u>, 967 F. Supp. 2d

901, 911-12 (2d Cir. 2013). No factor is dispositive: "[r]ather, the test is based on a totality of the circumstances" analysis, with the ultimate question being whether the "workers depend upon someone else's business for the opportunity to render service or are in business for themselves." Brock, 840 F.2d at 1059. "[Employee] status does not require the continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees"; thus, even if an employer's control is "restricted, or exercised only occasionally," the employee may still be entitled to the protections of the FLSA. Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999). The fact that an employer does not exercise control continuously or consistently "does not diminish the significance of its existence." Irizarry v. Catsimatidis, 722 F.3d 99, 111 (2d Cir. 2013) (quoting Donovan v. Janitorial Services, Inc., 672 F.2d 528, 531 (5th Cir. 1982)).

Similarly, the New York Court of Appeals has articulated five factors relevant to determining control under NYLL: whether the worker (1) worked at her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule. Bynog v. Cipriani Group, Inc., 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 695 (2003); see also Browning v. Ceva Freight, LLC, 885 F. Supp. 2d

16

590, 598 (E.D.N.Y. 2012); <u>Deboissiere v. American Modification Agency</u>, No. 09 CV 2316, 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010).  These factors, however, are not exhaustive, and New York courts commonly take a variety of other attributes into consideration.  <u>See</u> <u>Hart</u>, 967 F. Supp. 2d at 923.  Accordingly, "the critical determinant is the degree to which the purported employer exercises control in fact over the results produced or the means used to obtain them." <u>Edwards v. Publishers Circulation Fulfillment, Inc.</u>, 268 F.R.D. 181, 184 (S.D.N.Y. 2010).

In light of this analytical framework, courts have offered divergent views of the relevance of a worker's tax returns.  In <u>Hart</u>, for example, the court held that under both the FLSA and NYLL, "it is not significant how the parties defined the employment relationship or how the worker identified herself on tax forms." 967 F. Supp. 2d at 924; <u>see also</u> <u>Sandrino v. Michaelson Associates, LLC</u>, No. 10 Civ. 7897, 2012 WL 5851135 (S.D.N.Y. Nov. 19, 2012) ("The test for whether a person is deemed to be an independent contractor for purposes of New York Labor Law does not depend, however, on what the person has labeled themselves.  Instead, the analysis is a question of fact which hinges on whether 'the employer exercises either control over the results produced or over the means used to achieve the results.'" (quoting <u>Bhanti v. Brookhaven Memorial Hospital Medical Center, Inc.</u>, 260 A.D.2d 334,

335, 687 N.Y.S.2d 667, 669, (2d Dep't 1999))).  On the other hand,

in <u>Deboissiere</u>, the court held that

> if a plaintiff signs a tax return "under penalty of
> perjury" that declares independent contractor status and
> seeks "numerous deductions for business purposes
> associated with independent contractor status, such as
> travel, entertainment, lodging, supplies, telephone and
> depreciation of business assets," such a tax return may
> significantly impede the plaintiff's ability to claim
> employee status for purposes of filing an overtime or
> minimum wage claim.

2010 WL 4340642, at *3 (quoting <u>Gagen v. Kipany Productions, Ltd.</u>,

27 A.D.3d 1042, 1044, 812 N.Y.S.2d 689, 691 (3d Dep't 2006)).

I find the analysis is <u>Hart</u> more compelling.  Nothing in the

relevant factors under either the FLSA or the NYLL suggests that

the worker's subjective perceptions are relevant.  It would be a

bold worker indeed who, notwithstanding the fact that she is paid

as an independent contractor, nevertheless files her taxes as an

employee, thereby exposing her employer to potential tax penalties.

Finally, although workers are classified as either employees or

independent contractors under both tax law and labor law, the

definitions are not identical, and a worker could be properly

classified as an employee for one purpose and an independent

contractor for the other.  See <u>Agerbrink v. Model Service LLC</u>, No.

14 Civ. 7841, 2015 WL 6473005, at *8 (S.D.N.Y. Oct. 27, 2015);

<u>Werner v. Bell Family Medical Center, Inc.</u>, No. 3:09 C 701, 2012 WL

1514872, at *2 (M.D. Tenn. May 1, 2012); <u>Herman v. Mid-Atlantic</u>

Installation Services, Inc., 164 F. Supp. 2d 667, 671 (D. Md. 2000), aff'd sub nom. Chao v. Mid-Atlantic Installation Services, Inc., 16 F. App'x 104 (4th Cir. 2001); Heath v. Perdue Farms, Inc., 87 F. Supp. 2d 452, 461 (D. Md. 2000).

Somewhat more persuasive is the defendants' argument that the tax returns are relevant not merely because they reflect the workers' self-identification as independent contractors, but also because they demonstrate the absence of control by MSA.  According to the defendants, claims that MSA exercised control over the hours, activities, and working conditions of fitness models would be undermined if tax returns showed that the models in fact were employed by multiple agencies at the same time.  (Memorandum of Law in Support of Defendants' Motion to Compel at 4; Reply Memorandum of Law in Support of Defendants' Motion to Compel Tax Returns at 3-4).  To be sure, the fact that a worker reports to multiple employers does not definitively prove that she is not an employee of any of them for labor law purposes; a part-time employee may have time to work for other employers without running afoul of requirements indicative of the primary employer's degree of control.  Nevertheless, employment by multiple employers would seem to pass the low threshold for relevance.

However, relevance is only the first hurdle for overcoming the quasi-privilege that attaches to tax returns.  Here, the defendants

cannot demonstrate a compelling need for the returns, as equivalent information is available from other sources. To the extent that it is relevant whether a model filed tax returns as an employee or as an individual contractor, this information may easily be obtained by interrogatory or deposition. Similarly, information about other employment may be gleaned from the models directly as well as from documents such as 1099 and W-2 forms. The defendants simply have not demonstrated that the tax returns -- and only the tax returns -- contain the potentially relevant information. Accordingly, the defendants' motion to compel their production is denied.

Conclusion

For the reasons discussed above, the plaintiff's motion to compel (Docket no. 148) is granted in part and denied in part. Specifically, within thirty days of the date of this order, the defendants shall (1) produce for all exclusive fit models, except those with arbitration agreements, the same information they have previously provided with respect to Ms. Agerbrink and the exemplar models; for exclusive fit models who have arbitration agreements with MSA, the defendants shall produce those agreements; (2) produce financial check reports and reports on "go-sees" for all exclusive fit models except those with arbitration agreements; and (3) permit plaintiff to inspect and copy, at her expense, the contracts, vouchers, and schedule books. In all other respects,

the plaintiff's motion is denied.  The defendants' motion to compel

disclosure of tax returns (Docket no. 163) is denied.


SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           March 8, 2017

Copies transmitted this date:

Cyrus E. Dugger, Esq.
The Dugger Law Firm, PLLC
154 Grand St.
New York, NY 10013

Ronald M. Green, Esq.
Evan J. Spelfogel, Esq.
Brian Cesaratto, Esq.
Matthew S. Aibel, Esq.
Epstein, Becker & Green, P.C.
250 Park Ave.
New York, NY 10177