**RONALD M. GREEN**
**EVAN J. SPELFOGEL**
**EPSTEIN BECKER & GREEN, P.C.**
250 PARK AVENUE
NEW YORK, NEW YORK 10177
(212) 351-4500
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
EVA AGERBRINK,

                      Plaintiff,

                vs.

MODEL SERVICE LLC d/b/a MSA MODELS,
SUSAN LEVINE and WILLIAM IVERS

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ECF Case**

14 CV 7841 (JPO)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

October 24, 2017

Firm:44420849v2

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................................... 1

II.    ARGUMENT ................................................................................................................. 1

       A.    Plaintiff Does Not Dispute The Many Record Facts That Support the Economic Reality That Plaintiff Was A Bona Fide Independent Contractor. ......................... 1

       B.    Defendants' Affidavits Were Properly Submitted. ................................................. 4

             1.    Ms. Rohr's Affidavit ................................................................................... 5
             2.    Defendants' Other Affidavits ..................................................................... 6
             3.    Affidavits Do Not Have to Expressly State They Are on Personal Knowledge ................................................................................................ 10

       C.    Plaintiff Should Not Be Granted Summary Judgment On Her Contract Affirmative Defenses or Claims. .......................................................................... 11

             1.    Plaintiff's Claims Should Be Set Off Against Her Breach. ..................... 11
             2.    Defendants Properly Plead Tortious Interference. ................................... 11
             3.    Plaintiff is Not Entitled to Summary Judgment Setoff Because of a Factual Dispute Over the Value of the Fit Model Services She Provided to Cache. ................................................................................................... 11
             4.    Plaintiff is Not Entitled to Summary Judgment on Her Unconscionability Affirmative Defense ................................................................................. 12
             5.    Plaintiff is Not Entitled to Summary Judgment on Her Affirmative Defense of Repudiation ............................................................................ 13
             6.    Plaintiff is Not Entitled to Summary Judgment on Her Prior Material Breach Affirmative Defense. ................................................................... 13
             7.    Plaintiff is Not Entitled to Summary Judgment on Her Non-Material Breach Affirmative Defense. ................................................................... 14
             8.    Plaintiff is Not Entitled to Summary Judgment on Her Employment Agency Defense. ...................................................................................... 14

III.   CONCLUSION ............................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agerbrink v. Model Serv. LLC*,
    No. 1:14-cv-07841, 2015 U.S. Dist. LEXIS 77821 (S.D.N.Y. June 16, 2015) ........................14

*Columbia Artists Mgmt., LLC v. Swenson & Burnakus, Inc.*.
    No. 05 Civ 7314 (LBS), 2008 U.S. Dist. LEXIS 74377
    (S.D.N.Y. Sept. 23, 2008) ..................................................................................................13, 15

*DIRECTV, Inc. v. Budden*,
    420 F.3d 521 (5th Cir. 2005) ..................................................................................................10

*Hayes v. New York City Dep't of Corr.*,
    84 F.3d 614 (2d Cir. 1996)........................................................................................................6

*Kivort Steel, Inc. v. Liberty Leather Corp.*,
    110 A.D.2d 950 (3d Dep't 1985) ............................................................................................11

*Lesser v. Camp Wildwood*,
    01-Civ-4209, 2003 U.S. Dist. LEXIS 16921 (S.D.N.Y. Sept. 29, 2003) ...............................4, 5

*Mandel v. Liebman*,
    303 N.Y. 88 (N.Y. 1951) .........................................................................................................15

*Mueller v. Oregon*,
    208 U.S.412 (1908)..................................................................................................................11

*Piersons v. Quality Archery Designs, Inc.*,
    No. 3:06-cv-0408, 2009 U.S. Dist. Lexis 131352 (N.D.N.Y. Feb. 26, 2009) .........................10

*Pine v. Laine*,
    36 A.D.2d 924 (1st Dep't 1971) *aff'd*, 31 N.Y.2d 988 (N.Y. 1973).......................................15

*Saleem v. Corp. Trans. Grp.*,
    854 F.3d 131 (2d Cir. 2017)......................................................................................................3

*SEC v. Boock*,
    No. 09-Civ.-8261, 2011 U.S. Dist. Lexis 95363 (S.D.N.Y. Aug. 25, 2011) .............................5

**Other Authorities**

Federal Rule of Civil Procedure 26 .........................................................................................4,5,6

Local Rule 56.1(c) ..........................................................................................................................2

Federal Rule of Civil Procedure 37 ................................................................................................4

I.  **PRELIMINARY STATEMENT**

Defendants have already set forth their arguments in chief and rebuttal arguments in support of summary judgment dismissal of the complaint and with respect to their affirmative defenses and counterclaims. In this second round of briefing we submit supplementary arguments on the independent contractor issue, but focus primarily on Plaintiff's hyper-technical, albeit flawed, legal arguments seeking to invalidate sworn affidavits submitted by Defendants. These clearly establish that Plaintiff is an independent professional fit model, and not an employee of MSA, and were properly submitted on the motions.

Plaintiff fails to address on the merits most of Defendants' factual support establishing that she is a bona fide independent contractor. This includes facts that she performed work for third party Apparel Companies, not MSA; she worked at her own convenience, and not pursuant to any set schedule; she earned a rate of pay to which she and the Apparel Companies agreed; her profit making ability reflected the amount she invested into her career; she was a skilled fit model with over twenty years of industry experience; she promoted her own career and made her own business decisions; and she utilized MSA to help coordinate her bookings, find new go-sees and fittings, and facilitate her collections and disbursements from Apparel Companies similar to that of a payroll processing company.

II.  **ARGUMENT**

A.  **Plaintiff Does Not Dispute The Many Record Facts That Support the Economic Reality That Plaintiff Was A Bona Fide Independent Contractor.**

In her reply brief, Plaintiff does not dispute the many key factual elements establishing that, as a matter of law, she was an independent contractor, and not an employee of MSA. Conspicuously absent, for example, is any factual dispute with respect to Plaintiff's investments

in, among others, multiple vehicles and lodgings, professional photographs and other career enhancements; 56.1 ¶ 549-565, 567, (Defendant's Initial Brief In Opposition of Plaintiff's Motion and In Support of Defendant's Motion at 18, hereinafter "Def. Br."); profit or loss from her investments and business decisions that nearly resulted in Plaintiff declaring bankruptcy (Def. Br. 18); and her twenty years of experience and skill in performing fit modeling for numerous Apparel Companies, utilizing different management companies other than MSA. (Def. Br. 15). Rather, Plaintiff restates her legally erroneous argument that the mere existence of contract language granting Defendants unexercised hypothetical control created an employment relationship. (*See* Plaintiff's Memorandum of Law in Reply and Opposition at 6-7, hereinafter "Pl. Rpl.")

Under local Rule 56.1(c), by failing to dispute the facts showing her independent contractor status, Plainitiff is deemed to have admitted these facts on Defendants' motion for summary judgment. Instead of squarely addressing the facts set forth by Defendant in its Rule 56.1 statement of facts, Plaintiff seeks to create a factual dispute where none exists, by submitting many pages of irrelevant factual citations into her counterstatement.

The absence of disputed relevant and dispositive facts could not be more clear. For example, Defendants state in their opening brief that Plaintiff performed services for Apparel Companies, not for MSA. 56.1¶343. In her counterstatement, Plaintiff denies that she did not perform services for MSA, but does not actually rebut Defendants' statement with any factual counter-point addressing the person or entity for whom she provided services. She instead sets forth the unsupported legal conclusion that "MSA was Plaintiff's employer…." and that "MSA benefited from the assertion of a breach of contract." Plaintiff's Counter 56.1¶343. Neither of those two statements addresses Defendants' statement that Plaintiff performed services for

Apparel Companies. Indeed, Plaintiff's exhaustive responses of irrelevant alleged facts are nothing more than an attempt to create the appearance of a disagreement over facts where none exists.[1] Indeed, most of Plaintiff's purported facts do not relate to Plaintiff at all, and therefore have no bearing on whether *she* was properly classified as an independent contractor.

Plaintiff has not rebutted the factual reality that she was never economically dependent on MSA for the opportunity to perform fit modeling work. And she has not rebutted other pertinent facts including the following: She invested in her business. 56.1 ¶ 549-565, 567. MSA personnel were never present when she performed work. 56.1 ¶ 314. She was not trained by MSA personnel. 56.1 ¶ 322, 371, 377. She was free to, could and should have, marketed herself. 56.1 ¶ 344, 570. She worked with Apparel Companies of her own choosing. 56.1 ¶ 405, 532. She took vacations when she wanted. 56.1 ¶ 600. She took business deductions on her tax returns. (*See* Fifth Dugger Decl. Ex. 220, Agerbrink Tr. 201:11). Additionally, unlike in *Saleem*,[2] where the putative employer actually set rates for the drivers, Plaintiff was free to, and did in fact, negotiate her own rates. *See Saleem v. Corp. Trans. Grp.*, 854 F.3d 131, 138 (2d Cir. 2017); 56.1 ¶ 405, 468, 476, 534. All of these are hallmarks of independent contractor status and weigh heavily in support of Defendants' motion for Summary Judgment.

Plaintiff's argument that their agreement gave Defendant determinative control over her is specious. As the Court is aware, this case was previously a class and collective action. During the years of class and collective discovery, MSA produced well over a hundred-thousand documents about its company and the services performed by fit models, including Plaintiff.

---

[1] In addition, in her counterstatement of facts, Plaintiff in certain instances sets forth a factual dispute, albeit with respect to facts immaterial for purposes of summary judgment. *See. e.g.* Counter 56.1 ¶ 313, Plaintiff disputes whether a "fitting" is a "process" or is a "meeting."

[2] There is no dispute that *Saleem* is the controlling legal standard. *See Saleem v. Corp. Trans. Grp.*, 854 F.3d 131 (2d Cir. 2017). Plaintiff nevertheless misapplies *Saleem*. (Pl. Rpl. 5-7).

These documents included emails sent to and concerning Plaintiff and many other exclusive fit models. (Spelfogel Reply Declaration ¶2, hereinafter, "Spelfogel Rpl. Decl."). Thus, Plaintiff had in her possession a vast trove of documents to use in support of her moving papers. Not surprising, however, there is not one single document referenced in Plaintiff's papers that states or suggests that MSA ever exercised any alleged right to control, took any disciplinary action in any form against Plaintiff or otherwise withheld work from her.

B.   **Defendants' Affidavits Were Properly Submitted.**

Plaintiff asserts that (1) the affidavit of Lydia Rohr should be stricken for failure to identify Rohr on Defendants' Rule 26 disclosures as a potential witness, and (2) the supplemental affidavits of William Ivers, Susan Levine and Elizabeth Pinto should be stricken as inconsistent with their prior testimony in this case.[3] Ivers, as noted below, was never deposed.

All of Defendants' affidavits should be fully considered by the Court. "The preclusion of evidence not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents…flagrant bad faith and callous disregard of the rules." *Lesser v. Camp Wildwood*, 01-Civ-4209, 2003 U.S. Dist. LEXIS 16921, at *6 (S.D.N.Y. Sept. 29, 2003) (internal quotation marks and citations omitted). The sanction of preclusion under Federal Rule of Civil Procedure 37 should not be utilized by the Court where there is "substantial justification or harmlessness." *Id.* at *5.

---

[3] Defendants note that Plaintiff submitted an affidavit Katherine Cooper Erickson who was not identified by name in Plaintiff's Rule 26 Disclosures. (Spelfogel Reply Decl. Ex. GG). Despite this, Defendants do not seek to have the affidavit of Ms. Erickson disregarded by the Court because none of her statements have any bearing on whether Plaintiff was an employee for purposes of wage and hour law. Erickson admits in her affidavit that she ceased using MSA's services as of February 2013. *See* Erickson Aff. ¶3. Plaintiff signed her management agreement with MSA in March of 2013. As a result, Erickson does not have first-hand knowledge of facts relevant to *this* case.

1. <u>Ms. Rohr's Affidavit</u>

In her affidavit, Ms. Rohr provides important relevant background on fit modeling in the apparel industry, facts which Plaintiff herself argues are relevant to the instant lawsuit. (Pl. Rpl. 9). Defendants should be able to address those points with supporting factual affidavits.

Ms. Rohr has no financial stake in the outcome of this case, thus her statements about the fit modeling industry are wholly objective and should be afforded significant weight by the Court.

Plaintiff had ample time to pursue discovery or solicit affidavits from others in the apparel industry if she so chose. Defendants' omission, if any, thus, is harmless. *See id.*

In addition, identifying hundreds of individuals with potential knowledge of Plaintiff's claims would not have been reasonable, practical or possible. Paragraph 18 in Ms. Rohr's Affidavit references a "go-see" that Plaintiff attended while utilizing MSA's services. (Rohr Affidavit ¶18, hereinafter "Rohr Aff."). Plaintiff admitted that she went on approximately twenty go-sees during the period April 2013 until June 2014. (Dugger Decl. Ex. 2, 220, Agerbrink Tr. 111:20-25). Defendants would not have been able to submit a list of hundreds of employees of Apparel Companies who may have been a part of one of their design teams who met with and interviewed Plaintiff.

In addition, Federal Rule of Civil Procedure Rule 26 provides that a party may introduce testimony if used for impeachment, without first disclosing it in mandatory disclosures. Fed. R. Civ. P. ("FRCP") 26(a)(i-ii); *see also SEC v. Boock*, No. 09-Civ.-8261, 2011 U.S. Dist. Lexis 95363, *32-33 (S.D.N.Y. Aug. 25, 2011). Much of Ms. Rohr's affidavit clearly impeaches Plaintiff's testimony. *Compare* 56.1¶4 (Dugger Decl. Ex. 2, Agerbrink Tr. 42:13) ("models

should be seen not heard") and Rohr Aff. ¶12 ("Part of the skill we look for in hiring models is their ability to properly communicate aspects of fit of the garment.").

Even if Defendants had an obligation to amend their Rule 26 disclosures to identify Ms. Rohr, they would not have been able to do so until long after the close of discovery. Thus, Plaintiff would not have had the ability to obtain discovery from Ms. Rohr. Alternatively, Plaintiff could have applied to the Court for a stay of the parties' respective motions for summary judgment to pursue discovery concerning Ms. Rohr. Plaintiff did not, however, perhaps recognizing that doing so would have been an exercise in futility as Plaintiff would have been unable to challenge the facts asserted by Ms. Rohr. Indeed, this may be why, in her Memorandum in Opposition and Reply, Plaintiff fails to address substantively any of Ms. Rohr's statements.

### 2. Defendants' Other Affidavits

Plaintiff argues that the affidavits of members of MSA management should be disregarded by the Court because of their (unstated) "myriad evidentiary deficiencies" and inconsistencies with their prior deposition testimony. (Pl. Rpl. 4). Plaintiff's arguments are without merit. These affidavits do not contradict, but rather supplement the witnesses' prior deposition testimony. *See Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619-20 (2d Cir. 1996). The fact that Plaintiff failed to examine the declarants comprehensively at their previous depositions in this lawsuit does not preclude these witnesses from now providing otherwise relevant factual statements to the Court.

Plaintiff asserts the affidavits should be struck because they (a) are contradictory, (b) are conclusory, speculative or not significantly probative, (c) contain unsubstantiated assertions, and (d) contain hearsay. Plaintiff cites to numerous examples of all of the alleged issues. There are, however, no actual issues. Plaintiff's suggestion that all or parts of the Ivers affidavit should be

struck ring especially hollow where Plaintiff noticed Mr. Ivers' deposition, and then subsequently withdrew the notice and never took Ivers' deposition. (Spelfogel Rpl. Decl. ¶3).

(a) Plaintiff has not identified any contradictions between the affidavits and the deposition testimony of Susan Levine or Elizabeth Pinto. For example, Plaintiff cites (Pl. Rpl. 3 n.6) paragraph 50 of Ms. Levine's affidavit in which she describes her heated discussions with Plaintiff concerning Plaintiff's breach of the parties' agreement. Plaintiff alleges that Ms. Levine told her "you will never work in this town again." (56.1 ¶137). Levine's affidavit states: "I do not recall uttering the phrase she alleges I said." (Levine Affidavit ¶50, hereinafter "Levine Aff."). The pages of the deposition transcript that Plaintiff cites do not provide any contradiction to Ms. Levine's statements. To the contrary, they show consistency. "Q: But do you recall any of the details of the words that you said to her?" (Dugger Decl. Ex. 3, Levine Tr. 42:20-21). "A: The exact words I said to her, no…" (Dugger Decl. Ex. 3, Levine Tr. 42:24-25). When asked again about specific parts of the conversation, "Q: Did you say to her anything about that situation being awkward for MSA?" (Dugger Decl. Ex. 3, Levine Tr. 43:5-6). "A: I don't think I ever used the word 'awkward.'" Q: Shining a bad light on MSA?" (Dugger Decl. Ex. 3, Levine Tr. 43:8-10). "A: I don't recall the conversation." (Dugger Decl. Ex. 3, Levine Tr. 43:12). "Q: Do you recall anything that Eva Agerbrink said to you during that conversation? A: No, I don't recall verbatim what she said." (Dugger Rpl. Decl. Ex 221, Levine Tr. 49:24-50:3).

As a named defendant, Ms. Levine attended Plaintiff's deposition and reviewed Plaintiff's moving papers in support of Plaintiff's motion for summary judgment. Ms. Levine understands what Plaintiff alleges she said, but does not recall stating those words. Ms. Levine's statement in her affidavit is completely consistent with her deposition testimony. There, she admits to having a discussion with Plaintiff during which she said "I think we were all upset."

(Dugger Decl. Ex. 3, Levine Tr. 41:12).  She stated in her affidavit that, "I said things to her in the heat of the moment." (Levine Aff. ¶49).  She testified in her deposition that she did not remember "the exact words" from the conversation, but remembers the "gist." (Dugger Decl. Ex. 3, Levine Tr. 42:24-25).

Similarly, there is no inconsistency with respect to Ms. Pinto's affidavit. For example, in her deposition Pinto testified about an email she sent to Plaintiff that stated, in part: "QVC severed all ties to you and canceled all bookings from this point forward." (Dugger Decl. Ex. 4, Pinto Tr. 233:11-13).  Ms. Pinto testified that after talking directly with QVC personnel on the phone, "[QVC] opted not to work with Eva and booked a local model." (Dugger Decl. Ex. 4, Pinto Tr. 234:7-9).  The above statements from her deposition are entirely consistent with Pinto's statement in her affidavit that "QVC terminated its relationship with Agerbrink because she was unresponsive." (Pinto Affidavit ¶35, hereinafter "Pinto Aff.").

(b) Plaintiff next argues that affidavit testimony that is "conclusory, speculative, or not significantly probative" should be stricken.  In support of this argument, for example, Plaintiff cites paragraph 19 of the Levine affidavit (Pl. Rpl. 2 n.4).  This states: "I suggested to Agerbrink that she market herself more." (Levine Aff. ¶19).  This statement is not conclusory, and it is not a hypothetical statement.  Rather, it is a first-hand account of a statement made in the context of a conversation with Plaintiff as to a suggestion for ways in which Plaintiff could further her own career.

In addition, Ms. Levine's statement is certainly probative because Plaintiff's marketability is a central issue to this litigation.  Further, Plaintiff does not dispute that this conversation took place; in fact, she admitted it did during her deposition. (Dugger Decl. Ex. 2, Agerbrink Tr. 161:8-10).

(c) Plaintiff also argues that affidavits that offer "legal conclusions, ultimate facts, and/or provides unsubstantiated assertions," should also be stricken. (Pl. Rpl. 2). In support of her argument Plaintiff cites to paragraph 12 of Ms. Pinto's Affidavit. In it, Ms. Pinto states that "[a]pparel Companies rely on fit models to ensure the clothing properly fits before sending it out for mass production." (Pinto Aff. Ms. Pinto also stated that she "worked in the apparel industry for years" and before working at MSA was on a technical team at Macy's that "regularly utilized the services of fit models to help in the design and production of garments." (Pinto Aff. ¶2). Clearly, Ms. Pinto's statements were based on first-hand knowledge of someone with years of experience in the industry designing clothes.

(d) Plaintiff also argues that the affidavits contain hearsay and therefore should be stricken. (Pl. Rpl. 3n.7). Plaintiff points, for example to paragraph 11 of Ms. Levine's affidavit, in which she states that "MSA played no role in setting the duration of go-sees." (Levine Aff. ¶11). As President and Owner of MSA, Ms. Levine can credibly make this statement based on her own personal knowledge. Further, Plaintiff has not provided evidence to the contrary that "MSA personnel do not attend fittings or go-sees." 56.1 ¶544, Counterstatement to 56.1 ¶544.

Plaintiff also cites to paragraph 11 of the affidavit of William Ivers (hereinafter, "Ivers Aff.") as containing hearsay. (Pl. Rpl. 3n.7). Here, Mr. Ivers explained actions he took in response to an incident when Plaintiff claimed certain disbursement checks issued by MSA were lost in the mail. Mr. Ivers personally investigated the issue and discovered that the alleged "lost checks" had actually been cashed by Plaintiff at the same bank branch, with the same signature and into her account. Mr. Ivers' statement of his personal actions does not constitute hearsay.

### 3. Affidavits Do Not Have to Expressly State They Are on Personal Knowledge

Plaintiff argues that the declarants fail to state that their statements are based on first-hand knowledge. (*See* Pl. Rpl. 4). There is no requirement that a declarant or affiant makes this qualifying statement. The "basis for the person's acquisition of such personal knowledge must be readily discernable from the face of the affidavit, or reasonably inferred." *Piersons v. Quality Archery Designs, Inc.*, No. 3:06-cv-0408, 2009 U.S. Dist. Lexis 131352, at *20-21 (N.D.N.Y. Feb. 26, 2009) (citations omitted). Personal knowledge is presumed based on a person's place in the corporate hierarchy. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530-31 (5th Cir. 2005) (personal knowledge reasonably inferred from position with the corporation).

Here, the declarants' knowledge is reasonably inferred. As an owner of the company, and a person who has worked in the modeling industry for years, Susan Levine's personal knowledge can be inferred. *See* Levine Aff. ¶1 ("I am President and Owner.")

As the "Senior Director of the Fit Division" at MSA (Pinto Aff. ¶1), and as someone who "worked in the apparel industry for years," including on an "in-house technical team," (Pinto Aff. ¶2) Liz Pinto's knowledge can be reasonably inferred.

As another owner of MSA and the head of operations for MSA, who was "responsible for the day to day operations of the Company," (Ivers Aff. ¶2) William Ivers' personal knowledge can be reasonably inferred.

In addition, Plaintiff has never before objected to the other affidavits in this case where they did not contain such qualifying statements. *See* ECF # 68, 161. Her doing so now indicates the tactical nature of her objections and suggests her inability to address the substantive facts and legal considerations of the underlying independent contractor issue.

### C. Plaintiff Should Not Be Granted Summary Judgment On Her Contract Affirmative Defenses or Claims.

#### 1. Plaintiff's Claims Should Be Set Off Against Her Breach.

Plaintiff incorrectly asserts that Defendants must plead an affirmative defense of "setoff" in their answer. (Pl. Rpl. 15). This is not the law in New York. It is sufficient for Defendants to assert "facts in support thereof" in their answer and/or counterclaims . *See Kivort Steel, Inc. v. Liberty Leather Corp.*, 110 A.D.2d 950, 952 (3d Dep't 1985). Defendants have done so here.

#### 2. Defendants Properly Plead Tortious Interference.

Plaintiff asserts that wrongful means *against Cache* were not used. Plaintiff, however, misrepresented to Cache that she found out about the job there via Linkedin. In fact, Pinto informed Plaintiff of the opportunity with Cache before submitting Plaintiff's name and credentials to Cache. *See* Pinto Aff. ¶55 ("I had a conversation with Eva prior to my submitting her to Cache to make sure she wanted to be considered for an in-house position."). Thus, Defendants have properly plead tortious interference.

#### 3. Plaintiff is Not Entitled to Summary Judgment Setoff Because of a Factual Dispute Over the Value of the Fit Model Services She Provided to Cache.

As Plaintiff admits in her reply: "there is no admissible evidence in the record regarding Plaintiff's specific position or her actual salary" at Cache. (Pl. Rpl. 16). The lack of admissible evidence in the record precludes Plaintiff from obtaining summary judgment on this issue. Plaintiff mistakes Defendants' suggestion that the Court can look to publicly available information as an invitation for more math. *See Mueller v. Oregon*, 208 U.S.412, 421 (1908) ("judicial cognizance of all matters of general knowledge"). In citing to the U.S. Department of Labor statistics concerning median salaries, Defendants were merely suggesting to the Court that Plaintiff's proffered mathematical calculations do not "add up" as a matter of common sense. A

person is not paid $135,000 a year to "answer phones" and "order lunch." (Dugger Decl. Ex. 2, Agerbrink Tr. 13:12). Because, as Plaintiff admits, there are no facts in the record to show how much of that $135,000 a year salary can properly be attributed to her work as a fit model for Cache, she is precluded from summary judgment.

### 4. Plaintiff is Not Entitled to Summary Judgment on Her Unconscionability Affirmative Defense.

Plaintiff asserts that because MSA would benefit from its own breach, their agreement is substantively unconscionable. (Pl. Rpl. 17). This argument is flawed for several reasons. First, Defendants would not benefit from breaching an agreement from which they would otherwise derive revenue. MSA and Plaintiff's incentives under the agreement were aligned. The more Plaintiff worked, the more management fees would inure to MSA. Plaintiff had only been managed by MSA for 15 months as of June 2014. MSA would have been entitled to its management commission on Plaintiff's provision of fit model services to Apparel Companies for an additional 21 months. It would not make economic sense for Defendants to breach. Indeed, given the nature of being a model management company, MSA was incentivized to continue to renew its agreements with Plaintiff and other fit models. Intentionally breaching for the minimal amount of cash-on-hand at a given point in time would not align with its business goals.

Second, Plaintiff's suggestion that MSA would benefit from its own breach is belied by the fact that the Agreement states that the "substantially prevailing party in any legal action or proceeding arising out of or relating to this Agreement shall be entitled to recover its reasonable attorneys' fees, court and witness costs, and other related expenses." Third Am. Compl., ECF # 223, Ex. A, ¶20. If a court were to find that MSA intentionally breached its agreement with Plaintiff, Plaintiff as the prevailing party would be entitled to reimbursement for her legal fees. Contrary to Plaintiff's allegations Defendants would not benefit from a breach.

Third, given MSA's reputation as a premier fit modeling management company, it would not benefit MSA's reputation intentionally to breach agreements with models, thereby risking alienating models MSA might otherwise serve in the future. *See* 56.1 ¶225.

5. Plaintiff is Not Entitled to Summary Judgment on Her Affirmative Defense of Repudiation.

The timeline as to the end of Plaintiffs relationship with MSA is very clear.  In June, Plaintiff accepted a full time position with Cache. 56.1 ¶245.  By doing so, without informing MSA in advance, she had already repudiated her agreement with MSA.  Plaintiff references a subsequent meeting with Ms. Levine when Ms. Levine communicated her views on this to Plaintiff. 56.1 ¶506.  During that meeting, Plaintiff alleges Ms. Levine threatened her.  Whether or not the threat occurred is legally irrelevant given Plaintiff's prior repudiation. 56.1 ¶246.

6. Plaintiff is Not Entitled to Summary Judgment on Her Prior Material Breach Affirmative Defense.

As detailed above, the time-line shows that Plaintiff breached her agreement with MSA by not giving it/Susan Levine advance notice of her leaving MSA, and that this occurred before any alleged breach by MSA.

Additionally, Plaintiff's allegation that MSA was an employment agency and therefore made "a fundamental misrepresentation," by stating it was not one is also misplaced.  This is yet another way in which Plaintiff continues to seek to litigate issues that were dismissed earlier on in this case. *See Columbia Artists Mgmt., LLC v. Swenson & Burnakus, Inc..* No. 05 Civ 7314 (LBS), 2008 U.S. Dist. LEXIS 74377, at *25 (S.D.N.Y. Sept. 23, 2008) ("Where there is no private right of action for a claim, a party cannot assert that same violation as grounds for an affirmative defense.") (citations omitted).

7. Plaintiff is Not Entitled to Summary Judgment on Her Non-Material Breach Affirmative Defense.

Plaintiff's argument that her response to Ivers' inquiry within three days could not be considered a material breach ignores the way in which the fit modeling industry functions. It also ignores Plaintiff's own previous experiences which shows that she failed to timely communicate with MSA. Once when Plaintiff did not respond to MSA's communications, QVC terminated its relationship with Plaintiff in the course of a single day. *See* Pinto Aff. ¶43-46. Thus, Plaintiff's admitted three day lapse in communication was clearly material given the nature of the industry's fast pace, and Plaintiff's own experience as to what is considered "prompt" communication.

MSA's duty was, in part, to represent Plaintiff regarding inquiries for her services. If MSA does not know where Plaintiff stands vis-à-vis her willingness and availability to provide services as a fit model, she is frustrating the very purpose of their agreement.

Plaintiff also misstates the time-lapse between when she received the offer from Cache and when she actually communicated that fact to MSA. On June 12, Plaintiff told Ms. Pinto "I found a few jobs on my own," without specifying anything more. Spelfogel Decl. Ex. I, PLS000511. Thus, Plaintiff most likely had been holding back information from MSA for weeks.

8. Plaintiff is Not Entitled to Summary Judgment on Her Employment Agency Defense.

Plaintiff has once again repackaged her claims under NY GBL Article 11, but the law is clear that there is no private right of action. This court has already so ruled in this case. *See Agerbrink v. Model Serv. LLC*, No. 1:14-cv-07841, 2015 U.S. Dist. LEXIS 77821 (S.D.N.Y. June 16, 2015) (ECF # 25). Indeed, the exact situation occurred in another case in this Circuit.

*See Columbia Artists Mgmt., LLC*, 2008 U.S. Dist. LEXIS 74377, at *21, 22n.5.  There, the Plaintiff alleged that a violation of the Article 11 licensing provision voided an entire contract.  Unpersuaded, the Court found that "[w]here there is no private right of action for a claim, a party cannot assert that same violation as grounds for an affirmative defense." *Id.* at *25 (citations omitted).

Plaintiff also misstates the holding of *Pine v. Laine*.  In that case, the Court held that where the Plaintiff did not fall within the "personal manger" exemption of subsection 7, he could not recover money. *Pine v. Laine*, 36 A.D.2d 924 (1st Dep't 1971) *aff'd*, 31 N.Y.2d 988 (N.Y. 1973).  Plaintiff's cite to *Mandel v. Liebman*, 303 N.Y. 88 (N.Y. 1951) is similarly not relevant where the parties in that case dealt with a dispute between an attorney and client over a retainer agreement, not an employment agency.

### III.   CONCLUSION

For the reasons set forth above and in Defendants' Moving and Reply papers and all attachments thereto, Defendants' motion for summary judgment finding Plaintiff to be an independent contractor and not an employee of Defendants should be granted, and Plaintiff's motion for summary judgment on Defendants' counter claims and her affirmative defenses thereto should be denied.

Dated: New York, New York
       October 24, 2017

                              EPSTEIN BECKER & GREEN, P.C.

                              By:    /s/ Evan J. Spelfogel
                                     Ronald M. Green
                                     Evan J. Spelfogel

250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
*Attorneys for Defendants*